IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| HOWARD HALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. CV210-122 |
| HARLEY LAPPIN; ANTHONY HAYNES; | ) | |
| ROBERT COUSSON; DEBORAH | ) | |
| FORSYTH; BUREAU OF PRISONS; and | ) | |
| FEDERAL PRISON INDUSTRIES, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff Howard Haley ("Haley") has filed exhibits of record which demonstrate that he has

elided the events to give the impression that he was removed from his UNICOR work detail that

involved "flipping shirts" because he could not meet the production quota for *that* work detail due

to an asserted "limited use of his right hand."  In fact, the exhibits demonstrate that when Haley was

unable to perform this shirt-flipping detail, he was reassigned to a different work detail in UNICOR.

He was, however, removed from UNICOR thereafter.

Defendants[1] submit that all of Haley's claims against all Defendants should be dismissed[2]

for failure to state a claim upon which relief can be granted because Haley has failed to exhaust all

---

[1]  It is assumed that the intended defendants are those named in the amended complaint, but
Defendants note that the Federal Bureau of Prisons ("the BOP") and Harley Lappin have not been
served with the amended complaint and the Clerk has not changed the caption of the case.  The
amended complaint does not include Lisa Ognilla as a defendant in its caption and later states that
she "not sued in any capacity," Dkt. # 30, ¶ 7.  To the extent that she is determined to be a defendant
in this action, counsel asserts herein and preserves on her behalf all defenses asserted herein.

[2]  In filing this motion to dismiss, Defendants do not waive but rather expressly preserve the
defenses of business necessity, undue hardship, and good faith.

available administrative remedies; because the Court lacks subject-matter jurisdiction as to claims against specified defendants; because [to the extent that a private right of action regarding a federal agency program might exist under the Rehabilitation Act of 1973 ("the RA")], the Court lacks subject-matter jurisdiction as to claims for compensatory damages, for punitive damages and for a jury trial under the RA; because a *Bivens* remedy should not be created under the circumstances alleged; and because the individual defendants are entitled to qualified immunity (should the Court determine to create a *Bivens* remedy against them, which they submit the Court should not do).

So as not to waive defenses, the Federal Bureau of Prisons ("the BOP") asserts the defense of insufficiency of service of process and Harley Lappin asserts the defenses of insufficiency of service of process and of lack of personal jurisdiction.[3]

As amended, this action appears to continue to assert violations of Due Process and Equal Protection rights, construed as *Bivens* claims,[4] and to assert claims pursuant to Section 504 of the

---

[3] Harley Lappin and the BOP were not included in the original complaint, and there is nothing of record which suggests that these newly-named parties have been served with the amended complaint. Consistent with the language of Fed. R. Civ. P. 12(h)(1), the Eleventh Circuit has held that a party's right to dispute personal jurisdiction on insufficient service of process grounds is waived if the party fails to assert that objection in his first Rule 12 motion. *In re Worldwide Web Systems*, 328 F.3d 1291, 1299-1300 (11th Cir. 2003) [Rule 60(b)(1) case]. Therefore, these parties must make these arguments to avoid having waived them. Clearly, though, the insufficiency of service of process can be cured. *See* Fed. R. Civ. P. 4(m).

[4] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *see* Dkt. # 7 (Order of Sept. 27, 2010), as to original complaint.

RA, 29 U.S.C. § 794(d),[5] and the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12132.[6]

Dkt. # 30, page 1, para. 1.

## I. MEMORANDUM OF AUTHORITIES AS TO FACTS TO BE ACCEPTED AS TRUE.

The amended complaint incorporates by reference "as if expressly written as statements of the facts," administrative remedy requests filed by Haley which were attached to the original complaint, Dkt. # 30, page 4, para. 15 (but which are not attached to the amended complaint), and the responses thereto. Dkt. # 1, pages 9-17. A declaration by Haley is attached to the amended complaint as an exhibit. Dkt. # 30, pages 13-14. For purposes of this motion, therefore, Defendants refer to the amended complaint, to its attachments, to exhibits to the original complaint, and to the declaration filed at Dkt. # 30, pages 13-14.

Under the Federal Rules of Civil Procedure, exhibits are part of the pleading "for all purposes," Fed. R. Civ. P. 10(c); *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007), including the purpose of review on a Rule 12(b)(6) motion. *Solis-Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir.1985) (per curiam).

However, "[a]n amended pleading supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.' *Proctor & Gamble Def. Corp. v. Bean*, 146 F.2d 598, 601 n.7 (5th Cir.1945)." *Dresdner*

---

[5]   The amended complaint cites 29 U.S.C. § 994(d), but it is assumed that this is a typographical error.

[6]   The RA incorporates the standards of the ADA.  29 U.S.C. § 791(g).

*Bank AG v. M/V OLYMPIA VOYAGER,* 463 F.3d 1210, 1215 (11th Cir. 2006).[7] Therefore, although the original complaint is attached to the amended complaint, Defendants assume that its allegations are "no longer a part of" the averments against them.[8]

For purposes of this motion to dismiss, the allegations accepted as true[9] are the allegations in the amended complaint and in its exhibits, including Haley's declaration, Dkt. # 30, pages 13-14, and in the administrative remedy request exhibits filed with the original complaint.

## II. STATEMENT OF FACTS.

### A. The Inmate Work Program.

Under the BOP's policy, "[s]entenced inmates who are physically and mentally able to work are required to participate in the work program." BOP Program Statement 5251.06, § 1(a).[10] This requirement applies to inmates "with disabilities who, with or without reasonable accommodation, can perform the essential function of the work assignment." *Id.* § 2(a); *also* 28 C.F.R. § 545.21(a). The purposes of the work program include "reduc[ing] inmate idleness, while allowing the inmate to improve and/or develop useful job skills, work habits, and experiences that will assist in post-release employment." 28 C.F.R. § 545.20(a)(1).

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Court of Appeals for the Eleventh Circuit adopted as binding precedent decisions handed down by the Court of Appeals for the Fifth Circuit prior to October 1, 1981, such as the *Bean* decision cited in *Dreschner.*

[8] If the Court finds to the contrary, Defendants respectfully request an opportunity to respond as needed to the allegations of the original complaint.

[9] On a motion to dismiss, all well-pleaded facts must be accepted as true, and all reasonable inferences must be made in favor of the plaintiff. *Thompson v. RelationServe Media*, 610 F.3d 628, 631 n.5 (11th Cir. 2010).

[10] BOP Program Statements are publicly-available on the internet at www.bop.gov.

Inmates may be assigned to institution work assignments, which are those which contribute "to the day-to-day operation of the institution (*e.g.*, carpentry, plumbing, food service)" [§ 2(b)]; or to commissary assignments [§ 2(d)]. Also, inmates may be assigned to a work detail in a factory or other facility set up by Federal Prisons Industries (FPI), a government-owned corporation that was created in 1934 to provide work simulation programs and training opportunities for inmates of federal correctional facilities. Act of June 23, 1934, Pub. L. No. 73-461, 48 Stat. 1211], *codified as amended* at 18 U.S.C. §§ 4121-4129 (2000)]; *see* 28 C.F.R. § 345.11 (2003). FPI was established "as a program to provide meaningful work for inmates ... designed to allow inmates the opportunity to acquire the knowledge, skills, and work habits which will be useful when released from the institution." 28 C.F.R. § 345.10; *see also* BOP Program Statement 8120.02 (1999).

The commercial or "trade" name of FPI is UNICOR. *United States v. Belwood*, 222 F.3d 403, 404 (7th Cir. 2000); 28 C.F.R. § 345.11(a). Inmates who wish to be assigned to UNICOR work details are placed on a waiting list and are generally assigned to a work detail in sequence according to their placement on the list. *See id.* § 345.32. Inmates also receive pay according to their pay grade (of which there are five different levels) and may receive additional pay under specified circumstances. *See id*. § 345.50-60. Inmates participating in a UNICOR work detail must "comply with all work standards pertaining to his or her work assignment," including productivity standards. *Id*. § 345.40.

In its Program Statement describing the "Work Programs for Inmates – FPI," the BOP explains that "[FPI] was established as a program to provide meaningful work for inmates. This work is designed to allow inmates the opportunity to acquire the knowledge, skills, and work habits which will be useful when released from the institution." BOP Program Statement 8120.02 (1999).

In the parlance of the regulation, inmates are "assigned" to "work details" in UNICOR. 28 C.F.R. § 345.11(c).

The publicly-available website of UNICOR explains that

FPI is, first and foremost, a correctional program.

* * *

Rigorous research demonstrates that participation in prison industries and vocational training programs has a positive effect on post-release employment and recidivism....

* * *

FPI contributes significantly to the safety and security of federal correctional facilities by keeping inmates constructively occupied... programs and vocational training are less likely to engage in institutional misconduct, thereby enhancing the safety of staff and other inmates.

www.UNICOR.gov.

## B. Allegations Of Fact In This Case.

Haley is incarcerated by the Federal Bureau of Prisons (BOP) at the Federal Correctional Institute in Jesup, Georgia (FCI Jesup). He was accepted into the UNICOR program and assigned a work detail that involved the manufacture of shirts and that required him to "turn/flip 1800 shirts per day." Dkt. # 30, page 13, para. 3.[11] Haley alleges that because of his "disability, *i.e.*, limited use of his right hand," he was able to accomplish only "a little over 900 shirts per day." *Id*. & page 3, para. 9 (italicization added).

On or about August 6, 2007, Haley was given a warning by Factory Manager Cousson (and by Haley's supervisor, Ognilla) regarding his performance in the shirt-flipping position, and he

---

[11] As reflected in Haley's administrative remedy requests, work details locally at FCI Jesup are referred to with numerals, such as "UNICOR 7," based upon the areas and types of work in the factory. Haley refers to his first position at FCI Jesup as "UNICOR 2" but other documents refer to the same position as "UNICOR 3." This brief will refer to the first position as the "shirt-flipping position."

alleges he told them he could not flip enough shirts because of his "handicap." Dkt. # 30, page 13, para. 5.

Haley alleges that on August 7, 2009, he spoke to FCI Jesup Associate Warden Forsyth and delivered to her an Inmate Request to Staff form. Dkt. # 1, page 9. This form (as filed with Haley's complaint)[12] states that Haley "firmly believed" he would be able to perform the work in two different positions – that of turning sleeves in UNICOR 3 or that of orderly. Dkt. # 1, page 9.

In his August 17, 2009, BP-9, Haley asserts that he was removed from his shirt-flipping position in UNICOR on August 17, 2009. *Id.*, page 10. He also asserts that "[i]nstead of replacing me in a position that I could perform [Forsyth, Cousson, and Ognilla] orchestrated to have me fired from UNICOR." *Id.*

On September 11, 2009, Haley filed a BP-10 asserting that Forsyth advised him that he would not be removed from UNICOR as she would find another position for him. Dkt. # 1, pages 12-13; *also* Dkt. # 30, page 13, para. 7. He states that he was in fact then reassigned to a new position, a position in UNICOR 7. Dkt. # 1, page 12.

In the BP-10, Haley also alleges events that occurred *after* he was reassigned to a position in UNICOR 7. *Id.* Specifically, he alleges that his supervisor there, Wilkins, "noted" his disability and "incapability of keeping up with the flow of the machinery," and suggested that Haley could be detailed to work as an orderly. *Id.* Then, according to Haley, "[s]ometime thereafter," Wilkins advised Haley that Forsyth did not "want any orderly as Washington has charged her to decrease

---

[12] Defendants do not concede that this "Inmate Request to Staff" was actually delivered to the BOP or its employees at the time.

'indirect labor.'" *Id*. Haley alleges that, "[a]s such," he was removed from the UNICOR program. *Id.*

> In the BP-10, Haley identifies the challenged action of Defendants as follows:
>
> One of the jobs that I requested that was consistent with my disability was "turning sleeves" [A] review of that job shows able[-]bodied persons currently performing that task. The logical thing then to do was **[to reassign] one of the [able-bodied] person[s]** to the back of the dryer in UNICOR 7 and **[place] the undersigned in that position.**

Dkt. # 1, page 13 (grammatical corrections added) (ellipses omitted) (emphasis added).

The Warden's response to Haley's BP-9, and the subsequent responses of the BOP to Haley's appeal, address the removal of Haley from UNICOR based upon his inability to perform the position for which he was "hired," and his refusal to accept assignment to a position that was vacant. Dkt. # 1, pages 15-17.

In alleging that Haley "is a qualified individual" "by virtue of his alleged disability, *i.e.,* the limited use of his right hand," the amended complaint references Exhibit A thereto. Though difficult to read, Exhibit A is a "medical report of duty status," which, according to its printed information, bears the signature of *either* a "medical officer or medical record librarian," and it is dated August 18, 2009. Dkt. # 30, page 6. This report is dated the day **after** Haley's removal from UNICOR, which he alleges occurred on August 17, 2009. Dkt. # 1, page 10. The report appears to state that Haley has been instructed to **lift no more than 10 pounds** because he has limited use of his right hand. *Id.* (emphasis added).

The amended complaint alleges that Haley's disability is "not short term but permanent," *id*., and alleges that Haley "is unable to perform in a wide range of available jobs in Federal Prison

Industries (Jesup), for example, mechanic, sewing machine operator (manual or automatic); printer; [and] shipping and handling." Dkt. # 30, para. 9.

The only other factual allegation in the amended complaint is a **new** allegation (not presented administratively) that Haley should have been given a **reduced production quota**:

> On August 7, 2009, Plaintiff explicitly placed Defendant Cousson and Forsyth on notice that he was disabled and requested that reasonable accommodation be made to accommodate him based on his disability. Instead of providing Plaintiff with a quota to facilitate his disability Defendant Cousson and Forsyth unlawfully terminated Plaintiff based on his disability.

*Id*., para. 13 (spelling error corrected).

Nothing in the amended complaint alleges or suggests that, at any relevant time, there was a **vacancy** in any position that Haley believed he could perform or in any position that he requested. Likewise nothing in the amended complaint alleges or suggests that Haley contemporaneously requested and was denied a **reduced production quota**, or that any other UNICOR participant was ever given a reduced production quota.

### III. MEMORANDUM OF AUTHORITIES.

### A. THE STANDARD OF REVIEW.

### 1. The Standard For Assessing Alleged Failure To State A Claim.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 555 U.S. ___, 129 S. Ct. 1937, 1949 (2009); *Keating v. City of Miami,* 598 F.3d 753, 763 (11th Cir.), *cert. dismissed*, 131 S.Ct. 501 (2010). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' will not do." *Iqbal*, 129 S. Ct. at 1949 [*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice")];

*Speaker v. United States Dep't of Health and Human Servs.*, 623 F.3d 1371, 1381 (11th Cir. 2010).

Nor will a complaint suffice "if it tenders naked assertions devoid of further factual enhancement."

*Iqbal*, 129 S.Ct. at 1949 (internal quotation marks, punctuation, and citation omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has **not shown** – that the pleader is entitled to relief. Fed. Rule Civ. Proc. 8(a)(2)." *Iqbal,* 129 S.Ct. at 1950 (internal punctuation omitted) (emphasis added).

In reviewing a motion to dismiss, the court must accept as true "well-pleaded facts and reasonable inferences drawn from those facts. However, unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir.2003) (quotations omitted).

### 2.　　**The Standard As Applicable In Discrimination Cases.**

Haley may cite *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), for the holding there that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima face case of discrimination...."[13]

---

[13]　　The *Swierkiewicz* ruling was explained in *Twombly*, 550 U.S. at 569-70, as having determined that the lower court "had impermissibly applied what amounted to a heightened pleading requirement by insisting that Swierkiewicz allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Id.* at 570. The *Twombly* Court reiterated that in *Swiekiewicz*, the Court was not requiring "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* Then in *Iqbal*, the Court again explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"There was a time when it was not necessary for plaintiffs ... to plead sufficient facts establishing all of the Title VII elements....  However, the new Fed. R. Civ. P. 8 and 12 pleading standards set forth in [*Twombly* and *Iqbal*] changed that." *Bacon v. Georgia Ports Auth*., ___ F.Supp.2d ___, 2010 WL  5538515, *1 (S.D. Ga., Dec. 17, 2010) (citations omitted) (Attachment 1), *adopted with mod.,* 2011 WL 43504 (S.D. Ga., Jan. 6, 2011) (modified to dismissal without pre-judice) (Attachment 2).  "These [*Twombly-Iqbal*] general pleading standards are equally applicable to employment discrimination cases." *Id*. at *2 (same).

While the pleader does not have to "allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assur. v. Stephens*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (internal quotations and citations omitted).

3.      <u>The Standard As Applicable To Pleadings Of *Pro Se* Litigants</u>.

Although a *pro se* litigant's allegations are given a liberal construction and his pleading are held to a "less stringent standard than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).  In a decision not selected for publication in the Federal Reporter 3rd, the Eleventh Circuit acknowledged that the *Iqbal* standards are applicable to pleadings filed by *pro se* litigants when a motion to dismiss for failure to state a claim is considered.  *Hopkins v. Saint Lucie County Sch. Bd.,* 399 Fed. App'x 563, 565 (11th Cir., Oct. 13, 2010) (not published in F.3d) (per curiam).

**B.** **HALEY'S ACTION IS BARRED BY HIS FAILURE TO COMPLY WITH THE PLRA'S REQUIREMENT THAT HE EXHAUST ALL AVAILABLE ADMINISTRATIVE REMEDIES.**

Before a prisoner brings an action "under section 1983 of this title, or any other Federal law," concerning his prison conditions, the Prison Litigation Reform Act ("PLRA") requires that the prisoner first exhaust "such administrative remedies as are available...." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required even when a prisoner seeks relief that is not available in the administrative proceedings; the *Nussle* Court recognized that

> Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose. Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.... [F]or cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Id*. at 524-25.

The PLRA seeks to eliminate unwarranted interference with the administration of prisons in order to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (alteration and quotation marks omitted).

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement.... This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (section 1983 case against a state). Requiring mandatory

exhaustion where, as in this case, the prison has an available administrative grievance procedure is "consistent with" the Eleventh Circuit's "longstanding recognition of the usefulness of exhaustion requirements." *Alexander v. Hawk,* 159 F.3d 1321, 1327 (11th Cir. 1998) (affirming dismissal of a federal inmates's unexhausted claim, and holding that the futility and inadequacy doctrines did not apply). The exhaustion requirement has been described as a "precondition" to filing a lawsuit, *Garcia v. Glover,* 197 Fed.App'x 866, 868 (11th Cir. 2006) (section 1983 action by federal prisoner as to prior confinement by the state), and as a "mandatory prerequisite to filing suit." *Harris v. Hall,* 2007 WL 2986405, 1 (S.D. Ga. 2007) (section 1983 action as to state confinement) (Wood, J.) (Attachment 3)

The RA's section 504 provision as to "programs and activities conducted by" "Executive agencies" is effectuated by regulations set forth in Part 39 of the Code of Federal Regulations (CFR) -- regulations which apply to "programs or activities conducted by" the Department of Justice ("the DOJ"). 28 C.F.R. § 39.101-103. Specific and apart from the Equal Employment Opportunity Commission (EEOC) procedures applicable for discrimination claims made by DOJ *employees,* the CFR sets forth in § 39.170(d) a separate administrative complaint procedure for non-employment cases, such as this one.

In non-employment cases, as to "all allegations of discrimination on the basis of handicap in programs or activities conducted by the agency," the CFR provides that, "[a]ny person who believes that he or she has been subjected to discrimination prohibited by this part may by him or herself or by his or her authorized representative file a complaint with the [Responsible] Official." 28 C.F.R. § 39.170(d)(1)(I). "Before filing a complaint under this section, an inmate of a Federal penal institution must exhaust the Bureau of Prisons Administrative Remedy Procedure as set forth

in 28 CFR , part 542." 28 C.F.R. § 39.170(d)(1)(ii). An inmate may challenge the final agency decision reached under part 542 by filing an administrative complaint under 28 C.F.R. § 39.170(d)(3) within 180 days of that final administrative decision.[14]

In observing that the PLRA's exhaustion requirement applies to RA cases, one court has described § 39.170 as "precisely the sort of pre-litigation process contemplated by the *Nussle* Court, and section 1997e clearly applies the exhaustion of remedies mandate to the ADA and Rehabilitation Act as 'other Federal law.'" *Scott v. Goord*, 2004 WL 2403853, *7 (S.D.N.Y., Oct. 27, 2004) (state prison case) (Attachment 4). In *Funches v. Reish*, 1998 WL 695904, *6 (S.D.N.Y., Oct. 5, 1998) (unpublished) (Attachment 5), the court held that it had "no choice but to dismiss" an RA claim by a federal prisoner because he had not exhausted his administrative remedies under § 39.170.[15]

The CFR provides a comprehensive scheme for the processing of a non-employment complaint against a federal agency, including procedures for "investigation/conciliation" of the complaint [subsection (g)] and issuance of a "letter of findings" if there is no informal resolution

---

[14] "Complaints may be delivered or mailed to the Attorney General, the Responsible Official, or agency officials. Complaints should be sent to the Director for Equal Employment Opportunity, U.S. Department of Justice, 10th and Pennsylvania Avenue, NW., Room 1232, Washington, DC 20530. If any agency official other than the Official receives a complaint, he or she shall forward the complaint to the Official immediately." 28 C.F.R. § 39.170(d)(4).

[15] One district court in another circuit has suggested that the language of § 39.170(d) is precatory and that therefore exhaustion is not required. *Franco-Gonzales v. Holder,* 2010 WL 5874537, *23 (C.D. Cal., Dec. 27, 2010) (Attachment 6). That case, however, was an immigration case, where the court relied upon its "sound judicial discretion" to determine whether exhaustion was necessary, rather than upon the express exhaustion requirement present in the PLRA. *See id*. at *9. This case, however, is controlled by the PLRA and it is the PLRA which is the source of the exhaustion requirement applicable here. The PLRA provides the requirement that "such administrative remedies as are available" be exhausted prior to filing suit, 42 U.S.C. § 1997e(a), and it is clear that § 39.170(d) creates an "available" administrative remedy which must be exhausted by an inmate.

[subsection (h)]. The "letter of findings" becomes the "final agency decision" if there is no appeal. *See* § 170(j)(4). Where either party appeals, the CFR sets forth procedures as to proceedings before an administrative law judge (ALJ), which must be "conducted in conformity with" "the adjudication and hearing provisions of the Administrative Procedures Act (APA), 5 U.S.C. § 554-557," and for an appeal to, [subsections (i) - (k)], and for issuance of a final decision by, a Complaints Adjudication Officer [subsection (l)].

However, Haley received his final administrative decision on his administrative remedy requests under part 542 on April 26, 2010. Dkt. # 1, page 17. Therefore he failed to timely present a complaint of handicap discrimination under § 39.170(d)(3), and, absent a showing of good cause, *id*., the time for presenting such a complaint has passed.[16] As such, his amended complaint filed pursuant to the PLRA is barred by his failure to timely exhaust all available remedies.

---

[16] There is no express right of action in the RA's section 504, so any right of action for an individual to enforce that provision of the RA in a federal district court would have to be implied. However, "unlike cases where an implied private right of action is found against a non-government defendant, courts consistently refuse to imply a private right of action against the government when the statute or legislative history is silent on the subject." *Dewakuku v. Martinez*, 271 F.3d 1031, 1038 (Fed. Cir. 2001) [citing *Block v. North Dakota*, 461 U.S. 273 (1983)]. Also, while 28 C.F.R. § 39.170 does not provide any suggestion of an avenue for judicial review of a final agency decision under that administrative scheme, in a properly-pled complaint by a plaintiff who had fully met the administrative exhaustion requirements applicable to his or her claim, it might be the case that such a plaintiff could present an effective argument that judicial review would be available under the APA, 5 U.S.C. §§ 701-706. However, this is not such a case, and that issue is not properly before the Court.

**C.** **HALEY HAS FAILED TO PLEAD FACTS SUFFICIENT
TO PLAUSIBLY ALLEGE A REHABILITATION ACT CLAIM.**

Assuming *arguendo* that any named defendant in this action could be held liable to Haley under 29 U.S.C. § 794, Haley has failed to plausibly allege a disability discrimination claim under the RA.

Although this is *not* an employment discrimination case, analogy to employment discrimination cases is helpful in determining whether Haley has plausibly alleged a claim analogous to the sort of "failure to accommodate" claim which can be made in the employment-discrimination context. Haley has failed also to plausibly allege such a claim.

Haley alleges that he is a "qualified individual" "by virtue of his disability, i.e., the limited use of his right hand." Dkt. # 30, page 8, para. 2(a) (italics added). Therefore he is claiming that he has "a physical ... impairment that substantially limits one or more of major life activities...." 28 C.F.R. § 39.103 (definition of "handicapped person").

"'Major life activities' includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 39.103 (definition of "major life activities").

The CFR defines "qualified handicapped person" for purposes of a non-employment RA complaint such as Haley's:

> With respect to any agency program or activity under which a person is required to perform services or to achieve a level of accomplishment, a handicapped person who meets the essential eligibility requirements and who can achieve the purpose of the program or activity without modifications in the program or activity that the agency can demonstrate would result in a fundamental alteration in its nature...

28 C.F.R. § 39.103 (definition of "qualified handicapped person," clause 1).

Haley's bald assertion that he is a qualified individual for purposes of the RA because of the limited use of his right hand is a conclusory allegation. It is a "naked assertion devoid of further factual enhancement," *Iqbal*, 129 S.Ct. at 1949, that fails to meet pleading standards.

Haley has failed to allege facts which would allow an inference that he could achieve the purpose of the UNICOR program without modifications in the program that the agency would be able to demonstrate would result in a fundamental alteration in its nature. Rather, the facts as alleged by Haley allow only an inference that the modification in the UNICOR program that he would need – that is, permission to perform the position with a 50% reduction in its productivity requirement – is a modification that the BOP would be able to demonstrate would result in a "fundamental alteration" of the position's nature.

Again, although this is *not* an employment discrimination case, analogy to disability-based employment discrimination cases provides insight into the requirements for establishing the protected status of being a disabled or handicapped person. In addition, because the federal program at issue here is an inmate work program, disability-based employment discrimination cases are instructive with respect to the relevant standard for determining whether an individual is "qualified" to participate in such a program.

In the employment context, a disability discrimination plaintiff claiming that he has an actual physical impairment must show that (1) he has a disability; (2) he is a qualified individual able to perform the essential functions of his job either with or without a reasonable accommodation, and (3) he was discriminated against because of his disability. *Webb v. Donley*, 347 Fed. App'x 443, 445 (11th Cir., Sep. 14, 2009) (not published in F.3d) (per curiam).

A court generally determines the existence of an actual disability by making a three-point assessment of whether: (1) a plaintiff's condition is a physical impairment; (2) the activities that the plaintiff claims are limited by his condition qualify as major life activities; and (3) the condition substantially limits the major life activities he identifies. *See Bragdon v. Abbott*, 524 U.S. 624, 631-38 (1998).[17] In the employment context, a qualified individual is one with a disability who, "with or without reasonable accommodation, can perform the essential functions of [his] position." 29 C.F.R. § 1630.2(m).

### 1. Haley Has Failed To Plausibly Allege That He Is A Qualified Individual With A Disability.

Even if Haley had exhausted his administrative remedies pursuant to 28 C.F.R. § 39.170, his complaint would be subject to dismissal because Haley does not make even a conclusory allegation that his "limited use of his right hand" has been determined to be an impairment or disability. It is not sufficient for a plaintiff alleging disability discrimination "simply to cite to various health problems...." *Marsh v. Ga. Dep't of Behavioral and Dev. Health Disabilities*, ___ F.Supp.2d ___, 2011 WL 806423, *2 (S.D. Ga., Feb. 14) (Smith, Mag. J.) (Attachment 7), *adopted*, 2011 WL 806658 (S.D. Ga., Mar. 2, 2011) (Edenfield, J.). Similarly, "[i]t is insufficient for individuals attempting to prove disability status ... to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002).[18]

---

[17] Because the same standards govern discrimination claims under the RA and under the ADA, cases construing those statutes may be relied upon interchangeably. *Allmond v. Akal Sec.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009).

[18] The Supreme Court's instruction in the *Toyota* case that the terms "major life activities" and "substantial impairment" must be "interpreted strictly to create a demanding standard for qualifying as disabled...," has been superceded by statute effective January 1, 2009, so that demanding standard does not apply to Haley's claim regarding events in August of 2009. *See* ADA

Haley has not submitted even a medical diagnosis of an impairment or any other evidence of an impairment pertinent to the tasks in his UNICOR positions and therefore pertinent to his claim. His only submission is a document signed by a person whose qualifications are not known (that is, according to the form – who could be merely a "medical record librarian"). Dkt. # 30, page 6. It indicates only that Haley cannot lift more than 10 pounds. *Id*. Moreover, it is dated the day **after** Haley' removal from UNICOR, which he alleges occurred on August 17, 2009. Dkt. # 1, page 10. Therefore it could not have been presented to Defendants prior to his removal from UNICOR.

Nothing in the complaint suggests that Haley was required to lift more than 10 pounds in either the shirt-flipping position or in the subsequent UNICOR 7 position, or that he was removed from UNICOR based upon his purported inability to lift more than 10 pounds. Even construing the definition of disability in favor of broad coverage of individuals,[19] this proffered document is not germane to Haley's allegation that an impairment prevented him from flipping 1800 shirts a day, and his complaint fails to allege facts from which it can be inferred that this document is germane to his allegation that an impairment prevented him from performing the tasks in his UNICOR 7 position (which the amended complaint does not describe), without a modification or accommodation.

Indeed, a Magistrate Judge has recommended, and this Court has adopted, a finding that an employment-discrimination plaintiff who alleged a weight-lifting restriction of 10 pounds based upon an injury to his left arm, plus an inability to use his arm continuously, failed to state a claim under the RA because this failed to establish that he suffers a disability as defined by the RA or that

---

Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008), instructing that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals;" *Kirkeberg v. Canadian Pacific Ry.*, 619 F.3d 898, 904 n.2 (8th Cir. 2010).

[19] *See* n.6, *supra.*

he suffers from an impairment that substantially limits a major life activity. *Bell v. Potter*, ___ F.Supp.2d ___, 2010 WL 5376318, *1 & 3 (Nov. 10, 2010) (Barfield, Mag. J.) (Attachment 8), *adopted,* Order of December 21, 2010 (Hall, J.) (Attachment 9).

Haley's allegation that he was a qualified individual with a disability is therefore merely a conclusory allegation which need not be accepted as true, and it fails to state a claim.

**2.    Haley Has Failed To Plausibly Allege That He Has A Substantial Impairment.**

In the employment-discrimination context, to which we look by analogy, a disability-discrimination plaintiff must offer evidence "that the extent of limitation [caused by the impairment] in terms of [his] own experience ... is substantial." *Toyota*, 534 U.S. at 198. Haley does not offer even a conclusory allegation that he has a limitation caused by an impairment which is, or has been, substantial in his own experience. As noted above, a purported impairment similar to the suggested impairment here – a 10-pound weight-lifting restriction – has been found to fail to state a claim under the RA. *Bell*, 2010 WL 5376318, *1 & 3.

Haley does not identify the "major life activity" allegedly at issue, but for purposes of this motion it is assumed that he contends that he is unable to engage in the "major life activity" of working. However, Haley makes no allegation that he has an impairment to working that has been substantial in his own experience. To the contrary, he alleges that previously he was employed by UNICOR for 48 months, Dkt. # 1, page 6, paras. 1 & 3, which suggests that he does not have a "substantial" impairment to working.

The Supreme Court has explained that "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs

allege they are unable to work in a broad class of jobs." *Sutton v. United Air Lines*, 527 U.S. 471, 491 (1999), *superceded by statute on other g'ds*, Pub.L. 110-235, 122 Stat. 3553 (2008).[20]  The EEOC regulations interpreting the ADA provide that an individual's ability to work is "substantially limited" when the individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3)(i).

Haley has not alleged that he is unable to work in a broad class of positions.  Instead, in his amended complaint, Haley has made a conclusory allegation that he is unable to  perform "a wide range of available jobs in the Federal Prison Industries (Jesup)," giving four examples of positions that he alleges he would not be able to perform.  Dkt. # 30, page 3, para. 9.  This allegation falls short of alleging an inability to perform a *broad class* of positions.

Moreover, as noted above, his allegations reveal that he was able to perform the tasks in some UNICOR positions, as he alleges that he worked in UNICOR in the past for a period of 48-months. Dkt. # 1, page 6, paras. 1 & 3.

Similarly, Haley has not alleged facts sufficient to plausibly allege that he was substantially impaired in any other major life activities.

He therefore has failed to plausibly allege a claim under the RA.

_____

[20]  Although the ADA Amendments Act of 2008 apply in this case, *see* n.9, *supra*, it appears that the law does still require that the plaintiff allege that he or she is unable to be employed in a broad class of jobs, so long as he is alleging a disability pursuant to 42 U.S.C. § 12102(2)(A) that impairs the major life activity of working, as appears to be the case.  No cases addressing this issue have been found, but this appears to have been the intent of the Congress. *See, e.g.,* H.R. REP. No. 110-750, pt. 2, at p. 18.

### 3. Haley Has Failed To Plausibly Allege That He Requested And Was Denied A Reasonable Accommodation.

Again, although this is *not* an employment case, decisions from employment discrimination cases can be of assistance in analyzing whether Haley has plausibly alleged that he requested and was denied a reasonable accommodation in the UNICOR work program, by analogizing to concept of a "reasonable accommodation" in the employment-discrimination context.

In the employment-discrimination context, the burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of the job rests with that employee. *Earl v. Mervyns*, 207 F.3d 1361, 1367 (11th Cir. 2000) (per curiam). Also, it is the plaintiff's burden to show that his requested accommodation is "reasonable on its face...." *US Airways v. Barnett*, 535 U.S. 391, 402 (2002). Haley has not met these burdens.

According to Haley, in his communications with prison officials he sought, and did receive, a reassignment from the shirt-flipping position and he was reassigned to a position in UNICOR 7. Dkt. # 1, page 12. Therefore, according to Haley's own allegations, an accommodation was made for him.

Haley has not alleged that he opposed the reassignment to UNICOR 7 or that he advised any BOP official that he would not be able to perform the tasks of the UNICOR 7 position, with or without a modification that would have been a reasonable accommodation. Nor has he alleged, or shown, that he made a **contemporaneous** request for a **reduced production quota** in any position, as he *now* asserts he should have been given.

a.    **Haley's Request That Another Worker Be Bumped From His Position Did Not Constitute A Request For A Reasonable Accommodation.**

In the employment context, reasonable accommodations may include "reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations." 42 U.S.C. § 12111(9)(B). "The reassignment duty, however, *does not* require the employer to bump another employee from a position in order to accommodate a disabled employee." *Lucas v. WW. Grainger,* 257 F.3d 1249, 1256 (11th Cir. 2001). Nor is the employer required to accommodate an employee by creating a new position. *Terrell v. US Air*, 132 F.3d 621, 626-27 (11th Cir. 1998). The same standards are applicable, by analogy, to the UNICOR work program.

In his BP-9, Haley identified two UNICOR positions other than the one to which he had been assigned that he believed he could perform, those of "sleeve turning" and of orderly. However he has not alleged that there were **vacancies** in these positions, or in any other position that he might be able to perform, either prior to or after his assignment to UNICOR 7. Instead, in his BP-10, Haley asserted that one of the "able-bodied" persons holding unidentified positions in UNICOR 7 should have been reassigned and he should have been placed in one of those positions. Dkt. # 1, page 13. Just as that is not a "reasonable" accommodation in the employment context, it also is not a reasonable accommodation or modification in the context of the UNICOR work program.

While, as discussed above, there are important distinctions between a UNICOR work assignment and regular employment, the regulations governing the UNICOR program demonstrate that it replicates the experience of employment in certain respects. Acceptance into the UNICOR program does not depend upon a job application, but it does depend on certain procedures that

govern one's place on the waiting list.  In addition, different UNICOR positions are categorized at different pay grades, and some positions require a greater level of skill or training than others. Moving an inmate already assigned to a particular UNICOR work detail to another so the Haley could assume that position is, on its face, not a "reasonable" accommodation.  Therefore, Haley has failed to state a claim of failure to accommodate.

  **b.**  **Haley's Belated Request That His Production Quota Be Cut In Half Did Not Constitute A Request For A Reasonable Accommodation**.

  In his amended complaint, Haley makes a new suggestion (which he did not present administratively) that he should have been provided a reduced production quota to facilitate his disability.  Dkt. # 30, page 3, para.13.  Nothing in the amended complaint suggests, however, that he ever made such a request to Defendants.  Though he does not specify a requested quota in the amended complaint, in his supporting averment Haley declares that he was able to accomplish only "approximately 900" of the 1800-shirt turns or flips that the position required.  *Id*., page 13, para. 3.  The necessary quota reduction, then, would have been a reduction of the required production quota by 50%.

  Defendants submit that Haley's suggestion that he be allowed to perform his work detail at only half of the required level of productivity is not a request for a modification that would constitute an accommodation that is "reasonable on its face...," as the Supreme Court has held an accommodation must be.  *Barnett*, 535 U.S. at 402.  For example, courts have held that a request that another employee be assigned to perform part of the disability plaintiff's job is not a request for a reasonable accommodation.  *Mize v. Centura Fin. Serv.*, 2009 WL 3419586, *10-11 (S.D. Ala., Oct. 21, 2009) (Attachment 10), and decisions cited therein.  By analogy, allowing Haley to perform only

half of the work normally expected in his position would be, essentially, to require Defendants to reassign half of his duties to another inmate, if Defendants are to ensure the productivity of the factory.

Therefore Haley has failed to plausibly allege that he was denied a modification that would have been a reasonable accommodation.

**D.    THE INDIVIDUAL DEFENDENTS AND FPI ARE NOT LIABLE UNDER THE ADA OR THE RA, AND A JURY TRIAL, COMPENSATORY DAMAGES, AND PUNITIVE DAMAGES ARE NOT AVAILABLE AGAINST ANY DEFENDANT UNDER SECTION 504 OF THE R.A.**

In response to the motion to dismiss his original complaint, Haley acknowledged that the ADA and the RA do not provide for individual liability, that FPI is not liable under the ADA and the RA, and that punitive damages are not available under the ADA and the RA.  Dkt. # 26, page 3. Yet in his amended complaint, he repeats claims against the individual defendants and claims for compensatory and punitive damages, and he retains FPI as a defendant.  Dkt. # 30, paras. 3-6 (individual liability claims), para. 8 (describing FPI), & Section D (1); Dkt. # 30, pages 8-14.  The amended complaint also states a demand for a jury trial in its caption.

In response to these claims, Defendants incorporate herein by reference the authorities cited and the arguments made in the brief in support of the motion to dismiss the original complaint, Dkt. # 20, pages 6-8, as authority and argument for dismissal of these claims.  *See also Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (punitive damages may not be awarded under § 504 of the RA) (federally-funded defendant case).

The Civil Rights Act of 1991 only permits a jury trial and an award of compensatory damages in "an action brought by a complaining party under the powers, remedies, and procedures set forth

in ... section 505(a)(1)" of the RA (which applies to Section 501 cases, not to Section 504 cases. Accordingly, in *Lane v. Pena*, 518 U.S. 187 (1996), the Supreme Court made it clear that the RA does not waive the government's sovereign immunity from suit for damages under section 504, 29 U.S.C. § 794.[21] *Also Sarvis v. United States*, 234 F.3d 1262 (Table), 2000 WL 1568230, *2 (2d Cir., Oct. 19, 2000) (unpublished) (Attachment 11) (prisoner RA claim for damages barred by sovereign immunity); *Thompson v. United States*, ___ F.Supp.2d ___, 2010 WL 1910293, *3 (W.D.N.Y., May 7, 2010) (Attachment 12) (same); *McBarron v. Fed. Bureau of Prisons*, 2008 WL 294534, *4 (N.D. TX, Feb. 4, 2008) (unpublished) (Attachment 13) (same), *aff'd*, 332 Fed. App'x 961 (5th Cir. 2009) (not published in F.3d).

Also, there is no jury trial for section 504 claims against federal officials. *Crawford v. Runyon*, 79 F.3d 743, 744 (8th Cir. 1996), *citing Lehman v. Nakshian,* 453 U.S. 156, 160-61 (1981) (Seventh Amendment right to jury trial does not apply against federal government, and plaintiff has right to jury trial "only where Congress has affirmatively and unambiguously granted that right by statute"); *see Loren F. ex rel. Fisher v. Atlanta Ind. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2003) (IDEA and RA case) (where only injunctive relief and equitable damages are allowed under a statute, there is no right to a jury trial).

Therefore Haley's plea for a jury trial and his claims for compensatory damages pursuant to the RA must be dismissed as well.

---

[21] The Court noted that section 604 "alone" extends the RA's coverage to programs or activities conducted by any Executive agency. *Lane*, 518 U.S. at 199.

**E.    HALEY'S CONCLUSORY ALLEGATION THAT THERE WAS A PLOT
        TO HAVE HIM FIRED LACKS ADEQUATE FACTUAL ENHANCEMENT
        AND NEED NOT BE ACCEPTED AS TRUE.**

Haley's conclusory allegation that "[i]nstead of replacing me in a position that I could perform [Forsyth, Cousson, and Ognilla] orchestrated to have me fired from UNICOR, " *id.*, page 10, is not accompanied by any factual allegations that would raise this assertion above the speculative level.

Haley makes no allegation that Forsyth, Cousson and Ognilla ever spoke to one another or communicated in any way about Haley's work performance, his assignments, or his future in work details in UNICOR.   Therefore, he makes only a naked assertion devoid of further factual enhancement, *Iqbal*, 129 S.Ct. at 1949, which is a conclusory allegation that need not be accepted as true, and he fails to state a claim.

**F.    HALEY'S AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE
        A *BIVENS* CLAIM; A *BIVENS* CAUSE OF ACTION SHOULD NOT BE
        CREATED HERE BECAUSE AN ALTERNATIVE REMEDY EXISTS;
        AND ANY SUCH CLAIM WOULD BE BARRED BY QUALIFIED IMMUNITY
        AND BY LACK OF PERSONAL INVOLVEMENT.**

The amended complaint asserts *Bivens* claims in its Preliminary Statement but provides little, if any, articulation of such claims.   It makes only vague references to violations of Haley's constitutional rights, to his due process rights, and to his "due process rights to be reasonably accommodated." Dkt. # 30, page 1, "Preliminary Statement;" page 4, section A(1).  This too, then, is a naked assertion devoid of further factual enhancement, *Iqbal*, 129 S.Ct. at 1949, and fails to state a claim.

To the extent, if any, that the amended complaint is deemed to set forth a *Bivens* claim, whether a due process claim or an equal protection claim, Defendants incorporate herein by

reference the authorities cited and the arguments made in the brief in support of the motion to dismiss the original complaint, Dkt. # 20, pages 13-16, and 17-18, as authority and argument for a determination that a *Bivens* claim should be created here and/or for dismissal of any such claim. Also, Defendants assert that an alternative remedy is available to Haley under 28 C.F.R. § 39.170(d).

Additionally, a constitutional claim cannot be premised upon the same facts as an RA claim because the RA claim would be the exclusive remedy. *See Spence v. Straw*, 54 F.3d 196 (3d Cir. 1995); *McGuinness v. United States Postal Serv.*, 744 F.2d 1318, 1322 (7th Cir. 1984).

Finally, as set forth in the discussion of supervisory liability, *infra*, the complaint fails to state individual-liability claims against Haynes and Lappin (and they would be entitled to qualified immunity as to any such claim against them). Haley has not cited any authority suggesting that it was clearly established at the relevant time that the RA applies to inmates in federal prisons and, more specifically, has not cited any authority suggesting that it was clearly established at the relevant time that the RA applies to inmates in federal prisons with regard to assignments to work details.

**G. HALEY'S AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE *BIVENS* CLAIMS AGAINST DEFENDANTS HAYNES AND LAPPIN BECAUSE IT FAILS TO ALLEGE ADEQUATE PERSONAL INVOLVEMENT AND/OR ACTIONABLE CONDUCT BY THEM.**

In response to the allegations against Haynes and Lappin in their individual capacities, Defendant Haynes and Lappin incorporate herein by reference the authorities cited and the arguments made in the brief in support of the motion to dismiss the original complaint, Dkt. # 20, pages 16-17, as authority and argument for dismissal of any such claim or claims against them.

> Supervisory liability lies where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions. There are three ways to establish such a causal connection:

> when a history of widespread abuse puts the responsible supervisor
> on notice of the need to correct the alleged deprivation, and he fails
> to do so. Alternatively, the causal connection may be established
> when a supervisor's custom or policy ... result[s] in deliberate
> indifference to constitutional rights or when facts support an
> inference that the supervisor directed the subordinates to act
> unlawfully or knew that the subordinates would act unlawfully and
> failed to stop them from doing so.

*Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010) (§ 1983 case) (internal

quotations and citations omitted). "The deprivations that constitute widespread abuse sufficient to

notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather

than isolated occurrences." *Id.*, n.13 (same). "The standard by which a supervisor is held liable in

his individual capacity for the actions of a subordinate is extremely rigorous." *Cottone v. Jenne*, 326

F.3d 1352, 1360 (11th Cir. 2003) (quotation marks and alteration omitted).

Haley alleges that Haynes and Lappin became responsible for "the discriminatory acts and

due process violations" "when they failed to correct them in the course of his supervisory

responsibilities," Dkt. # 30, page 4, para. 14, but he makes no factual allegations in support of this

conclusion. He makes no allegation that there was widespread abuse, and he identifies only his own

incident.

Haley cites *Lewis v. Smith*, 855 F.2d 736 (11th Cir.1988) (per curiam), for the proposition

that "[a] supervisor who learns of a constitutional violation through a report or appeal may be held

liable for failing to correct it." In the unusual circumstances in *Lewis*, the Magistrate Judge

recommended, and the district court adopted, a finding that a disciplinary committee hearing a

charge against an inmate failed to document the reasons for its findings of guilt and recommended

penalty as required by *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974), and applicable State

regulations. *Lewis*, 855 F.2d at 737-38. It was held that the documentation therefore "exhibited facial due process violations of which [the defendants] should have been aware," and that these violations should have been obvious on appeal when the documentation was reviewed by the supervisory defendants. *Id*.

Haley has not presented a factual scenario even remotely similar to that in *Lewis*. There is no allegation that Haynes or Lappin received a document or report which **on its face** demonstrated constitutional violations. There is no allegation at all that Lappin reviewed the administrative remedy requests or any document whatsoever. Moreover, even if he had, in reviewing the requests Haynes and Lappin would not have learned of a constitutional violation; they would have learned of an *allegation* of a constitutional (or statutory) violation.

In his administrative remedy response, Haynes stated his understanding that all position vacancies that were available at that time were offered to Haley and Haley refused the offers prior to his termination from UNICOR. Dkt. # 1, page 15.[22] Haley has not alleged, and has not alleged facts which suggest, that Haynes knew or had reason to believe this statement to be untrue. Absent a reason for Haynes to be believe that this statement was untrue, there is no basis for an inference that Haynes failed to remedy a constitutional or statutory violation that was "exhibited" or "obvious" on the facts presented to him within the meaning of the ruling in *Lewis.* That Haley makes a conclusory allegations that he did not refuse any offered positions does not suggest that Haynes was *aware* at the time, or had reason to believe, that Haley had not refused offered positions.

_____

[22] This information relied upon by Haynes was reasonably relied upon by those responding to Haley's appeals at the regional and national appeals levels. Dkt. # 1, pages 16-17.

-30-

More importantly, in *Iqbal*, the Supreme Court expressly rejected the arguments that a supervisor's "knowledge and acquiescence in their subordinates' use of discriminatory criteria ..." and that "a supervisor's mere knowledge of his subordinate's discriminatory purpose" amount to a violation of the Constitution by the supervisor. *Iqbal*, 129 S.Ct. at 1949. Here, Haley has not even alleged that Haynes or Lappin acted with knowledge of use of discriminatory criteria by subordinates or knowledge that subordinates acted with discriminatory purpose. There is nothing to suggest that Haynes was not acting based upon the information, as stated in his response, that Haley was offered and refused all vacant positions. There is nothing to suggest that Lappin "acted" at all. Only Haynes and the those who made determinations on Haley's appeals have been shown to have "acted."

Nor is there any factual allegation whatsoever that Lappin became aware of Haley's issue "in the course of his supervisory duties," or any factual allegation from which it can be inferred that Lappin did become aware of Haley's issue.

Nor has Haley alleged that Haynes or Lappin acted with a purpose or intent to violate his constitutional rights. "In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities." *Iqbal*, 129 S.Ct. at 1949. Haley's complaint therefore fails to state *Bivens* claims against Haynes and Lappin, and they are entitled to qualified immunity.

Finally, a claim of supervisory liability fails where, as here, the underlying claims of constitutional violations fail. *Mann v. Taser Int'l*, 588 F.3d 1291, 1308 (11th Cir. 2009).

Haley makes no factual allegations regarding actions, knowledge, or purpose of Haynes and Lappin which would support claims against them, and his claims against them fail to state a claim upon which relief can be granted.

## H.   **DEFENDANT LAPPIN AND THE BOP ASSERT ADDITIONAL DEFENSES**.

The amended complaint adds the BOP, and its employee, Defendant Lappin,[23] as defendants, but nothing of record indicates that either of these parties he seeks to add has been served with the amended complaint.

To accomplish service upon Harley Lappin in his individual capacity, process must be served in the manner specified in Fed. R. Civ. P. 4(i)(3).  To accomplish service upon Harley Lappin in his official capacity, and upon the BOP, process must be served in the manner specified in Fed. R. Civ. P. 4(i)2).

When damages claims are asserted individually against a federal employee seeking recovery against personal resources, a plaintiff is required to plead facts establishing that the court has personal jurisdiction over the defendant with respect to those claims.  *Pace v. Platt*, 2002 WL 32098709, *6 (N.D. Fla., Sept. 10, 2002) (Attachment 14) and cases cited therein, *aff'd*, 67 F.2d App'x 584 (11th Cir. 2003) (not published in F.3d).  Haley has failed to plead facts establishing that the Court has personal jurisdiction over Lappin.

Service of process could still be accomplished against the BOP and Lappin, *see* Fed. R. Civ. P. 4(m), but inasmuch as Haley has been given leave to amend his complaint once already, Lappin submits that he should not be given leave to amend his complaint yet again to plead facts which

---

[23]  The amended complaint identifies Lappin as the Director of both the BOP and FPI, and alleges that he is sued in both his official and individual capacities.  Dkt. # 30, p. 2.

might establish personal jurisdiction as to him. Of course, should the Court decide that the amended complaint's claims against Lappin and the BOP are otherwise subject to dismissal on the grounds asserted herein, service of process then would not be necessary.

## IV.  CONCLUSION.

For the above and foregoing reasons, Defendants submit that all of Haley's claims against all Defendants should be dismissed.

This 5th day of May, 2011.

Respectfully submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY

/s/ Melissa S. Mundell
Assistant United States Attorney
Georgia Bar No. 529475
Post Office Box 8970
Savannah, Georgia  31412
(912) 652-4422

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this date served the foregoing Brief in Support of Defendants'

Motion to Dismiss Amended Complaint, along with its attachments, upon all parties in this case in

accordance with the Notice of Electronic Filing ("NEF") which was generated as a result of

electronic filing in this Court.

This 5th day of May, 2010.

Respectfully submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY

/s/ Melissa S. Mundell
Assistant United States Attorney
Georgia Bar No. 529475
Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422