Westlaw.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court,
C.D. California.
Jose Antonio FRANCO-GONZALES, et al., Petitioner,
v.
Eric H. HOLDER, Jr. Attorney General, et al., Respondents.

No. CV 10-02211 DMG (DTB).
Dec. 27, 2010.

**Background:** Aliens, who were diagnosed with severe mental illnesses, filed putative class action, alleging that their continued detention without counsel, during pending removal proceedings, violated the Immigration and Nationality Act (INA), the Rehabilitation Act, and the Due Process Clause. Aliens moved for preliminary injunction.

**Holdings:** The District Court, Dolly M. Gee, J., held that:
(1) REAL ID Act did not strip District Court of jurisdiction;
(2) aliens were not required to exhaust administrative remedies;
(3) exclusive jurisdiction provision of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) did not deprive District Court of jurisdiction;
(4) as a matter of first impression, aliens were entitled to reasonable accommodation of appointment of counsel, under the Rehabilitation Act;
(5) aliens were entitled to a custody hearing, at which the government was required to demonstrate that further detention was necessary; and
(6) mandatory injunction was warranted.

Motion granted in part.

West Headnotes

**[1] Injunction 212 ☞132**

212 Injunction
 212IV Preliminary and Interlocutory Injunctions
  212IV(A) Grounds and Proceedings to Procure
   212IV(A)1 In General
    212k132 k. Nature and Scope of Provisional Remedy. Most Cited Cases
 The purpose of a preliminary injunction is to preserve the rights and relative positions of the parties, that is, the status quo, until a final judgment issues. Fed.Rules Civ.Proc.Rule 65, 28 U.S.C.A.

**[2] Injunction 212 ☞132**

212 Injunction
 212IV Preliminary and Interlocutory Injunctions
  212IV(A) Grounds and Proceedings to Procure
   212IV(A)1 In General
    212k132 k. Nature and Scope of Provisional Remedy. Most Cited Cases
 A preliminary injunction is an exercise of a court's equitable authority, which should not be invoked as a matter of course, and only after taking into account all of the circumstances that bear on the need for prospective relief. Fed.Rules Civ.Proc.Rule 65, 28 U.S.C.A.

**[3] Injunction 212 ☞138.1**

212 Injunction
 212IV Preliminary and Interlocutory Injunctions
  212IV(A) Grounds and Proceedings to Procure
   212IV(A)2 Grounds and Objections
    212k138.1 k. In General. Most Cited Cases
 A plaintiff seeking a preliminary injunction must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) that an injunction is in the public interest. Fed.Rules Civ.Proc.Rule 65, 28 U.S.C.A.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
(Cite as: 2010 WL 5874537 (C.D.Cal.))

**[4] Injunction 212 ☞138.21**

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to Procure
        212IV(A)2 Grounds and Objections
          212k138.21 k. Likelihood of Success, or Presence of Substantial Questions, Combined with Other Elements. Most Cited Cases
    An preliminary injunction may be appropriate when a plaintiff raises serious questions going to the merits" and demonstrates that the balance of hardships tips sharply in the plaintiffs' favor. Fed.Rules Civ.Proc.Rule 65, 28 U.S.C.A.

**[5] Injunction 212 ☞5**

212 Injunction
    212I Nature and Grounds in General
      212I(A) Nature and Form of Remedy
        212k5 k. Mandatory Injunction. Most Cited Cases
    Unlike a preliminary injunction, a mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored.

**[6] Injunction 212 ☞5**

212 Injunction
    212I Nature and Grounds in General
      212I(A) Nature and Form of Remedy
        212k5 k. Mandatory Injunction. Most Cited Cases
    Mandatory injunctions should be denied unless the facts and law clearly favor the moving party.

**[7] Injunction 212 ☞5**

212 Injunction
    212I Nature and Grounds in General
      212I(A) Nature and Form of Remedy
        212k5 k. Mandatory Injunction. Most Cited Cases
    A court is empowered to grant mandatory injunctions, especially when prohibitory orders may

be ineffective or inadequate.

**[8] Aliens, Immigration, and Citizenship 24 ☞385**

24 Aliens, Immigration, and Citizenship
    24V Denial of Admission and Removal
      24V(G) Judicial Review or Intervention
        24k385 k. Jurisdiction and Venue. Most Cited Cases

**Habeas Corpus 197 ☞621.1**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
      197III(B) Jurisdiction and Venue
        197III(B)1 In General
          197k621 Exclusive, Concurrent, or Conflicting Jurisdiction
            197k621.1 k. In General. Most Cited Cases
    As a general matter, the REAL ID Act eliminated district court habeas corpus jurisdiction over orders of removal and vested jurisdiction exclusively in the courts of appeals. 8 U.S.C.A. §§ 1252(a)(5), 1252(b)(9).

**[9] Aliens, Immigration, and Citizenship 24 ☞485**

24 Aliens, Immigration, and Citizenship
    24VI Arrest, Detention, Supervision, and Parole
      24VI(E) Judicial Review or Intervention
        24k485 k. In General. Most Cited Cases
    Putative class action filed by aliens diagnosed with severe mental illnesses, challenging their continued detention without counsel, during pending removal proceedings, was not barred by the REAL ID Act, which eliminated District Court's habeas jurisdiction to review orders of removal; the challenge arose independently of the aliens' removal orders, District Court's decision on the merits would not effect the removal orders, and because aliens were likely mentally incompetent, adequate relief was unavailable to them through the administrative process. 8 U.S.C.A. § 1252(a)(5), (b)(9).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
(Cite as: 2010 WL 5874537 (C.D.Cal.))

**[10] Aliens, Immigration, and Citizenship 24** ⚖═►485

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
     24VI(E) Judicial Review or Intervention
       24k485 k. In General. Most Cited Cases
    Aliens diagnosed with severe mental illnesses who filed putative class action, challenging their continued detention without counsel, during pending removal proceedings, were not required to exhaust their administrative remedies before the Board of Immigration Appeals (BIA); since the very core of aliens' claim was that without the appointment of counsel, they would be unable to meaningfully participate in the administrative process before the BIA, and the BIA did not recognize a right to appointed counsel in removal proceedings under any circumstances, resort to the BIA would be futile.

**[11] Administrative Law and Procedure 15A** ⚖═►229

15A Administrative Law and Procedure
   15AIII Judicial Remedies Prior to or Pending Administrative Proceedings
     15Ak229 k. Exhaustion of Administrative Remedies. Most Cited Cases
    Administrative exhaustion is required where mandated by Congress, but where Congress has not clearly required exhaustion, sound judicial discretion governs.

**[12] Aliens, Immigration, and Citizenship 24** ⚖═►485

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
     24VI(E) Judicial Review or Intervention
       24k485 k. In General. Most Cited Cases
    Exclusive jurisdiction provision of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), stripping courts of jurisdiction to hear any cause or claim by or on behalf of any alien arising from decision or action by Attorney General

to commence proceedings, adjudicate cases, or execute removal orders against any alien, except as specifically provided in that section, did not deprive District Court of jurisdiction over putative class action filed by aliens diagnosed with severe mental illnesses, challenging their continued detention without counsel, during pending removal proceedings; the aliens did not challenge the Attorney General's action to adjudicate removal proceedings, but rather sought to temporarily stay removal proceedings until aliens were appointed counsel and to release aliens from custody until they received a hearing. 8 U.S.C.A. § 1252(g).

**[13] Constitutional Law 92** ⚖═►994

92 Constitutional Law
   92VI Enforcement of Constitutional Provisions
     92VI(C) Determination of Constitutional Questions
       92VI(C)3 Presumptions and Construction as to Constitutionality
         92k994 k. Avoidance of Constitutional Questions. Most Cited Cases
    A court must avoid reaching constitutional questions in advance of the necessity of deciding them.

**[14] Civil Rights 78** ⚖═►1055

78 Civil Rights
   78I Rights Protected and Discrimination Prohibited in General
     78k1055 k. Publicly Assisted Programs. Most Cited Cases
    To state a prima facie case under the Rehabilitation Act, plaintiffs must demonstrate that: (1) they are qualified individuals with a disability, as defined under the Americans with Disabilities Act (ADA), (2) they are otherwise qualified for the benefit or services sought, (3) they were denied the benefit or services solely by reason of their handicap, and (4) the program providing the benefit or services receives federal financial assistance. Rehabilitation Act of 1973, § 504(a), 29 U.S.C.A. § 794(a); Americans with Disabilities Act of 1990, §

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
(Cite as: 2010 WL 5874537 (C.D.Cal.))

3(1), 42 U.S.C.A. § 12102(1).

**[15] Aliens, Immigration, and Citizenship 24 ☞347**

24 Aliens, Immigration, and Citizenship
   24V Denial of Admission and Removal
      24V(E) Administrative Procedure
         24k339 Hearing
            24k347 k. Assistance of Counsel. Most Cited Cases

**Civil Rights 78 ☞1447**

78 Civil Rights
   78III Federal Remedies in General
      78k1441 Appointment of Counsel
         78k1447 k. Other Particular Cases and Contexts. Most Cited Cases
   Aliens, who were diagnosed with severe mental illnesses, and detained without counsel, were entitled to reasonable accommodation of appointment of either qualified pro bono or paid counsel to represent them during pending removal proceedings, under the Rehabilitation Act; the safeguards provided under the Immigration and Nationality Act (INA), which included prohibition on accepting admissions of removability from unassisted mentally ill aliens, and permitting a guardian or representative to appear on behalf of alien, were inadequate or not followed during aliens' removal proceedings, aliens lacked any representation, and their mental illnesses prevented them from effectively proceeding pro se. Rehabilitation Act of 1973, § 504(a), 29 U.S.C.A. § 794(a); 8 U.S.C.A. § 1229a(b)(3); 8 C.F.R. §§ 103.5a(c)(2)(ii), 1240.4.

**[16] Civil Rights 78 ☞1020**

78 Civil Rights
   78I Rights Protected and Discrimination Prohibited in General
      78k1016 Handicap, Disability, or Illness
         78k1020 k. Accommodations in General. Most Cited Cases
   While a reasonable accommodation under the

Rehabilitation Act does not require an organization to make a fundamental or substantial alteration to its programs, reasonable adjustments may be required at times to assure meaningful access. Rehabilitation Act of 1973, § 504(a), 29 U.S.C.A. § 794(a).

**[17] Aliens, Immigration, and Citizenship 24 ☞466**

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
      24VI(D) Detention, Supervision, and Parole
         24k464 Detention Pending Removal Proceeding
            24k466 k. Time Limitations. Most Cited Cases
   Aliens, who were diagnosed with severe mental illnesses, and detained for prolonged periods without counsel, were entitled to a custody hearing, at which the government was required to demonstrate that further detention was necessary, where aliens were held for more than six months, and there was no significant likelihood of their removal in the reasonably foreseeable future. 8 U.S.C.A. §§ 1226(a), 1226(c).

**[18] Aliens, Immigration, and Citizenship 24 ☞469**

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
      24VI(D) Detention, Supervision, and Parole
         24k467 Detention After Order of Removal
            24k469 k. Time Limitations; Indefinite Detention. Most Cited Cases
   After a six-month period of detention, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing. 8 U.S.C.A. § 1226(c).

**[19] Aliens, Immigration, and Citizenship 24 ☞469**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
(Cite as: 2010 WL 5874537 (C.D.Cal.))

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
     24VI(D) Detention, Supervision, and Parole
       24k467 Detention After Order of Removal
         24k469 k. Time Limitations; Indefinite
Detention. Most Cited Cases
    The presumption that continued detention of an
alien for period exceeding six months is not reasonable does not require release of every alien not removed after six months. 8 U.S.C.A. § 1226(c).

**[20] Aliens, Immigration, and Citizenship 24**
**⬤⟿485**

24 Aliens, Immigration, and Citizenship
   24VI Arrest, Detention, Supervision, and Parole
     24VI(E) Judicial Review or Intervention
       24k485 k. In General. Most Cited Cases
    Mentally ill aliens, who were detained pending
removal proceedings, without counsel, and for prolonged periods without custody hearings, were entitled to mandatory preliminary injunction requiring the immediate appointment of qualified counsel to represent them during their immigration proceedings and to custody hearings; aliens were likely to succeed on the merits of their claims that they were entitled to appointment of counsel and custody hearings, harm to mentally ill aliens of being deprived of counsel, and either deported or remaining in custody indefinitely could not be remedied by later award of damages, cost to government or providing counsel and holding custody hearings was modest in comparison to harm to aliens, and public had strong interest in protecting the mentally ill and in accurate and fair determinations in removal proceedings.

John David Blair-Loy, Sean Riordan, ACLU Of San Diego & Imperial Counties, San Diego, CA, Michael H. Steinberg, Sullivan & Cromwell LLP, Ahilan T. Arulanantham, Jennifer L. Stark, ACLU Foundation of Southern California, James J. Preis, Mental Health Advocacy Services Inc., Judy London, Talia R. Inlender, Public counsel, Los Angeles, CA, Judy Rabinovitz, American Civil Liberties Union, New York, NY, Matt Adams,

Northwest Immigrant Rights Project, Riddhi Mukhopadhyay Northwest Immigrants' Rights Project, Seattle, WA, for Petitioner.

Samuel P. Go, Victor M. Lawrence, Office of Immigration Litigation, Neelam Ihsanullah, U.S. Department of Justice, Washington, DC, Assistant U.S. Attorney LA-CV, AUSA-Office of U.S. Attorney, Los Angeles, CA, for Respondent.

### UNDER SEAL

### *AMENDED* ORDER RE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
DOLLY M. GEE, District Judge.
   **\*1** This matter is before the Court on the Motion for a Preliminary Injunction filed by Plaintiffs Aleksandr Petrovich Khukhryanskiy and Ever Francisco Martinez-Rivas ("Plaintiffs"). The Court conducted a hearing on December 8, 2010 (the "December 8 Hearing"). Having duly considered the parties' respective positions, as presented in their briefs and at oral argument, the Court now renders is decision. For the reasons set forth below, Plaintiffs' Motion is GRANTED in part.

### I.
### PROCEDURAL BACKGROUND
   On March 26, 2010, Petitioner Jose Antonio Franco-Gonzales ("Franco") filed a Petition for Writ of *Habeas Corpus* (the "Petition") in this Court alleging various violations of the Immigration and Nationality Act ("INA"), the Due Process Clause of the 5th Amendment to the U.S. Constitution, and Section 504 of the Rehabilitation Act. On March 31, 2010, Respondents released Franco from custody on his own recognizance, under conditions of supervision pursuant to section 236 of the INA, 8 U.S.C. § 1226.

   On August 2, 2010, Franco attempted to file a first amended class action complaint (the "Amended Complaint"), which sought to add new plaintiffs and new causes of action and sought certification on behalf of a class of plaintiffs whose situations are similar to Franco's former situation, *i.e.,*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
(Cite as: 2010 WL 5874537 (C.D.Cal.))

mentally disabled immigrant detainees who are held in custody without counsel. (Am.Compl.¶¶ 39-82, 96-137.) On August 6, 2010, the Honorable David T. Bristow, United States Magistrate Judge, rejected the Amended Complaint as untimely under Fed.R.Civ.P. 15(a). On August 23, 2010, Franco filed an *Ex Parte* Application to file the Amended Complaint, which Magistrate Judge Bristow denied on September 3, 2010.

On September 14, 2010, Franco filed a Motion for Review of Magistrate Judge's Decision Denying *Ex Parte* Application to Amend Complaint. On October 18, 2010, this Court granted Franco's Motion and provided Franco 15 days to file an amended complaint. [Doc. # 54.]

On November 2, 2010, Franco filed a First Amended Class Action Complaint ("First Amended Complaint"), which added Khukhryanskiy and Martinez as well as three other named plaintiffs. [Doc. # 64.] The First Amended Complaint alleges the following causes of action: (1) right to a competency evaluation under the INA; (2) right to a competency evaluation under the Due Process Clause; (3) right to appointed counsel under the INA; (4) right to appointed counsel under Section 504 of the Rehabilitation Act; (5) right to appointed counsel under the Due Process Clause; (6) right to release under the INA; (7) right to release under the Due Process Clause; (8) right to a detention hearing under the INA; (9) right to a detention hearing under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"); (10) right to a detention hearing under the Due Process Clause; and (11) violation of the Administrative Procedures Act. [FN1]

On November 15, 2010, Plaintiffs filed (1) a TRO Application [Doc. # 57], (2) a Motion for a Preliminary Injunction [Doc. # 57], and (3) an Expedited Discovery Application [Doc. # 60]. On November 16, 2010, Defendants filed an Opposition to the TRO Application, and on November 17, 2010, Plaintiffs filed a Reply. Defendants filed their Opposition to the Expedited Discovery Application

on November 19, 2010, and on November 22, 2010, Plaintiffs filed a Reply. On November 24, 2010, the Court issued an order (the "TRO") granting Plaintiffs' TRO Application and denying Plaintiffs' Expedited Discovery Application. [Doc. # 78.] The Court also set a hearing on the Preliminary Injunction Motion for December 8, 2010.

*2 On December 1, 2010, Defendants filed an Opposition to Plaintiffs' Preliminary Injunction Motion. On December 6, 2010, Plaintiffs filed a Reply. On December 15, 2010, each of the parties filed supplemental briefs on issues identified at the December 8 Hearing, and on December 17, 2010, the parties filed their respective supplemental responses. On December 20, 21, and 22, 2010, the parties submitted additional unsolicited filings, including Defendants' "Notice of Clarification," a "Response to Defendants' Notice of Clarification," and Defendants' Status Reports regarding their efforts to secure *pro bono* counsel for Plaintiffs.

## II.
### FACTUAL BACKGROUND
#### A. ALEKSANDR KHUKHRYANSKIY
Plaintiff Khukhryanskiy is a 45-year-old native and citizen of Ukraine who was admitted to the United States as a refugee on January 9, 1998. (Pls.' Req. for Judicial Notice ("RJN"), Ex. 58.) According to Defendants, Khukhryanskiy failed to adjust his status to that of a legal permanent resident, a step that he was required to take as early as January 9, 1999, pursuant to 8 U.S.C. § 1159(a)(1)(C).[FN2] (Defs.' Opp'n at 6.)

On April 15, 2010, Khukhryanskiy was taken into custody by Department of Homeland Security ("DHS"). He was referred to Immigration and Customs Enforcement ("ICE") from the United States Citizenship and Immigration Services ("USCIS") after submitting his application for refugee adjustment of status pursuant to 8 U.S.C. § 1159. (Pls.' RJN, Ex. 58.) DHS initiated removal proceedings against him, charging him as deportable for having been convicted of an aggravated felony on the basis of his 2005 conviction for attempted assault and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

robbery. (Pls.' RJN, Ex. 64.) He is currently detained at the Northwest Detention Center in Tacoma, Washington.

### 1. *Khukhryanskiy's Psychiatric Evaluation*

Khukhryanskiy has been diagnosed with paranoid schizophrenia and psychosis (not otherwise specified), post-traumatic stress disorder, and major depression. (Decl. of Ahilan T. Arulanantham ("Arulanantham Decl. ¶¶ 5-6, Exs. 60-61.) He has been receiving mental health treatment after being involuntarily placed at Adventist Mental Health Services in 2004 through a mental health commitment hearing. (Arulanantham Decl. ¶ 7, Ex. 62.)

DHS's Form I-213, "Record of Deportable/Inadmissible Alien," for Khukhryanskiy states:

Subject has been diagnosed by [Snake River Correctional Institute] medical as a Paranoid Schizophrenic and is taking involuntary Haldol Decanoate (150 mg IM q 3 weeks) injections as well as Cogentin (2mg bid prn) twice daily otherwise the subject has no visible defects or injuries.

(Defs.' RJN, Ex. 58 at 4.)

Khukhryanskiy's medical records indicate that on August 20, 2010, Khukhryanskiy went to the clinic and stated:

The voices are really bothering me. I can not be here anymore. Let them deport me. I have court on the 30th, I will sign any thing they ask me to sign. Just get me out of here. I am not sleeping. I need something to help me sleep.

*3 (Decl. of Ahilan Arulanantham in Supp. of Pls.' Reply ("Arulanantham Reply Decl.") ¶ 8, Ex. 87, at 84.) Then, on August 21, 2010, Khukhryanskiy was brought to medical staff because he was deemed to be a danger to himself. (*Id.* at 82.) One entry for August 21, 2010 states:
Patient with paranoid schizophrenia brought down to medical for danger to self. He is banging his head extremely hard to the point that he will injure himself and was yelling. He was brought

into clinic in a state of streaming [sic] and struggling with the officers ... He is delusional and hallucinating and in a psychotic episode with aggitation/acting out [sic].

(*Id.*) Another entry on August 21, 2010 indicates that Khukhryanskiy placed a cord around his neck:
Suicide Watch Started p/ detainees in POD reported Khuklhyanskiy [sic] was hitting his head against the wall and had placed a 'cord' around his neck ...

S: 'I can't take this place anymore, I can't control the voices in my head. I need to be released. I am going mad here!!!'

When asked if he would hurt/kill self he said, 'No,' but when RN asked detainee why he had wrapped a cord around his neck he said it was because he was going mad. Detainee would not elaborate on voices, but instead just kept saying, 'I must get out.'

(*Id.* at 83.)

On September 20 and September 24, 2010, Kimberly Barrett, a professor at the University of Washington's Department of Psychology with 20 years of experience conducting competency and mental health evaluations in criminal and immigration proceedings, met with Khukhryanskiy. (Declaration of Riddhi Mukhopadhyay ("Mukhopadhyay Decl.") ¶¶ 10-11.) In a report dated October 3, 2010, which is entitled, "Psychological Evaluation: Aleksandra [sic] Mestrovic Khukhryanskiy," Dr. Barrett states that Khukhryanskiy's mental illness is "chronic and very severe." (Mukhopadhyay Decl. ¶¶ 10-11, Ex.). Dr. Barrett states:

Mr. Khukhryanskiy suffers from a very active and pronounced psychotic disorder, schizophrenia of the paranoid type.... He has frequent auditory hallucinations that occur every day, most of the day.... His psychosis interferes with a great deal of his cognitive functioning including

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

thinking, judgment, concentration, interpretation of verbal input, and inability to express himself a great deal of the time.... *This client is not competent to represent himself, nor is he competent to stand trial with an attorney.*"

(Mukhopadhyay Decl. ¶¶ 10-11, Ex. at 2-3; emphasis in original .)

**2. *Immigration Court Proceedings***
At a hearing on May 25, 2010, Khukhryanskiy stated to the Immigration Judge:

I have to say that I have to be back-to go urgently to the hospital. I have some problems with my head.

(Pl.'s RJN, Ex. 88.) In response, the Immigration Judge stated:
All right, sir. There is a public health clinic here at the facility and you can see them on a daily basis, sir. Let the officer know you need to go to the clinic for any reason.

***4** (Id.)*

On August 25, 2010, the Immigration Judge held a master calendar hearing (the "August 25 Hearing"). At that hearing, Khukhryanskiy stated, "I just want to leave this country." (Pls.' RJN, Ex. 66 at 8-9.) Defendants also highlight the following exchange:

*Judge to Respondent:* ... Sir, are you afraid to return to the Ukraine?

*Respondent to Judge:* No.

*Judge to Respondent:* Would you like to choose the Ukraine as the country of deportation?

*Respondent to Judge:* Yes, I want to be deported to the Ukraine.

*Judge to Respondent:* Okay. All right, then I will enter an Order of Removal. You do not wish to apply for any relief from removal? You just want to go home?

*Respondent to Judge:* Yes.

(Pls.' RJN, Ex. 66, at 13.) On that basis, the Immigration Judge ordered Khukhryanskiy removed from the United States to Ukraine. (Pls.' RJN, Ex. 65.) The Order of the Immigration Judge indicates that Khukhryanskiy waived his right to appeal, even though no such waiver is explicit in the record. (*Id.*)

During that same August 25 Hearing, Khukhryanskiy stated that he did not understand the proceedings:

*Judge to Respondent:* Okay. But before I do that, sir, we've got to go through some other things first. Do you understand what's happening today?

*Respondent to Judge:* Yes. But I don't understand anything now.

(Pls.' RJN, Ex. 66, at 10.) Plaintiffs contend that Robert Mason, a DHS officer, attended the August 25 Hearing to assist the Immigration Judge by answering questions regarding Mr. Khukhryanskiy. According to Defendants, however, Mr. Mason was not present to serve as Mr. Khukhryanskiy's representative.

Khukhryanskiy's appeal is pending at the Board of Immigration Appeals ("BIA"), which issued a briefing schedule requiring Khukhryanskiy to file his appeal brief by November 12, 2010. (Pls.' RJN, Ex. 67.) Through the Legal Orientation Program ("LOP") provided by the Executive Office for Immigration Review ("EOIR"), Khukhryanskiy received assistance filing a Briefing Extension Request, which extended the briefing schedule to approximately December 3, 2010. (Pls.' RJN, Ex. 68.) But for the issuance of the TRO, Khukhryanskiy's brief would have been due on or about December 3, 2010.

**B. EVER FRANCISCO MARTINEZ-RIVAS**
Plaintiff Martinez is a 31-year-old native and citizen of El Salvador who has been a Lawful Per-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

manent Resident since 2006. (Declaration of Maria Elena Felipe ("Felipe Decl.") ¶¶ 2-3.) On May 30, 2008, Martinez was convicted in the Riverside Superior Court for a violent crime against his stepfather. (Felipe Decl. ¶ 6; Defs.' RJN, Exs. 1-2.) At that time, Martinez was initially deemed incompetent to stand trial for the offense, but was eventually restored to competency and pled guilty. (Arulanantham Decl. ¶ 9, Ex. 71 at 6.) ICE served Martinez with a Notice to Appear ("NTA") dated October 20, 2009, which placed Martinez in removal proceedings. (Pls.' RJN, Ex. 72; Defs.' RJN, Ex. 4.) Martinez is currently detained at the Otay Mesa Detention Facility in San Diego, California. (Pls.' RJN, Ex. 75.)

**1. _Martinez's Psychiatric Evaluation_**
   *5 Martinez suffers from schizophrenia and has been repeatedly hospitalized over a number of years due to this disability. (Arulanantham Decl. ¶ 8, Ex. 70.) DHS's Form I-213, "Record of Deportable/ Inadmissible Alien," for Martinez states that he "is schizophrenic and currently is taking medication for said medical condition." (Pls.' RJN, Ex. 72 at 2.)

   On August 2, 2010, Robert Burchuk, M.D., a member of the Expert Panel of the Los Angeles Superior Court, examined Martinez. (Declaration of Robert Burchuk, ¶¶ 3-4.) Following his examination, Dr. Burchuk diagnosed Martinez with " Schizophrenia, Undifferentiated Type, Continuous with Prominent Negative Symptoms," and described Martinez's symptoms as "[a]ffective flattening-the absence of facial expression, alogia-the inability to speak more than a few words at a time, and avolition-the inability to initiate and persist in goal-directed activity." (Burchuk Decl. ¶¶ 6-7.) According to Dr. Burchuk, Martinez:

   [c]annot understand, formulate, and verbally express ideas in a way that most other people can. _His schizophrenia also causes him to suffer from auditory hallucinations and a paucity of spontaneous thoughts, and renders him unable to process and synthesize information_ ... As a result of his

illness, Mr. Martinez is only marginally competent to proceed in the deportation hearing with the assistance of an attorney. _He is clearly not competent to represent himself._ His illness precludes a capacity to conceptualize ideas and verbally advocate a defense in his removal proceedings.

   (_Id._) (emphasis added.)

**2. _Immigration Court Proceedings_**
   During the pendency of his removal proceedings, Martinez attended several master calendar hearings before the San Diego Immigration Court. (Felipe Decl. ¶ 9, Pls.' RJN, Ex. 75.) At a hearing on June 4, 2010, Martinez's mother, Ms. Maria Elena Felipe, addressed the court to point out that she had served as her son's conservator for several years. (Felipe Decl. ¶ 9; Pls.' RJN, Ex. 75 at 3.) At each of the hearings, the Immigration Judge apprised Martinez of his right to obtain counsel and recommended he seek attorneys from the LOP. (Pls.' RJN, Ex. 75 at 2.) Martinez remained unrepresented during the entirety of his Immigration Court proceedings. (_Id._)

   On April 2, 2010, the Immigration Judge took Martinez's pleas to the NTA and provided Martinez with a copy of Form I-589 for Martinez to pursue relief under the Convention Against Torture. (_Id._ at 2.) Martinez filed the application with the Immigration Court on May 25, 2010. (_Id._) The immigration court set the merits hearing on September 16, 2010 (the "September 16 Hearing"). (_Id._ at 3.)

   On August 31, 2010, Defendants submitted Dr. Burchuk's evaluation to the Immigration Court. (Pls.' RJN, Exs. 74-75.) In a memorandum to the Immigration Judge, DHS stated "in the event that Martinez is determined by the Court to be mentally incompetent, this Court has the authority to appoint a custodian, such as Maria Elena Felipe (Martinez's mother and former conservator) to speak on his behalf." (Pls.' RJN, Ex. 74.) Martinez's mother was not in attendance at the September 16 Hearing.

   *6 At the September 16 Hearing, the Immigra-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

tion Judge found that Martinez was not mentally competent to proceed *pro se* in the removal proceedings. The judge further stated that:

> Due to the unstable and fluctuating competence of the Respondent, and at the request of the government to ensure that all of the Respondent's rights and privileges be protected, since the Court cannot be certain that the Respondent was mentally competent when: (1) he was served the NTA; (2) when pleadings were taken; (3) when exhibits were admitted; (4) when the Respondent filed his relief application, the Court, out of an abundance of caution and to ensure that all of the Respondent's rights and privileges are protected, will set aside all prior actions taken in this case. Additionally, the court will find that the NTA was not properly served, since it was served on a mentally incompetent *pro se* individual, and it was not properly served on an individual who was authorized to accept such service on behalf fo [sic] the Respondent ... Simply put, the Respondent is unrepresented and is mentally incompetent. The Court finds that the Respondent is unable to effectively participate in a coherent manner, to comprehend the nature and consequences of the proceedings, to communicate with the Court in any meaningful dialog, to assert or waive any rights, and to seek various forms of relief.

(Pls.' RJN, Ex. 75 at 8-9.)

The Immigration Judge terminated the proceedings and certified her decision for appellate review. (*Id.* at 9-10.) Martinez's case is currently pending before the BIA and, but for the issuance of the TRO, his brief would have been due on December 8, 2010. (Declaration of Talia Inlender [Doc. # 69-1] ¶ 3.)

## III.
### *LEGAL STANDARDS*

[1][2] Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. The purpose of such injunctive relief is to preserve the rights and relative positions of the parties, *i.e.,* the status quo, until a final judgment issues. *See U.S. Philips Corp. v. KBC Bank N. V.,* 590 F.3d 1091, 1094 (9th Cir.2010) (citing *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)). An injunction is an exercise of a court's equitable authority, which should not be invoked as a matter of course, and "only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono,* --- U.S. ----, 130 S.Ct. 1803, 1816, 176 L.Ed.2d 634 (2010).

[3][4] A plaintiff seeking injunctive relief must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Toyo Tire Holdings Of Ams. Inc. v. Cont'l Tire N. Am., Inc.,* 609 F.3d 975, 982 (9th Cir.2010) (citing *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)). An injunction may be appropriate when a plaintiff raises "serious questions going to the merits" and demonstrates that "the balance of hardships tips sharply in the plaintiffs favor." *Alliance for Wild Rockies v. Cottrell,* --- F.3d ----, 2010 WL 2926463, at *7 (9th Cir. July 28, 2010) (quoting *The Lands Council v. McNair,* 537 F.3d 981, 987 (9th Cir.2008)).

*7 [5][6][7] Unlike a preliminary injunction, a mandatory injunction "goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 879 (9th Cir.2009) (internal quotations omitted). Mandatory injunctions should be denied unless the facts and law clearly favor the moving party. *Transwestern Pipeline Co. v. 17.19 Acres of Property Located in Maricopa County,* 550 F.3d 770, 776 (9th Cir.2008) (citing *Stanley v. University of Southern California,* 13 F.3d 1313, 1320 (9th Cir.1994)). The Court, however, is empowered to grant mandatory injunctions, especially when pro-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

hibitory orders may be ineffective or inadequate. *Katie A., ex rel. Ludin v. Los Angeles County,* 481 F.3d 1150, 1156-57 (9th Cir.2007).

## IV.
### DISCUSSION
**A. THE COURT HAS JURISDICTION TO REVIEW PLAINTIFFS' CLAIMS**

Defendants argue that the Preliminary Injunction Motion should be denied because: (1) judicial review of legal questions arising from Plaintiffs' removal proceedings are barred by 8 U.S.C. §§ 1252(a)(5), (b)(9); (2) Plaintiffs failed to exhaust their administrative remedies; and (3) the Court lacks jurisdiction under 8 U.S.C. 1252(g) because the Preliminary Injunction Motion arises from the BIA's decision or action to adjudicate Plaintiffs' cases. Defendants concede that their "jurisdictional argument specifically pertains to [Plaintiffs'] appointment of counsel claim [and that Plaintiffs'] challenges to detention are still permitted under the Real ID Act because they are deemed independent of the removal proceedings themselves." (Defs.' Opp'n to Pl.'s App. for Expedited Discovery at 3 n.1.)

**1. *Sections 1252(a)(5) and (b)(9) Do Not Strip This Court of Jurisdiction In This Case***

[8] Defendants contend that Plaintiffs' claims are barred by the REAL ID Act because Plaintiffs seek judicial review of legal and factual questions "arising from" Plaintiffs' removal proceedings. Plaintiffs respond that neither Section 1252(a)(5) nor Section 1252(b)(9) bar review of their claims because they do not challenge final orders of removal.[FN3] As a general matter, the REAL ID Act of 2005 eliminated district court *habeas corpus* jurisdiction over orders of removal and vested jurisdiction exclusively in the courts of appeals. *Morales-Izquierdo v. Dept. of Homeland Security,* 600 F.3d at 1080, 1083. The Ninth Circuit has determined that "[b]y virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of *orders of removal.*" *Singh,* 499 F.3d at 978 (emphasis added);

*see also Nadarajah v. Gonzales,* 443 F.3d 1069, 1075 (9th Cir.2006) (the REAL ID Act's jurisdiction stripping does not apply to *habeas* petitions that do not involve final orders of removal).

Under the REAL ID Act, an "order of removal" means:

the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation.

**\*8** 8 U.S.C. § 1101(a)(47)(A); *see also Morales-Izquierdo,* 600 F.3d at 1082.

An order of removal becomes *final* upon the earlier of:

(i) a determination by the Board of Immigration Appeals affirming such order; or

(ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.

8 U.S.C. § 1101(a)(47)(B); *see also Singh,* 499 F.3d at 979.

In *Singh,* the Ninth Circuit distinguished between challenges to removal orders and "challenges that arise independently." 499 F.3d at 978. Although the petitioner's ineffective assistance of counsel claim arose *after* the issuance of the final removal, the court emphasized that permitting Singh's petition would "lead to nothing more than a 'day in court' for Singh." *Id.* at 979. The *Singh* court recognized that while Singh's ultimate goal may have been to overturn the final removal order, success on his *habeas* petition itself would not produce that result. Rather, Singh's petition was "consistent with Congressional intent underlying the REAL ID Act" and neither Sections 1252(a)(5) nor (b)(9) stripped the court of jurisdiction. *Id.* at 973.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
(Cite as: 2010 WL 5874537 (C.D.Cal.))

[9] In their Opposition, Defendants highlight the fact that Singh's claim arose *after* the issuance of the final order of removal. *Singh*, 499 F.3d at 979. The Court is not persuaded by Defendants' attempt to distinguish Singh. In fact, the timing of Singh's claim was not critical to the Ninth Circuit's analysis. *See, e.g., Kharana v. Chertoff*, 2007 WL 4259323, at *3 (N.D.Cal.2007) (*Singh* court did not limit its holding to situations where the ineffective assistance claim arose *after* the issuance of the removal order). Instead, emphasizing the difference between the immediate goal of his *habeas* petition and his "ultimate goal," the Ninth Circuit concluded that Singh's claim was a "challenge that [arose] independently." Likewise, in the instant matter, if Plaintiffs prevail on the merits of this case, they would be entitled only to relief that would help to ensure their meaningful participation in removal and/or custody proceedings.

At this time, neither Plaintiff has received a final removal order. Their BIA appeals are currently pending. While Plaintiffs' ultimate goal undoubtedly pertains to the removal orders themselves, their petition for relief before this Court is indistinguishable from that in *Singh*. As Plaintiffs explain in their Reply:

If [Plaintiffs] cannot litigate their appointment of counsel claim prior to the BIA briefing deadlines, they could be deported imminently-if the BIA dismisses their cases because they have failed to file a brief-and in any event will never be able to present their claim, because they are not competent to brief it *pro se*. In contrast, if the relief sought is granted, then once this Court has resolved their claim for right to appointed counsel, the BIA can continue to assess their cases (hopefully with the assistance of counsel). Plaintiffs will still have one and only one opportunity to seek judicial review of their removal orders, as Congress intended.

*9 (Pl.'s Reply at 6.)

Defendants also rely on *Aguilar v. U.S. Immigr.*

*and Customs Enf. Div. of Dep't of Homeland Sec.*, 510 F.3d 1 (1st Cir.2007), in support of their contention that this Court is devoid of jurisdiction. The petitioners in *Aguilar*, who had been detained en mass in a raid along with more than 300 individuals, filed a *habeas* petition and a complaint alleging a violation of constitutional and statutory rights, including the right to counsel. No formal removal proceedings had been initiated as of the time of their petition. Noting the "frequency with which right-to-counsel claims arise in removal proceedings" and finding no evidence that the petitioners would be irreparably harmed if they were required to administratively exhaust their claims, the court held that Section 1252(b)(9) stripped the court of jurisdiction to consider the petitioners' right-to-counsel claims. *Id.* at 13.

This Court is neither bound by the First Circuit's decision nor persuaded that it is applicable in this case. Here, as discussed *supra*, the weight of the evidence presented demonstrates that Plaintiffs are mentally incompetent. Plaintiffs' unique circumstances withstand characterization as the same type of right-to-counsel claims that the First Circuit found are "frequently" raised in removal proceedings. Because Plaintiffs are mentally incompetent, they are likely to be irreparably harmed if they are unable to meaningfully participate in their respective immigration proceedings. The Court finds that Plaintiffs' claims represent the other category of cases recognized by the *Aguilar* court, *i.e.*, those in which "adequate relief" is unavailable through the administrative process because irreparable injury would result from requiring administrative exhaustion. *Id.* at 12. As the *Aguilar* court noted, "courts have demonstrated a particular hostility" to requiring administrative exhaustion in such circumstances.

Finding no basis to construe Plaintiffs' claims as a challenge to a final order of removal as defined in 8 U.S.C. § 1101(a)(47)(B), the Court concludes that 8 U.S.C. §§ 1252(a)(5) and (b)(9) do not strip the Court of jurisdiction in this case.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
(Cite as: 2010 WL 5874537 (C.D.Cal.))

Page 13

## 2. Plaintiffs Are Not Required to Exhaust Administrative Remedies Before the BIA

[10] Defendants contend that Plaintiffs should be required to proceed with their BIA appeals because the BIA is already on notice in both cases that it must adjudicate the issue of the procedural safeguards guaranteed to mentally ill respondents in removal proceedings. Defendants fail to identify, and the Court has not found, any authority mandating administrative exhaustion under these circumstances.[FN4] Instead, Defendants contend that prudential exhaustion is "an appropriate prerequisite" for Plaintiffs' claims .[FN5]

[11] Exhaustion is required where mandated by Congress, but where Congress has not clearly required exhaustion, "sound judicial discretion governs." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). In determining whether exhaustion is required, the Supreme Court spoke of an "intensely practical" approach in balancing the individual interests in prompt access to a federal judicial forum with countervailing institutional interests.[FN6] *Id.* ("[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further"). The Ninth Circuit has held that there is no exhaustion requirement where resort to the administrative agency would be futile, *i.e.,* in cases where the agency's position "appears already set and it is very likely what the result of recourse to administrative remedies would be." *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 747 (9th Cir.1992) (citing *Matthews v. Eldridge,* 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976) (internal quotations omitted).

*10 In *El Rescate,* where the petitioners challenged the failure of the INS to require translation of all removal proceedings, the Ninth Circuit determined that it would be unrealistic to require the plaintiffs to exhaust their administrative remedies

where the BIA had already "announced and reaffirmed its policy regarding translation of immigration proceedings, and its understanding of the requirements of the due process clause." *El Rescate,* 959 F.2d at 747.

In this case, the Court likewise takes an "intensely practical" approach in determining whether requiring exhaustion would, in fact, be futile. Sections 2.3(a) and 5.9(h)(1) of the BIA Practice Manual indicate that the BIA neither entertains motions to hold cases in abeyance while other matters are pending nor recognizes a right to appointed counsel in removal proceedings under any circumstances.[FN7] Defendants argue that "Congress has decided that aliens in immigration court proceedings, whether incompetent or not, do not have a right to appointed counsel at government expense." (Defs.' Opp'n to Pl.'s App. for Expedited Discovery at 12) (citing 8 U.S.C. § 1362, 8 U.S.C. § 1229a(b)(4)(A)).[FN8] The Court can discern no administrative mechanism that would even entertain Plaintiffs' claims for assistance of counsel.

In response, Defendants argue that a variety of accommodations are possible at the administrative level short of appointment of counsel, including the appointment of guardians *ad litem,* termination of Plaintiffs' immigration proceedings, and administrative closure of Plaintiffs' immigration proceedings. Defendants further argue that Plaintiffs can move the BIA to hold their proceedings in abeyance while they pursue their substantive claims under the Rehabilitation Act.

Defendants' arguments ring hollow given the procedural background of this case and Defendants' constantly evolving positions. Plaintiffs find themselves in a unique posture following a Kafkaesque journey to this Court's door. Prior to the commencement of this action, Khukhryanskiy had been in mandatory detention without a hearing for over seven months. Despite existing evidence of his mental incompetence, the Immigration Court proceeded with a removal hearing wherein Khukhryanskiy appeared *pro se.* It is unclear

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

whether anyone brought Khukhryanskiy's mental condition to the Immigration Judge's attention or whether anyone involved in the process considered the implications of Khukhryanskiy's condition. A removal order ultimately issued against Khukhryanskiy and he was deemed by the Immigration Judge to have waived his right to appeal, notwithstanding that no such waiver appears in the record.

Juxtaposed against Khukhryanskiy's experience is that of Martinez, who had been in mandatory detention without a hearing for more than one year. Appearing *pro se* at his removal proceeding, Martinez was deemed mentally incompetent by the Immigration Judge. To her credit, the Immigration Judge terminated the removal proceedings after recognizing that she could not go forward with the proceeding given Martinez's mental condition. Martinez is expected, however, to represent himself on the appeal to the BIA as to the propriety of the Immigration Judge's decision.

**\*11** Aside from the voices inside their heads, both Plaintiffs are for all intents and purposes voiceless. Defendants, in essence, urge this Court to allow mentally incompetent aliens to proceed *pro se* to see if they can present a thoughtful and coherent analysis of, and recommendations of possible remedies for, the lack of procedural safeguards facing unrepresented mentally incompetent aliens. [FN9] (Defs.' Opp'n at 15-18.) The Court cannot find that requiring Plaintiffs to exhaust-whether in administrative proceedings prior to reaching the BIA, or before the BIA itself-would be fruitful in any respect in light of the severe mental illnesses from which Plaintiffs suffer.

Accordingly, the Court finds that, as in *El Rescate,* it would be futile to require Plaintiffs to exhaust their administrative remedies.

**3. *Section 1252(g) Does Not Strip This Court of Jurisdiction***

[12] Defendants next argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction. Plaintiffs

respond that Section 1252(g) does not bar this action because Plaintiffs merely seek to continue their cases for a matter of several weeks until such time as they have secured qualified representation.

Section 1252(g) states as follows:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence proceedings, adjudicate cases, or execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added).

The Supreme Court has emphasized Section 1252(g)'s narrow reach. *See Reno v. American-Arab Anti-Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). The provision applies only to the following "three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* at 482 (emphasis in original; internal quotations omitted). The Supreme Court has also recognized that there are decisions or actions "collateral" to those discrete actions, stating:

There are of course may other decisions or actions that may be part of the deportation process-such as the decisions to open an investigation, to surveil the suspected violator, *to reschedule the deportation hearing,* to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order. [¶] "It is implausible that the mention of three discrete events along the road to deportation was a short-hand way of referring to all claims arising from deportation proceedings. Not because Congress is too unpoetic to use synecdoche, but because that literary device is incom-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

patible with the need for precision in legislative drafting.

*12 *American-Arab,* 525 U.S. at 482 (emphasis added).

Like other Circuit courts, the Ninth Circuit has recognized that Section 1252(g)'s jurisdiction-stripping over decisions or actions to "adjudicate" cases does not remove federal jurisdiction to grant injunctive relief to classes of aliens challenging deportation procedures. *See, e.g., Barahona-Gomez v. Reno,* 236 F.3d 1115, 1121 (9th Cir.2001) (noting Fourth and Seventh Circuits have held that decisions or actions that occur during the formal adjudicatory process are not rendered unreviewable because of Section 1252(g)). Instead, the Ninth Circuit has distinguished between actions to obtain judicial review of the merits of INS proceedings and actions to enforce constitutional rights to due process in the context of those proceedings. *See Walters v. Reno,* 145 F.3d 1032, 1052 (9th Cir.1998).

In *Ortiz v. Meissner,* 179 F.3d 718 (9th Cir.1999), the Ninth Circuit determined that it had jurisdiction to review administrative denials of the plaintiffs' applications for interim work authorization. In so doing, the court was particularly concerned that without district court jurisdiction, there would be no meaningful opportunity for the plaintiffs to obtain a resolution of their claim. The court stated:

Plaintiffs, according to the government, must wait until they have been ordered deported to seek interim work authorization in a court of appeals review of the deportation proceeding. Yet by that time, the period in which plaintiffs claim they are entitled to work authorization would already have passed. The legal issue would be moot. District court jurisdiction is therefore available because limiting judicial review of the INS's construction of the statute here would be 'the practical equivalent of a total denial of judicial review' of this claim.

*Ortiz,* 179 F.3d at 722 (citing *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 497 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991)).

Similarly, the *Walters* court determined that it had jurisdiction to review the plaintiffs' due process claims that document fraud forms failed to provide plaintiffs with adequate notice:

They have not raised a constitutional challenge to any of the substantive factors used by the government in determining whether to charge someone with document fraud, nor have they made any allegations as to the merits of the decision to execute removal orders against them, except the extent necessary to substantiate their due process claims. Although constitutional violations ultimately may have led to the plaintiffs' erroneous deportation, the resulting removal orders were simply a consequence of the violations, not the basis of the claims. Moreover, if the plaintiffs prevail on their claims, they will not be entitled to any substantive benefits; rather, they will only be entitled to reopen their proceedings.

*Walters,* 145 F.3d at 1052.

In this case, Defendants contend that Plaintiffs' action is one challenging the Attorney General's action to "adjudicate" Plaintiffs' cases because "their request is to enjoin the adjudication of Plaintiffs' immigration cases entirely by requesting that this Court prohibit any and all actions in their removal proceedings from being taken-a request that is plainly barred by 8 U.S.C. § 1252(g)." (Def.'s Opp'n at 7-8.)

*13 The Court is not persuaded by Defendants' attempt to reframe Plaintiffs' petition. Plaintiffs ask the Court to enjoin removal proceedings until Plaintiffs are afforded adequate legal representation and to enjoin Plaintiffs' detention unless Plaintiffs are provided a bond hearing before an Immigration Judge. As in *Walters,* Plaintiffs have not raised a constitutional challenge to Defendants' decision to adjudicate cases against them or the merits of that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 16

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

adjudication. While the alleged constitutional violations that Plaintiffs allege may have led to the decisions currently on appeal before the BIA, if Plaintiffs prevail on their claims, they will only be entitled to legal representation to assist in their removal proceedings. Defendants disregard this pivotal distinction.

The Court also finds the cases cited by Defendants are inapposite. As Defendants recognize in their Opposition, *Ali v. Mukasey,* 524 F.3d 145 (2d Cir.2008), held that Section 1252(g) applied to a claim that the DHS improperly exercised its discretion in bringing removal proceedings against various aliens. As discussed supra, the instant action does not involve a challenge to the Attorney General's exercise of his discretion to adjudicate Plaintiffs' cases. *Tobar-Barrera v. Napolitano,* 2010 WL 972557 (D.Md.2010), simply follows the holding in *American-Arab* that Section 1252(g) deprives courts of jurisdiction over challenges to government actions "to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at * 2. In *Tobar-Barrera,* the petitioner sought to enjoin proceedings pending before the Immigration Court, challenging the Government's discretion to recommence removal proceedings against him after had awaited an asylum ruling for almost 16 years.

Finally, *Moore v. Mukasey,* 2008 WL 4560619 (S.D.Tex.2008), held that to the extent petitioner sought to enjoin the commencement of removal proceedings, the court lacked subject matter jurisdiction. Presumably, even Plaintiffs would agree that if they were mounting a challenge to the Attorney General's discretion to commence proceedings, adjudicate cases, or execute removal orders, such claims would be barred by Section 1252(g).

Finding no authority to the contrary, the Court concludes that Section 1252(g) does not preclude this Court from exercising jurisdiction in this case.

## B. PLAINTIFFS DEMONSTRATE LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs maintain that they are likely to suc-ceed on the merits of their claims because: (1) the Due Process Clause requires (a) the appointment of counsel for unrepresented non-citizens whose serious mental disabilities render them incompetent to represent themselves and (b) the provision of a custody hearing in light of Plaintiffs' prolonged detention; (2) Plaintiffs' liberty interests at stake entitle them to appointed counsel; and (3) Section 504 of the Rehabilitation Act requires (a) the appointment of counsel as an accommodation for non-citizens who are not competent to represent themselves and (b) a custody hearing in light of Plaintiffs' prolonged detention.

**\*14** The Court discusses Plaintiffs' claims for appointment of counsel and for a custody hearing in turn. As explained below, the Court finds that Plaintiffs have demonstrated that they are likely to succeed on the merits of their claims.

### 1. *Plaintiffs' Claims for Appointment of Counsel*

[13] The Court must avoid reaching constitutional questions in advance of the necessity of deciding them. *Rosenberg v. Fleuti,* 314 U.S. 449, 451, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963); *see also In re Joye,* 578 F.3d 1070, 1074 (9th Cir.2009) . Accordingly, the Court first addresses Plaintiffs' claims for appointment of counsel under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

### a. *Plaintiffs State a Prima Facie Case for Violation of the Rehabilitation Act*

Section 504 provides that no "qualified individual with a disability" be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a); *see also* 6 C.F.R. § 15.30 (prohibiting discrimination by DHS); 28 C.F.R. § 39.130 (prohibiting discrimination by the Department of Justice). An organization that receives federal funds violates Section 504 if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

services.[FN10] 28 C.F.R. § 35.130(b)(7); *Alexander v. Choate,* 469 U.S. 287, 300-01 n. 21, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *Mark H. v. Hamamoto,* 620 F.3d 1090, 1098 (9th Cir.2010).

[14] To state a *prima facie* case under Section 504, Plaintiffs must demonstrate that: (1) they are qualified individuals with a disability, as defined under the Americans with Disabilities Act ("ADA"), (2) they are otherwise qualified for the benefit or services sought; (3) that they were denied the benefit or services solely by reason of their handicap; and (4) the program providing the benefit or services receives federal financial assistance. *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir.2002). A "disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual,

(B) a record of such an impairment, or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).

Defendants do not appear to challenge the fact that Plaintiffs have established a *prima facie* case under Section 504. The Court therefore assumes, for purposes of this Motion, that a *prima facie* case exists.

**b. *Existing Safeguards Are Inadequate And Do Not Satisfy The Requirements Of The Rehabilitation Act***

[15] Although the INA provides aliens with the "privilege" of representation, such representation is not provided at the Government's expense. *See* 8 U.S.C. § 1229a(b)(4)(B), 8 U.S.C. § 1362.[FN11] Nevertheless, 8 U.S.C. § 1229a(b)(3) requires the Attorney General to provide certain "safeguards" to protect the rights of mentally incompetent aliens:

**\*15** If it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe *safeguards* to protect the rights and privileges of the alien.

8 U.S.C. § 1229a(b)(3) (emphasis added). Among such existing "safeguards" are that (1) Immigration Judges are prohibited from accepting admissions of removability from unassisted mentally ill aliens, *see* 8 C.F.R. § 1240.10(c), [FN12] and (2) the Government is required to serve the NTA on a mentally incompetent alien's representative, *see* 8 C.F.R. § 103.5a(c)(2)(ii). [FN13] In addition, pursuant to 8 C.F.R. § 1240.4, a *representative* or *guardian* is permitted to appear on behalf of the alien in removal proceedings:

When it is impracticable for the respondent to be present at the hearing because of mental incompetency, the attorney, legal representative, legal guardian, near relative, or friend who was served with a copy of the notice to appear *shall be permitted to appear* on behalf of the respondent. *If such a person cannot reasonably be found or fails or refuses to appear, the custodian of the respondent shall be requested to appear on behalf of the respondent.*

8 C.F.R. § 1240.4 (emphasis added).[FN14]

The parties appear to agree that neither Plaintiff received the appropriate existing "safeguards," as required by 8 U.S.C. § 1229a(b)(3) . In both cases, service of the NTA was defective because it was not served on either Plaintiff's representative and, as a result, neither Plaintiff was accompanied by a representative, as contemplated by 8 C.F.R. § 1240.4.[FN15] Thus, Plaintiffs were not provided with even the most minimal of existing safeguards under section 1240.4, let alone more robust accommodations required under the Rehabilitation Act.

Where the parties diverge is on what must be done at this juncture. According to Plaintiffs, none of the regulatory "safeguards," discussed *supra* and cited to by Defendants, even if properly implemented, would assist Plaintiffs in their appeals before the BIA absent the appointment of counsel. Defend-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

ants contend that the BIA should first be allowed to determine what procedural rights are necessary for mentally incompetent aliens.

### c. *Plaintiffs' Individual Circumstances Warrant A Reasonable Accommodation*

The unique circumstances of Plaintiffs' case present a matter of first impression to the Court. The Court must take into account Plaintiffs' individual characteristics and the procedural posture of their cases pending before the BIA in order to assess the reasonableness of the accommodation requested. *See Mark H.,* 620 F.3d at 1098 (a determination of what is "reasonable" depends on an individualized inquiry and requires a "fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow meaningful access to the program).

### i. *Plaintiff Martinez*

Martinez prevailed in his underlying Immigration Court removal proceedings. After being presented with Dr. Burchuk's finding of Martinez's mental incompetency, the Immigration Judge determined Martinez was not competent to proceed *pro se* and *sua sponte* terminated the proceedings and set aside all prior actions taken in the case. She then certified her decision for review by the BIA.

**\*16** On the facts presented, it is difficult to conceive of any paradigm in which Martinez could proceed *pro se.* Dr. Burchuk found that Martinez's mental illness "causes him to suffer from auditory hallucinations and a paucity of spontaneous thoughts, and renders him unable to process and synthesize information," the result of which is that he is unable to "understand, formulate, and verbally express ideas in a way that most other people can." (Burchuk Decl. ¶¶ 6-7.) What Martinez now faces is the daunting task of drafting and filing a brief that sets forth the factual and legal basis upon which the BIA should uphold the termination of his removal proceedings. [FN16] Indeed, if, as the regulations recognize, an Immigration Judge cannot accept an admission of removability from an unrepresented mentally incompetent alien, it is hard to

imagine how Martinez could now be deemed competent to represent himself in presenting arguments in support of his position on any appellate review.

Federal regulations permit a mentally incompetent alien to be accompanied by an "attorney, legal representative, legal guardian, near relative, or friend who was served with a copy of the notice to appear," or if such person cannot be found, a "custodian." 8 C.F .R. § 1240.4. As the Immigration Judge noted in her decision, however, "[t]he regulations at 8 C.F.R. § 1204.4[sic] are only a single paragraph long, and fail to define key terms, such as 'custodian.' " (Pls.' RJN, Ex. 75 at 7.)

Notwithstanding that Martinez's mother had been appointed as his conservator at certain times in the past, she was not so appointed at the time of the September 16 Hearing and was not served with the NTA on Martinez's behalf. In any case, the Immigration Judge found that the Immigration Court could not "compel her to appear" on Martinez's behalf. Plaintiffs also present Ms. Felipe's testimony that she "could not and cannot serve" as Martinez's legal representative, stating:

> I want what is best for my son. I cannot do as good a job as an attorney because I have no experience or education in the law. I do not understand many of the legal terms that I have heard used by the judge at court. I also do not have access to all of the information that real attorneys need to make legal arguments. For instance, I do not have or know how to use a computer, and I do not have books about the law.

(Decl. of Maria Elena Felipe, dated December 2, 2010, ¶ 8) [Doc. # 85-1].

Even if the Court could compel Ms. Felipe to serve as Martinez's "representative," the Court is not convinced that doing so would be a "reasonable accommodation" for Martinez at this juncture. Martinez finds himself at this critical crossroad due to Defendants' failure to provide adequate safeguards at the inception of his detention and removal pro-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
(Cite as: 2010 WL 5874537 (C.D.Cal.))

ceedings. What Martinez's case presents is an opportunity for the BIA to finally provide, at best, systemic guidelines for unrepresented mentally incompetent aliens who require reasonable accommodations in removal proceedings, and, at least, clearer guidance to the Immigration Court, Defendants, and Martinez in this uncharted area of the law. As the Immigration Judge plaintively pointed out in her decision, there is a marked lack of precedent and guidance available to immigration judges in proceedings pertaining to unrepresented mentally incompetent aliens:

*17 The current law and regulations offer little guidance, as to how the Court should proceed with a *pro se* Respondent who has been deemed mentally incompetent to proceed with removal proceedings.... [T]he Attorney General has provided little guidance regarding steps to take to protect the rights and privileges of the alien. Immigration case law has also failed to adequately address what such steps are to be taken for an incompetent, *pro se*, alien in removal proceedings ... Currently there are no cases discussing the procedural safeguards for an *unrepresented* mentally incompetent alien; on the contrary, the cases discuss matters where the aliens *were represented* by counsel or an accredited representative or where the Respondent was deemed to be *competent.*

(Pls.' RJN, Ex. 75 at 6) (emphasis in original).

Given Plaintiff Martinez's mental condition and the importance of the issues at stake in the pending BIA appeal, the Court is compelled to conclude that he is entitled under the Rehabilitation Act to a reasonable accommodation that would provide him with adequate representation.

### ii. *Plaintiff Khukhryanskiy*

Unlike Martinez, Khukhryanskiy was ordered removed at his removal proceeding. The Immigration Judge in Khukhryanskiy's case did not address whether Khukhryanskiy was mentally competent to proceed *pro se,* despite the plethora of evidence in Khukhryanskiy's medical records indicating that he suffers from severe mental illness.

Not only did the Form I-213 in Khukhryanskiy's file reveal that he was diagnosed as a paranoid schizophrenic, his medical records indicate that on August 20, 2010, just five days before the August 25 Hearing in which he admitted to his removability, Khukhryanskiy complained of hearing voices in his head, stating he "[would] sign anything they ask [him] to sign." (Arulanantham Reply Decl. ¶ 8, Ex. 87, at 84.) The next day, on August 21, 2010, Khukhryanskiy was taken to medical staff because he was "banging his head extremely hard to the point that he will injure himself and he was yelling" and wrapped a cord around his neck. (*Id.* at 82.) According to the medical records, Khukhryanskiy stated, "I can't take this place anymore. I can't control the voices in my head. I need to be released. I am going mad here!!!" (*Id.* at 83.)

As in Martinez's case, the NTA was not served on a "near relative, guardian, committee, or friend," as required by 8 C.F.R. § 103.5a(c)(2)(ii). Khukhryanskiy appeared *pro se* at his August 25 Hearing. The Immigration Judge ordered him removed and Khukhryanskiy filed an appeal before the BIA. Plaintiffs ask the Court to enjoin the BIA appellate proceedings pending appointment of counsel at Government expense to assist Khukhryanskiy in prosecuting his appeal.

On the evidence presented, the Court finds that Khukhryanskiy was not mentally competent when he was served with the NTA and when his pleadings were taken. Thus, Khukhryanskiy, like Martinez, did not meaningfully participate in his removal proceedings as a result of his mental illness. As with Martinez, the Court finds that Khukhryanskiy is likely to prevail on his claim that Defendants violated the Rehabilitation Act when they failed to provide him with adequate safeguards at the inception of his detention and during removal proceedings and that he is entitled to adequate representation under that Act.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

**d.** *A "Qualified Representative" Is A Reasonable Accommodation For These Plaintiffs*

   *18 Given the Court's finding that Plaintiffs are entitled to adequate representation under the Rehabilitation Act, the Court must next examine what constitutes "adequate representation" and determine whether paid appointed counsel would be a reasonable accommodation for Plaintiffs in this case.

   [16] While a reasonable accommodation does not require an organization to make a "fundamental" or "substantial" alteration to its programs, reasonable adjustments may be required at times to assure "meaningful access." *Alexander,* 469 U.S. at 300-01.

   Defendants attack the reasonableness of Plaintiffs' proposed accommodation-paid appointed counsel-and argue that Section 504 is only intended to level the playing field and not to provide advantages to the disabled.[FN17] Defendants fail, however, to address well-established authority holding that an accommodation that provides a preference is not, in and of itself, unreasonable. In *Barnett,* the U.S. Supreme Court held:

   While linguistically logical, this argument fails to recognize what the Act specifies, namely, *that preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal.* The Act requires preferences in the form of "reasonable accommodations" that are needed for those with disabilities to obtain the *same* workplace opportunities that those without disabilities automatically enjoy. By definition any special "accommodation" requires the employer to treat an employee with a disability differently, *i.e.,* preferentially. And the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach.

   *Barnett,* 535 U.S. at 397 (emphasis added); *see also Giebeler v. M & B Associates,* 343 F.3d 1143, 1150 (9th Cir.2003) (applying *Barnett* to hold that an accommodation may result in a preference for

disabled individuals over otherwise similarly situated nondisabled individuals).[FN18]

   Defendants initially urged the Court, at this critical phase of the BIA proceedings, to allow important issues to be presented to the BIA and addressed by an unrepresented mentally incompetent alien. Defendants contended that the fact that the BIA is on notice of Plaintiffs' mental incompetence is a sufficient safeguard of Plaintiffs' rights.[FN19] (Defs.' Opp'n at 15-18.) Perhaps recognizing that such a position is untenable, Defendants alternatively requested that the Court permit them time to find *pro bono* counsel to represent Martinez or to hold the immigration proceedings in abeyance while Plaintiffs exhaust their administrative remedies under the Rehabilitation Act. As discussed *supra,* in light of the Court's finding that requiring Plaintiffs to administratively exhaust would be futile, the Court does not find merit in Defendants' request to hold the immigration proceedings in abeyance pending exhaustion of administrative remedies.

   On December 21, 2010, Defendants filed a status report [Doc. # 103] informing the Court that on December 20, 2010, the Capital Area Immigrants' Rights ("CAIR") Coalition, a *pro bono* legal organization, agreed to represent Martinez in his case before the BIA, which Defendants argue extinguishes the exigency of Martinez's claim. Defendants filed another status report on December 22, 2010 to report that they had located *pro bono* counsel for Khukhryanskiy and requested the Court delay its ruling on Plaintiffs Motion until December 27, 2010 to see if the *pro bono* representation would "come[ ] to fruition." (Defendants' Status Report, filed December 22, 2010.)

   *19 The Court is not authorized to extend the TRO beyond the date of this Order without the parties' consent. Rule 65(b)(2) of the Federal Rules of Civil Procedure states:

   The order expires at the time after entry-not to exceed 14 days-that the court sets, unless before

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

that time the court, for good cause, *extends it for a like period* or *the adverse party consents to a longer extension.* The reasons for an extension must be entered in the record.

Fed.R.Civ.P. 65(b)(2) (emphasis added). The Court issued the TRO on November 24, 2010 and it cannot be extended more than 28 days without the parties' consent. At the telephonic status conference held on December 21, 2010, the parties declined to consent to any further extension of the TRO.

As of the date of this Order, Defendants have filed a "status report." There is no sworn declaration confirming that Defendants have secured counsel for both Martinez and Khukhryanskiy relating to their immigration proceedings, presenting evidence that a retainer agreement has been signed by Plaintiffs and *pro bono* counsel, or providing the Court with information demonstrating that the scope of the proposed representation encompasses the full extent of the legal proceedings contemplated by Plaintiffs' Preliminary Injunction Motion. Rather, Defendants have notified the Court that Defendants have engaged in the process of securing counsel for Plaintiffs and that certain counsel have responded favorably to Defendants' efforts. Such information, in and of itself, is insufficient to either extinguish the urgency of, or to moot, Plaintiffs' claims. *See Rosemere Neighborhood Ass'n v. U.S. EPA,* 581 F.3d 1169, 1173 (9th Cir.2009) ("the mere [voluntary] cessation of illegal activity in response to pending litigation does not moot a case"). Defendants' offer of counsel speaks volumes, however, regarding the reasonableness of the proposed accommodation and the absence of undue burden in providing the accommodation.

In response to Defendants' offer of *pro bono* counsel, Plaintiffs argue that "to allow the Expedited Relief Plaintiffs to be accelerated in their consideration for pro bono work would lessen the ability of others in the proposed class to be considered, and would thus impact the fiduciary duties that Plaintiffs' counsel has for class members." (Parties' Joint Report [Doc. # 99] at 3.) While Plaintiffs dis-

miss Defendants' offer of *pro bono* counsel as a calculated effort to moot Plaintiffs' claims with piecemeal remedies, Plaintiffs, too, have piecemealed their claims by bringing their Motion as to just two of their named Plaintiffs. What Plaintiffs seem to forget is that before the Court at this time is a fact-specific, individualized analysis of the accommodations that may allow Plaintiffs Martinez and Khukhryanskiy to meaningfully participate in their removal proceedings and proposed custody hearing. The merits of the putative class members' claims are not before the Court on Plaintiffs' Preliminary Injunction Motion.

*20 The Court finds it significant that Plaintiffs themselves define what they consider to be adequate representation. Plaintiffs ask that the representative (a "Qualified Representative") meet five criteria, including that he or she: "(1) be obligated to provide zealous representation; (2) be subject to sanction by the EOIR for ineffective assistance; (3) be free of any conflicts of interest; (4) have adequate knowledge and information to provide representation at least as competent as that provided by a detainee with ample time, motivation, and access to legal materials; and (5) maintain confidentiality of information." (*Id.*) The Court finds that a Qualified Representative would be a reasonable accommodation for Plaintiffs whether he or she is performing the services *pro bono* or at Defendants' expense.

In view of the circumstances presented by Plaintiffs' cases, Plaintiffs' definition of a Qualified Representative, and Defendants' apparent offer of counsel that meet such criteria, the Court finds that it is a reasonable accommodation for Defendants to provide a Qualified Representative(s) to represent Plaintiffs in the entirety of their immigration proceedings, whether such Qualified Representative is performing the services *pro bono* or at Defendants' expense.[FN20]

**e. *Plaintiffs' Due Process Claims***
Plaintiffs also contend that they are likely to prevail in their quest for appointed counsel based

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

upon the Due Process Clause. They analogize their need for appointed counsel to the recognized right to translation services in removal proceedings. They point out that the Due Process Clause applies to deportation hearings and that deportation proceedings violate due process if the alien does not receive a "full and fair" hearing and suffers prejudice as a result. *Cruz Rendon v. Holder,* 603 F.3d 1104, 1109 (9th Cir.2010). The Ninth Circuit has held that "a competent translation is fundamental to a full and fair hearing" and that "an incorrect or incomplete transaction is the functional equivalent of no translation." *Perez-Lastor v. I.N.S.,* 208 F.3d 773, 778 (9th Cir.2000).

In light of the Court's ruling under the Rehabilitation Act, however, the Court need not, and does not, address the merits of Plaintiffs' Due Process claims at this time.

### 2. *Plaintiffs' Claims for a Custody Hearing*

[17] Plaintiffs contend that they are entitled to a custody hearing at which Defendants will bear the burden of showing that further detention is justified under 8 U.S.C. § 1226(c). Section 1226(c) only authorizes mandatory detention where immigration proceedings are "expeditious." [FN21] Plaintiffs in this case have been held for prolonged periods.

[18][19] "A statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas v. Davis,* 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). The Supreme Court has estimated the mandatory detention period under Section 1226(c) to last "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." [FN22] *Demore v. Kim,* 538 U.S. 510, 530, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). After the six-month period, once an alien provides good reason to believe that there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas,* 533 U.S. at 701;

*see also Nadarajah v. Gonzales,* 443 F.3d 1069 (9th Cir.2006). The six-month presumption does not require release of every alien not removed after six months. *Id.* The Ninth Circuit has held that detention beyond an expedited period ceases to be mandatory under Section 1226(c) and instead becomes discretionary under Section 1226(a). *Rodriguez v. Hayes,* 591 F.3d 1105, 1116 (9th Cir.2010); *see also Casas-Castrillon v. Dep't of Homeland Security,* 535 F.3d 942, 951 (9th Cir.2008) ("Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,' ... § 1226(a) must be construed as *requiring* the Attorney General to provide the alien with such a hearing").

*\*21 In this case, both Plaintiffs have been held pursuant to the mandatory detention authority under Section 1226(c) for longer than the presumptively reasonable six months. Thus, their detention has ceased to be mandatory and is now deemed discretionary under Section 1226(a). See Rodriguez,* 591 F.3d at 1116. In light of the Court's ruling on Plaintiffs' Motion, the Court finds that for both Plaintiffs, there is not "significant likelihood of removal in the reasonably foreseeable future." Plaintiffs are therefore entitled to a custody hearing under Section 1226(a) at which Defendants must demonstrate that further detention is necessary.

### C. PLAINTIFFS DEMONSTRATE A LIKELIHOOD OF IRREPARABLE HARM AND THE BALANCE OF HARDSHIPS TIPS SHARPLY IN THEIR FAVOR

[20] Plaintiffs argue that unless counsel is provided, Plaintiffs could be found removable and subsequently deported without ever having an opportunity to litigate the issues that they raise in this lawsuit. If deported, Plaintiffs claim that they could face persecution in their home countries due to their mental disabilities. Plaintiffs further argue that without a custody hearing, Plaintiffs are likely to remain detained for a lengthy and indeterminate period pending their BIA appeals. Plaintiffs also

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

contend that the cost of providing an attorney to represent them is modest if such representation helps to expedite proceedings and thus minimize the cost of detaining Plaintiffs. They point out that because Defendants regularly conduct custody hearings, holding two custody hearings for Plaintiffs is not a significant burden to Defendants.

Defendants neither contest Plaintiffs' position regarding irreparable harm nor present any evidence to the contrary. In fact, in a Notice of Clarification filed on December 20, 2010, Defendants clarified that, contrary to the position they took at the December 8 Hearing, the time period for completing removals is not dependent on the expiration of the 30-day period for appeals taken from the BIA to the Ninth Circuit Court of Appeals. [Doc. # 101.] Indeed, 8 C.F .R. § 241.33 provides that "once an order of deportation becomes final, an alien shall be taken into custody and the order shall be executed," and "the order shall be executed no sooner than 72 hours after service of the decision, regardless of whether the alien is in Service custody." Thus, Plaintiffs become deportable within 72 hours after the BIA renders its decision.

In light of these circumstances, the Court finds that the likelihood of irreparable harm and the balance of hardships tip sharply in favor of Plaintiffs.

**D. AN INJUNCTION IS IN THE PUBLIC INTEREST**
Finally, the Rehabilitation Act embodies Congress' response to its finding that "individuals with disabilities continually encounter various forms of discrimination in such critical areas as ... public accommodations ... and public services" and that "the goals of the Nation properly include the goal of providing individuals with disabilities with the tools necessary to ... make informed choices and decisions...." 29 U.S.C. § 701(a)(5), (a)(6). Defendants do not dispute that the public has a strong interest in accurate and fair determinations in removal proceedings. By granting Plaintiffs' Motion, the Court will be furthering the public interest.

**E. A MANDATORY INJUNCTION IS APPROPRIATE IN THIS CASE**
**\*22** As discussed *supra,* while a mandatory injunction is generally disfavored, the Court is nevertheless empowered to grant a mandatory injunction when prohibitory orders are otherwise ineffective or inadequate. *See, e.g., D.R. v. Antelope Valley Union High School District,* --- F.Supp.2d ----, 2010 WL 4262047 (C.D.Cal.2010) (granting mandatory injunction to provide disabled plaintiff with elevator key as a reasonable accommodation). For the reasons discussed *supra,* any relief short of providing a Qualified Representative for Plaintiffs in this case would be both ineffective and inadequate in providing them with meaningful access to participate in their immigration proceedings. As the Court finds that the law and facts clearly favor Plaintiffs and that the potential for irreparable harm cannot be remedied by a later award of damages, the Court also finds that Plaintiffs have met their burden of demonstrating the need for a mandatory injunction.

**VI.**
**CONCLUSION**
In light of the foregoing:

(1) The Court GRANTS Plaintiffs' Motion for a Preliminary Injunction as follows:

(a) Pending a trial on the merits, Defendants, and their officers, agents, servants, employees and attorneys, and all those who are in active concert or participation with them, are hereby enjoined from pursuing further immigration proceedings against Plaintiffs until such time as (i) Plaintiffs are afforded a Qualified Representative(s) who is willing and able to represent Plaintiffs during all phases of their immigration proceedings, including appeals and/or custody hearings, whether *pro bono* or at Defendants' expense, and (ii) after the implementation of a briefing schedule to be mutually agreed upon by the parties in the underlying BIA proceedings;

(b) Pending a trial on the merits, Defendants,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

and their officers, agents, servants, employees and attorneys, and all those who are in active concert or participation with them, are hereby enjoined from detaining Plaintiffs Martinez and Khukhryanskiy under 8 U.S.C. § 1226(c) unless, within 30 days of this Order, they provide both Plaintiffs with a bond hearing before an Immigration Judge with the authority to order their release on conditions of supervision, unless the Government shows that Plaintiffs' ongoing detention is justified.

(2) The Court waives the bond requirement. *See, e.g., Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir.1999) (nominal security not an abuse of discretion where "vast majority of aliens [affected by class action] were very poor"); *Cal. ex rel Van De Kamp v. Tahoe Reg'l Planning Agency,* 766 F.2d 1319, 1325 (9th Cir.1985) ("[t]he district court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review").

(3) Due to privacy considerations, this Order shall be filed under seal. Within 14 days from the date of this Order, the parties will meet and confer regarding which portions of the Order they propose to be redacted such that a redacted version of the Order may be filed. The parties shall file a joint report with the Court by no later than January 7, 2011 regarding the proposed redacted version of the Order.

**\*23** IT IS SO ORDERED.

FN1. Plaintiff Martinez does not allege the first two causes of action. Franco does not allege the First through Fifth causes of action; only Franco alleges the Sixth and Seventh causes of action.

FN2. Section 1159 provides that "Any alien who has been admitted to the United States under section 1157 of this title ... who has not acquired permanent resident status, *shall,* at the end of such year period,

return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title." 8 U.S.C. § 1159(a)(1)(C) (emphasis added).

FN3. Section 1252(a)(5) provides:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for *judicial review of an order of removal* entered or issued under any provision of this chapter, except as provided in subsection (e) of this section. For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5) (emphasis added).

Section 1252(b)(9) provides:

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available *only in judicial review of a final order under this section.* Except as otherwise provided in

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added).

FN4. Defendants' reliance on *J.L. v. Social Security Administration,* 971 F.2d 260 (9th Cir.1992), *overruled in part by Lane v. Pena,* 518 U.S. 187, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996), is misplaced. In J.L., the court acknowledged that the Rehabilitation Act contained no " *per se* exhaustion requirement," but held that the plaintiffs should first seek relief before the Social Security Administration ("SSA") under a prudential exhaustion requirement. The court held that prudential exhaustion was proper because the SSA's expertise was essential to the court's understanding of the case, the administrative scheme conformed to the Rehabilitation Act, and the plaintiffs sought the adoption of new SSA application procedures. *Id.* at 271. In that case, the plaintiffs made no showing that their needs could not be satisfied through an administrative procedure and the court determined exhaustion would not be futile. *Id.* Here, at the very core of Plaintiffs' claims is that without the appointment of counsel, Plaintiffs will be unable to meaningfully participate in the administrative process before the BIA, and that as a result of well-established administrative policies, resort to the BIA would be futile. The Court therefore finds *J.L.* distinguishable from the instant case. *Douglas v. Gonzalez,* 2006 WL 5159196 (M.D.Fla. June 12, 2006) is also inapposite. There, the petitioner challenged his continued mandatory

detention with simultaneous appeals to the BIA and to the district court. Noting that the petitioner's appeal to the BIA was specifically authorized by 8 C.F.R. 236.1(d)(3), the BIA appeal was still pending, and his appeal contained virtually the same arguments made to the district court, the court determined that the petitioner should be required to first exhaust administratively before seeking relief from the court. *Id.* at * 2.

FN5. Defendants cite to 28 C.F.R. § 39.170 as a basis for requiring Plaintiffs to first administratively exhaust their claims. The plain language of section 39.170, however, does not require administrative exhaustion, but rather, provides that "[a]ny person who believes that he or she has been subject to discrimination prohibited by this part *may* by him or herself or by his or her authorized representative file a complaint with the Official." 28 C.F.R. § 39.170(d)(l)(i) (emphasis added).

FN6. The Supreme Court has recognized that the interests of the individual weigh heavily against requiring administrative exhaustion in the following circumstances: (1) where requiring administrative exhaustion causes undue prejudice to subsequent assertion of a court action; (2) where an administrative remedy is inadequate because of some doubt as to whether the agency was empowered to grant effective relief; and (3) where the administrative body is shown to be biased or has otherwise predetermined the issue. *McCarthy,* 503 U.S. at 146-148.

FN7. Section 2.3(a) provides:

(a) *Right to Counsel.*-An alien in immigration proceedings may be represented by an attorney of his or her own choosing, at no cost to the government. Unlike

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

criminal proceedings, the government is *not* obligated to provide legal counsel. The Immigration Courts provide lists of attorneys who may represent aliens for little or no cost, and many of these attorneys handle cases on appeal as well. Bar associations and nonprofit agencies can also refer aliens to practicing attorneys.

(BIA Practice Manual, Section 2.3(a).)

Section 5.9(h)(i) provides:

(i) *Motion to hold in abeyance.*-The Board does not normally entertain motions to hold cases in abeyance while other matters are pending (e.g., waiting for a visa petition to become current, waiting for a criminal conviction to be overturned).

(BIA Practice Manual, Section 5.9(h)(i).)

FN8. Section 1362 provides:

In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (*at no expense to the Government* ) by such counsel, authorized to practice in such proceedings, as he shall choose.

8 U.S.C. § 1362 (emphasis added).

Section 1229a(b)(4)(A) provides:

(A) the alien shall have the privilege of being represented, *at no expense to the Government,* by counsel of the alien's choosing who is authorized to practice in such proceedings....

8 U.S.C. § 1229a(b)(4)(A) (emphasis added).

ded).

FN9. As of the date of today's Order, Defendants have shifted positions once again and have informed the Court that they have successfully located *pro bono* counsel for both Plaintiffs. (Defendants' Status Report, filed December 22, 2010.) Apparently, Defendants are of the view that this renders Plaintiffs' issues in the Preliminary Injunction Motion moot or, at least, no longer exigent. As will be discussed further below, the Court disagrees.

FN10. Section 35.130(b)(7) provides:

A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).

FN11. Section 1229a(b)(4)(B) provides:

(4) Alien's rights in proceeding

In proceedings under this section, under regulations of the Attorney General-

(A) the alien *shall have the privilege of being represented, at no expense to the Government,* by counsel of the alien's choosing who is authorized to practice in such proceedings,

(B) the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government but these rights shall not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

entitle the alien to examine such national security information as the Government may proffer in opposition to the alien's admission to the United States or to an application by the alien for discretionary relief under this chapter, and

(C) a complete record shall be kept of all testimony and evidence produced at the proceeding.

8 U.S.C. § 1229a(b)(4)(B) (emphasis added).

Section 1362 states:

In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, *the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel,* authorized to practice in such proceedings, as he shall choose.

8 U.S.C. § 1362 (emphasis added).

FN12. Section 1240.10(c) provides:

The immigration judge *shall not accept an admission of removability from an unrepresented respondent who is incompetent* or under the age of 18 and *is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend;* nor from an officer of an institution in which a respondent is an inmate or patient. When, pursuant to this paragraph, the immigration judge does not accept an admission of removability, he or she shall direct a hearing on the issues.

8 C.F.R. § 1240.10(c) (emphasis added).

FN13. Section 103.5a(c)(2)(ii) provides:

In case of mental incompetency, whether or not confined in an institution, and in the case of a minor under 14 years of age, service shall be made upon the person with whom the incompetent or the minor resides; whenever possible, service shall also be made on the near relative, guardian, committee, or friend.

8 C.F.R. § 103.5a(c)(2)(ii).

FN14. In Martinez's case, DHS took the position that "in the event that Martinez is determined by the [Immigration Court] to be mentally incompetent, [the Immigration Court had] the authority to appoint a custodian, such as Maria Elena Felipe (Martinez's mother and former conservator) to speak on his behalf." (Pls.' RJN, Ex. 74.) The Immigration Judge, however, noted in her ruling that she was "unaware of any jurisdiction [the court had] to 'appoint' Ms. Felipe as the Respondent's custodian for these removal proceedings" and that even if Ms. Felipe had been served with a copy of the NTA, "the Court [could not] compel her to appear on behalf of the Respondent." (Pls.' RJN, Ex. 75.)

FN15. The parties appear to dispute whether Robert Mason, a DHS officer, attended Khukryanskiy's hearing for the purposes of assisting Khukhryanskiy. According to Plaintiffs, Mason was present for the purposes of assisting Khukhryanskiy, but was an inadequate safeguard to protect Khukhryanskiy's rights. Defendants clarified at the December 8 Hearing that Mason was not present to represent Khukhryanskiy, but instead, was present to ensure Khukhryanskiy appeared at the hearing and to prevent an *in absentia* order from being filed against Khukhryanskiy.

FN16. Defendants conceded at the December 8 Hearing, the BIA proceedings are

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

"almost always" paper proceedings, *i.e.,* there is no hearing, but a brief needs to be filed.

FN17. Defendants initially took the position that Section 504 does not apply at all to removal proceedings because it could not override the specific provisions of the INA. In their reply to Plaintiffs' supplemental brief on administrative exhaustion, Defendants concede that the Rehabilitation Act does apply to immigration removal proceedings. (Defs.' Reply to Pls.' Supp. Brief [Doc. # 97] at 1.) *See* 6 C.F.R. § 15.30 (prohibiting discrimination by DHS); 28 C.F.R. § 39.130 (prohibiting discrimination by the Department of Justice).

FN18. The Ninth Circuit has recognized that "[t]here is no significant difference in analysis of the rights and obligations created by the [ADA] and the Rehabilitation Act." *Pierce v. County of Orange,* 526 F.3d 1190, 1216 n. 27 (9th Cir.2008) (citing *Zukle v. Regents of Univ. of California,* 155 F.3d 1041, 1045 n. 11 (9th Cir.1999)) (internal quotations omitted).

FN19. Defendants also made much of the fact that the Northwest Immigrant Rights Project ("NWIRP"), an LOP associated with the EOIR requested leave with the BIA to file an *amicus* brief in support of Khukhryanskiy's appeal. (Defs.' Opp'n at 16.) Defendants' efforts to secure *pro bono* counsel for Plaintiffs appear to be a concession that an *amicus* brief from the NWIRP would not be a reasonable accommodation for Khukhryanskiy.

FN20. Plaintiffs urge the Court to appoint an attorney pursuant to 18 U.S.C. §§ 3006A(a)(1)(D), (I) of the Criminal Justice Act ("CJA"). Plaintiffs cite authority for their position that the CJA has been applied in civil proceedings and that courts

recognize that deportation involves the "loss of liberty." Defendants, on the other hand, point to section 210.20.50(d) of the "Guidelines for Administering the CJA and Related Statutes," volume 7, Part A of the Administrative Office of the United States Courts' Guide to Judiciary Policy ("Guide to Judiciary Policy"), which provides:

> Cases or proceedings which are not covered by or compensable under the CJA include the following.... Administrative proceedings before the U.S. Citizenship and Immigration Services (USCIS), removal or deportation proceedings before the Immigration Court, review of the Immigration Court's decision by the Board of Immigration Appeals, and judicial review by the federal courts of appeals of petitions for review from these administrative decisions. **But see:** § 210.20.30 (ancillary matters) and § 210.20.20(a)(2) (habeas corpus cases).

Guide to Judiciary Policy, § 210.20.50(d) (available at http:// www.uscourts.gov/FederalCourts/ AppointmentOfCounsel/CJAGuidelines-Forms/ vol7PartA/vol7PartAChapter2.aspx# 210_20)(emphasis in original); *cf. Chamblin v. I.N.S.,* 176 F.Supp.2d 99 (D.N.H.2000) (appointing counsel under the CJA to represent INS detainees on habeas petitions under 28 U.S.C. § 2241 ), *Saldino v. Thornburgh,* 775 F.Supp. 507 (D.Conn.1991) (appointing counsel under the CJA for petitioners because the interests of justice so required).

The Court is not persuaded that it has authority under the CJA to appoint counsel to represent Plaintiffs in their administrative proceedings before the Immigration Court. As far as the Court is aware, CJA Panel Attorneys, at least in the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)
**(Cite as: 2010 WL 5874537 (C.D.Cal.))**

Central District of California, are screened and selected based upon their qualifications to serve as criminal defense attorneys. Appointing a criminal defense attorney to represent Plaintiffs in a case that revolves around reasonable accommodations for mentally incompetent aliens in removal proceedings would not appear to be a reasonable use of CJA funds or an appropriate accommodation for Plaintiffs.

FN21. Section 1226(c) provides:

(1) Custody

The Attorney General shall take into custody any alien who-

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii),, (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c).

FN22. Because non-citizens detained under Section 1226(c) are not given a bond hearing before an Immigration Judge, they do not have the opportunity to show that they do not pose a danger to the community or a flight risk such that their detention is unnecessary. *Casas-Castrillon,* 535 F.3d 942, 946 (9th Cir.2008).

C.D.Cal.,2010.
Franco-Gonzales v. Holder
--- F.Supp.2d ----, 2010 WL 5874537 (C.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2011 WL 806423 (S.D.Ga.)
**(Cite as: 2011 WL 806423 (S.D.Ga.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. Georgia,
Savannah Division.
Deborah Gail MARSH, Plaintiff,
v.
GEORGIA DEPARTMENT OF BEHAVIORAL
AND HEALTH DEVELOPMENTAL DISABILIT-
IES, Defendant.

No. CV410-273.
Feb. 14, 2011.

Deborah G. Marsh, Reading, PA, pro se.

### REPORT AND RECOMMENDATION

GEORGE R. SMITH, United States Magistrate
Judge.

*1 Plaintiff Deborah Marsh, proceeding *pro se,*
has responded to this Court's previous Order. Docs.
4, 5 & 6. The Court directed her to re-plead what
looked like a Title I, Americans with Disabilities
Act (42 U.S.C. §§ 12101, *et seq.*) claim,[FN1] "[b]ut
after reviewing her hodgepodge of emails, work
forms, hand-written assertions (etc.) and miscel-
laneous documents, the Court [was simply] unable
to discern that." *Id.* She needed to comply with
Fed.R.Civ.P. 8 & 10 because, the Court further ex-
plained, even if it granted her motion for leave to
file her case *in forma pauperis* (IFP), doc. 1, it still
must screen her complaint under 28 U.S.C. §
1915(e)(2)(B).[FN2] That means she must plead a
legal claim against her ex-employer, the Georgia
Department of Behavioral and Health Develop-
mental Disabilities (GDBHDD).[FN3] Doc. 4; *see
also Jones v. Florida Power & Light Co.* ., 2010
WL 1740713 at * 2-3 (S.D.Fla. April 29, 2010)
(ADA pleading burden).

FN1. Under Title I of the ADA,

"[n]o covered entity shall discriminate

against a qualified individual on the
basis of disability in regard to ... em-
ployee compensation, job training, and
other terms, conditions, and privileges of
employment." 42 U.S.C. § 12112(a)
(2009). In order to establish a prima
facie case of employment discrimination
under the ADA, a plaintiff must show
that: (1) she has a disability; (2) she is a
qualified individual; and (3) the employ-
er discriminated against her because of
her disability. *See Greenberg v. Bell-
South Telecomms., Inc.,* 498 F.3d 1258,
1263 (11th Cir.2007) (per curiam)
(interpreting prior version of Act).

*Keeler v. Florida Dept. of Health,* 324 F.
App'x 850, 856 (11th Cir.2009)
(footnote omitted). Marsh's discrimina-
tion claims appear to fit under Title I of
the ADA, "which prohibits certain em-
ployers from discriminating on the basis
of disability. *See* 42 U.S.C. §§ 12111-
12117." *Lowe v. Hamilton County Dept.
of Job & Family Services,* 610 F.3d 321,
325 (6th Cir.2010). There is another por-
tion of the ADA, *see* 42 U.S.C. §§ 12131
-65 ("Title II") (banning public entities
from discriminating against disabled
people in provision of public services),
and "the Eleventh Circuit has interpreted
the broad language of Title II also to in-
clude claims of employment discrimina-
tion. *Bledsoe v. Palm Beach County Soil
& Water Conservation Dist.,* 133 F.3d
816, 820 (11th Cir.1998); *see* 42 U.S.C.
§ 12132 (prohibiting States from
"subject[ing] [disabled persons] to dis-
crimination")." *Williamson v. Georgia
Dept. of Human Resources,* 150
F.Supp.2d 1375, 1379 (S.D.Ga.2001);
*but see Stine v. Pennsylvania State Po-
lice,* 2010 WL 4514326 at * 5 (M.D.Pa.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Attachment 7

Slip Copy, 2011 WL 806423 (S.D.Ga.)
**(Cite as: 2011 WL 806423 (S.D.Ga.))**

Nov.2, 2010) ("Title II of the ADA does not create a cause of action for employment discrimination").

FN2. If a plaintiff proceeds *"in forma pauperis,* a district court is required to *sua sponte* determine whether the complaint: (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (B); *See Alba v. Montford,* 517 F.3d 1249, 1251-52, n. 3 (11th Cir.), *cert. denied,* --- U.S. ----, 129 S.Ct. 632, 172 L.Ed.2d 619 (2008)." *Walker v. Sun Trust Bank Of Thomasville, GA,* 2010 WL 165131 * 4 (11th Cir. Jan.19, 2010).

FN3. As another court explained: "Complaints by pro se plaintiffs, such as Plaintiff here, are read more liberally than those drafted by attorneys. *Osahar v. United States Post Office,* 297 Fed.Appx 863, 864 (11th Cir.2008). However, a pro se litigant is not relieved of his obligation to allege sufficient facts to support a cognizable legal claim and the court may not rewrite a deficient pleading. *Id."* *Rivero v. Taylor,* 2010 WL 3384913 at * 2 (S.D.Fla. Aug.3, 2010).

Furthermore, and in contrast to past pleading practice in employment discrimination cases, plaintiff must plead more than threadbare recitals, legal conclusions and the mere possibility of misconduct. *Bacon v. Georgia Ports Authority,* 2010 WL 5538515 * 1 (S.D.Ga. Dec.17, 2010) (applying *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), to dismiss an employment discrimination case at the pleadings stage, concluding that "where the well-pleaded facts do not permit the court to infer more than the mere possib-

ility of misconduct, then the complaint has alleged-but not shown-that the pleader is entitled to relief").

To that end, the Court explained that it is not sufficient simply to cite to various health problems and an adverse employment result. *Id.* (citing cases like *Joubert v. City of Jacksonville,* 2007 WL 496618 at * 3 (M.D.Fla. Feb.12, 2007) (granting dismissal where the plaintiff merely alleged that he was a qualified individual with a disability without more specific factual allegations to support this conclusion)). Hence, she must plead that she suffered, or was regarded as suffering, "a physical or mental impairment that substantially limits one or more of the major life activities...." 42 U.S.C. § 12102(2)(A).[FN4] *Grizzle v. Macon County, Ga.,* 2009 WL 2611319 at * 5 (M.D.Ga. Aug.20, 2009). The purpose of § 1915(e)(2)(B) screening, after all, is to filter out still-born lawsuits.

FN4. The Act further specifies that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(A)(1). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(A) (2).

**I. ANALYSIS**

In response, Marsh-again moving for leave to file IFP,[FN5] doc. 5-states that she has qualified for Social Security Disability, and has even collected back-payments on that score. Doc. 6 at 1. She also writes:

FN5. The Court also directed her to elabor-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 806423 (S.D.Ga.)
(Cite as: 2011 WL 806423 (S.D.Ga.))

ate on her claimed inability to pay the Court's filing fee. Doc. 4 at 3.

I am hoping that you will see that I was harassed due to my medical conditions and deserved accommodation per The Disability Act that I filed.

Also, if you look at the sequences of events, you will notice that when I took action on an issue, it was retaliated with an action from my super-visors.

Also, I have included the original request for this court.

*Id.* at 1. Following her signature on this document, Marsh adds some afterthoughts (in raw, un-edited form):
I am appealing the EEOC ruling, as there weren't sufficient information for them to make a determination. *I can't get to my information to prove my case.*

My opinion is when I did the grievances on [GDBHDD's] Mr. Charles Ringling, Regional Coordinator and Annie Webb, Intake and Evaluation Manager; I sent them all the way up the lat-ter.

They were angry with me for having done this therefore; they retaliated against me by finding issues to reprimand me. I was given separation papers on May 24, 2010. I kept asking my PCP, Dr. Morarity, for a letter to explain my new health issues. He never provided me with the documentation when I constantly remember him that it was needed ASAP to be able to claim un-der the American Disability Act.

**\*2** I am including all documents that I provided the EEOC.

*Id.* at 2 (emphasis added). Marsh also would like this Court to appoint an attorney to assist her. Doc. 2.

As best the Court can tell (her filings are hand-written, and intermittently illegible), Marsh satis-fies the IFP criteria, so her IFP motion (doc. 2) is granted. But her complaint must be dismissed, and no appointment of counsel is warranted. Hence, the Court denies her motion on that score, doc. 2,[FN6] as it is clear that Marsh would simply like a "do-over" of her EEOC filing, as well as the pre-EEOC, reasonable accommodation that she sought from her employer [FN7]-because she "can't get to my information to prove my case." [FN8] ADA litig-ation doesn't work that way, however. The claimant must get all of her eggs together in one basket be-fore advancing it before the EEOC, then before a federal court. *See Carty v. District of Columbia,* 699 F.Supp.2d 1, 2 (D.D.C.2010) (discussing ADA administrative exhaustion requirements which re-quire claimants to present their *entire* case first within administrative channels prior to filing suit).

FN6. Marsh has made no effort to find an attorney on her own. Doc. 1 at 4. And the Court will not pressure one to step forward on a case that is basically dead on arrival. *See Williams v. Grant,* 639 F.Supp.2d 1377, 1381 (S.D.Ga.2009) (noting the "professional compulsion" lurking behind a judge's 28 U.S.C. § 1915(e)(1) request).

FN7. The ADA's reasonable accommoda-tion requirement is triggered only upon no-tice to the employer that the employee suf-fers from an ADA-level disability:

A "disability" is defined by the ADA as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). The Equal Employment Opportunity Commission ("EEOC") has further defined "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, see-ing, hearing, speaking, breathing, learn-ing, and working." *Greenberg,* 498 F.3d at 1264 (quoting 29 C.F.R. § 1630.2(D). For purposes of the third element, an

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 806423 (S.D.Ga.)
**(Cite as: 2011 WL 806423 (S.D.Ga.))**

employer unlawfully discriminates against an employee because of her disability by "not making reasonable accommodations to the [employee's] known physical or mental limitations" if the employee is otherwise qualified to perform her job and the accommodation would not impose an undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A) (emphasis added); *see also Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1262 (11th Cir.2007).

*Keeler,* 324 F. App'x at 856. "By adoption of the Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008), effective 1 January 2009, Congress has expressly instructed courts that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals." Pub.L. No. 110-325, § 4(a)." *Fikes v. Wal-Mart, Inc.,* 322 F. App'x 882, 883 n. 1 (11th Cir.2009).

FN8. For that matter, Marsh herself supplies documentation from her employer offering to accommodate her if only she would supply supporting documentation, but she did not. Doc. 1-1 at 21-22; *see also* Rule 10(c) (this is now part of her Complaint). She seems to reason that, because her personal physician stalled her in her efforts to get necessary documentation to her employer, the ADA somehow provides her with a second chance. It does not.

Marsh, by her own allegations (her reasonable accommodation requests were denied because she could not medically support her claimed disability, and the EEOC would not have concluded against her claim had she gotten it more information), failed to do that here. And, while it is true that administrative exhaustion is an affirmative defense, *id.,* it is also true that dismissal is warranted where such a defense is clear on the face of the complaint.

*See Hilliard v. Securitas Security Services, USA Inc.,* 2010 WL 2802428 at * 1 (S.D.Ga. Jun.17, 2010), *adopted,* 2010 WL 2802432 (S.D.Ga. Jul.14, 2010); *Campbell v. E & M Sec.,* 2010 WL 2233663 at * 1 (S.D.Ga. Apr.23, 2010), aff'd, 2010 WL 5129664 at * 1 (11th Cir. Dec.17, 2010).

For an ADA retaliation claim, which falls under ADA Title V,[FN9] a plaintiff must show that (1) he engaged in statutorily protected expression, (2) he suffered an adverse employment action, and (3) the adverse action causally was related to the protected expression. *Higdon v. Jackson,* 393 F.3d 1211, 1219 (11th Cir.2004). To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse act were at least somewhat related and in close temporal proximity. *Id.* at 1220.

FN9. "The ADA contains five titles: Employment (Title I), Public Services (Title II), Public Accommodations and Services Operated by Private Entities (Title III), Telecommunications (Title IV) and Miscellaneous Provisions (Title V)." *Merchant v. Tennessee,* 2011 WL 441385 at * 5 n. 5 (M.D.Tenn. Feb.7, 2011). "Title I of the ADA specifically addresses discrimination in the employment context. Under Title II of the ADA, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subjected to discrimination by any such entity.' 42 U.S.C. § 12132." *Hemby-Grubb v. Indiana University of Pennsylvania,* 2008 WL 4372937 at * 6 (W.D.Pa. Sep.22, 2008). Title V encompasses retaliation claims. *McCollum v. Owensboro Community & Technical College,* 2010 WL 5393852 at * 1 (W.D.Ky. Dec.22, 2010).

*Sicilia v. United Parcel Service, Inc.,* 279 F.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 806423 (S.D.Ga.)
**(Cite as: 2011 WL 806423 (S.D.Ga.))**

App'x 936, 939 (11th Cir. May 30, 2008). The ADA's retaliation provision does not open up a federal forum to sue over hurt feelings and routine flashpoints at work. A "substantiality" line must first be crossed. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) ("it is important to separate significant from trivial harms."). At a minimum, then, Marsh was required plead a causal link between her termination and her filing of her EEOC charge. *Id.* at 939-940; *see also Oestreich v. Wal-Mart Stores East LP,* 2009 WL 890729 at * 6 (N.D.Fla. Mar.30, 2009). Hence, it is not enough to plead that she requested accommodation for a claimed disability and received unfavorable responses from management. Instead, she must plead that she suffered an adverse employment action:

**\*3** For an action to be an adverse employment action, the plaintiff must show that an ultimate employment decision was made, or must make some other showing of *substantiality. Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir.2008). An ultimate employment decision has been defined as those "such as termination, failure to hire, or demotion." *Id.* (quoting *Stavropoulous v. Firestone,* 361 F.3d 610, 617 (11th Cir.2004)). For conduct falling short of an ultimate employment decision, the conduct must, in some substantial way, "alter [ ] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect [ ] his or her status as an employee." *Id.* (quoting *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000)). When defining the level of substantiality required for a Title VII retaliation claim,[FN10] the Eleventh Circuit determined that an employee must demonstrate she suffered "a serious and material change in the terms, conditions, or privileges of employment" to show an adverse employment action. *Id.* at 971 (citing *Stavropoulous,* 361 F.3d at 617; *Bass v. Bd. of Cty. Comm'rs, Orange County, Fla.,* 256 F.3d 1095, 1118 (11th Cir.2001); *Gupta,* 212 F.3d at 588; *Wideman v. Wal-Mart Stores, Inc.,*

141 F.3d 1453, 1456 (11th Cir.1998); *Benefield v. Fulton County, Ga.,* 130 Fed. Appx. 308 (11th Cir.2005)). An adverse employment action is one that "clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." *Id.* at 574.

> FN10. The ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), is similar to Title VII's prohibition on retaliation, *Shannon v. Postmaster General of U.S. Postal Service,* 335 F.App'x 21, 26 (11th Cir.2009), so Title VII retaliation standards are permissibly imported into ADA cases. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997).

*Morales v. Georgia Dept. of Human Resources,* 2010 WL 4639279 at * 10 (M.D.Ga. Nov.8, 2010) (footnote added).

And, she must satisfy the temporality requirement, since a lot of workplace events could be deemed "retaliatory," and thus flood the court system. So, substantive and temporal parameters must be met "that her employer had knowledge of the protected expression and 'that there was a close temporal proximity between this awareness and the adverse action.' " *Burgos v. Napolitano,* 330 Fed. Appx. 187, 190 (11th Cir.2009)." *Id.*

It follows that where a plaintiff has filed an EEOC charge and was *not* terminated, she in fact was not deterred by management from exercising her rights. *Id.* at * 11 (collecting cases); *Burgos,* 330 F. App'x. at 190 (the defendant's actions were not materially adverse because the evidence showed that the plaintiff was not deterred in reinstating her EEOC claim). Marsh cannot simply urge this Court to review a mass of documents to "find" such a claim. "It is not the province of this Court to raise issues on behalf of litigants before it." *United States v. Burkhalter,* 966 F.Supp. 1223, 1225 n. 4 (S.D.Ga.1997). For that matter, her own complaint

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 806423 (S.D.Ga.)
(Cite as: 2011 WL 806423 (S.D.Ga.))

exhibits show that she was still employed as of December 18, 2010, doc. 1-2 at 7, months *after* filing her EEOC claim. Doc. 1-2 at 29. She obviously was not deterred and thus her retaliation claim fails on its face.

*4 Finally, the Eleventh Amendment bars suit in federal court against an "arm of the state," except where such immunity is waived by the state or abrogated by Congress. *Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir.2003). The GDBHDD is an arm of the state, http://dbhdd.georgia.gov/portal/site/DBHDD/ (site visited Feb. 14, 2011), and the Court discerns no waiver or abrogation of its Eleventh Amendment immunity from money-damage based, ADA claims. *Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356, 367-68, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Keeler v. Florida Dept. of Health,* 324 F. App'x 850, 854 n. 2 (11th Cir.2009) (noting district court ruling dismissing ADA money damages claim against similar Florida agency on Eleventh Amendment grounds); *Rylee v. Chapman,* 316 F. App'x 901, 904 (11th Cir.2009) (upholding dismissal, on same grounds, of ADA claim against Georgia sheriff); *Jackson v. Friel,* 2010 WL 318369 at * 2 (D.Utah Jan.19, 2010) (dismissing ADA claim against state actor on Eleventh Amendment immunity grounds); *Williamson v. Ga. Dept. of Human Resources,* 150 F.Supp.2d 1375, 1379-1382 (S.D.Ga.2001).[FN11]

> FN11. These cases show that money-damage claims brought under Title I of the ADA can be dismissed on Eleventh Amendment grounds. Marsh seeks no injunctive relief, only (presumably, she does not say) money damages. But *Bledsoe* suggests Marsh's claim might also be heard under Title II, and Title II claims fetch different analytical treatment. *See Hale v. King,* 624 F.3d 178, 182-83 (5th Cir.2010). There courts are instructed to avoid reaching the Eleventh Amendment issue if they can dispose of an ADA claim on the mer-

its. *United States v. Georgia,* 546 U.S. 151, 158-59, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006); *Zibbell v. Michigan Dep't of Human Servs.,* 313 F. App'x 843, 846-48 (6th Cir.2009) (courts may consider the question of state immunity "only after finding a viable claim under Title II.") (cites omitted). Still, *Georgia* is distinguishable because, as noted by the court in *Clifton v. Georgia Merit System,* 478 F.Supp.2d 1356 (N.D.2007), that case also turned on a coterminous constitutional violation, and "[n]o such independent violation of a stated constitutional protection is clearly implicated in the matter at hand." *Clifton,* 478 F.Supp.2d at 1367 n. 9.

Marsh's claims are employment-discrimination based, at a minimum sounding in the Title I context, so the Eleventh Amendment immunity analysis applied to it is fairly extended to her ADA Title V (retaliation) claim. *McCollum,* 2010 WL 5393852 at * 3. It is also logical to also extend it to any Title II claim she might have. *See Clifton,* 478 F.Supp.2d at 1368 (state employment discrimination actions under Title II of the ADA are barred by the Eleventh Amendment), cited in 1 AMERICANS WITH DISAB.: PRACT. & COMPLIANCE MANUAL § 2:161 (Feb.2011); *see also Rooks v. Altamaha Technical College,* 2007 WL 2331830 at * 3 (S.D.Ga. Aug.13, 2007) (applying Williamson to dismiss an ADA claim against a state entity on Eleventh Amendment grounds).

**II. CONCLUSION**

Accordingly, the Court **GRANTS** plaintiff Deborah Gail Marsh's IFP motion, doc. 2, **DENIES** her motion for appointment of counsel, doc. 2, and recommends that her Complaint be **DISMISSED WITH PREJUDICE.**

**SO REPORTED AND RECOMMENDED.**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 806423 (S.D.Ga.)
**(Cite as: 2011 WL 806423 (S.D.Ga.))**

S.D.Ga.,2011.
Marsh v. Georgia Dept. of Behavioral and Health
Developmental Disabilities
Slip Copy, 2011 WL 806423 (S.D.Ga.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2010 WL 5376318 (S.D.Ga.)
**(Cite as: 2010 WL 5376318 (S.D.Ga.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. Georgia,
Augusta Division.
Harold W. BELL, Plaintiff,
v.
John E. POTTER, Postmaster General, United
States Postal Service, Southeast Area; Timothy P.
Goodwin; Keysha Johnson; and Jeanette Harmon,
Defendants.

No. CV 110-031.
Nov. 10, 2010.

Harold W. Bell, Hephzibah, GA, pro se.

### MAGISTRATE JUDGE'S REPORT AND RE-COMMENDATION

W. LEON BARFIELD, United States Magistrate
Judge.

**\*1** Plaintiff is proceeding *pro se* and *in forma
pauperis* ("IFP") in the above-captioned case. Be-
cause Plaintiff's complaint was filed IFP, it must be
screened to protect potential Defendants. *Phillips v.
Mashburn,* 746 F.2d 782, 785 (11th Cir.1984).
Pleadings drafted by *pro se* litigants must be liber-
ally construed, *Haines v. Kerner,* 404 U.S. 519,
520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per
curiam* ), but the Court may dismiss a complaint, or
any part thereof, that is frivolous or malicious or
that fails to state a claim upon which relief may be
granted. 28 U.S.C. §§ 1915(e)(2) (B)(i) & (ii).

Accordingly, on August 23, 2010, the Court re-
viewed Plaintiff's original complaint and first
amended complaint together in conformity with the
IFP statute. (Doc. no. 11.) Because of pleading de-
ficiencies, Plaintiff was directed to file a second
amended complaint. (*Id.*) Plaintiff filed his second
amended complaint, and it is that document that the
Court will now screen. (Doc. no. 12.)

### I. BACKGROUND

*Liberally* construing Plaintiff's second amended
complaint, the Court finds that Plaintiff names the
following Defendants: (1) John E. Potter, Postmas-
ter General; (2) Timothy P. Goodwin; (3) Keysha
Johnson; and (4) Jeanette Harmon. (Doc. no. 12, p.
1; doc. no. 12-1, pp. 2-3.)

In Plaintiff's second amended complaint, he
states that he was a postal worker who injured his
left shoulder in April of 2007.[FN1] (Doc. no. 12-3,
p. 7.) Plaintiff claims that the injury is related to his
work, with the United States Postal Service ("Postal
Service") (doc. no. 12-2, p. 1), and that he was lim-
ited to lifting up to 10 pounds and could not use his
left arm continuously (doc. no. 12-3, p. 7). After ac-
cruing several unscheduled absences, Plaintiff was
terminated. (Doc. no. 12-3, p. 8.) Plaintiff alleges
that he was discriminated against based upon a
physical disability when he was issued a Proposed
Notice of Removal by Defendant Johnson and
eventually lost his job. (Doc. no 12-1, p. 2.)
Plaintiff further alleges that Defendants Johnson
and Harmon lied in their investigative affidavits
when they stated they were unaware of Plaintiff's
claimed disability. (*Id.,* doc. nos. 12-4, 12-5.)
Plaintiff goes on to claim that Defendant Goodwin
lied about when he became aware of Plaintiff's in-
jury and when he stated that he did not have an em-
ployee with an attendance record comparable to
that of the Plaintiff's. (Doc. no. 12-1, p. 2-3; doc.
no. 12-6, p. 5.)

> FN1. Plaintiff was notified in the Septem-
> ber 23rd Order that "he shall not incorpor-
> ate [exhibits] by reference as a means of
> providing the factual basis for his com-
> plaint." (Doc. no. 11, p. 4.) Plaintiff failed
> to follow this instruction. Although the
> Court does not look favorably upon parties
> who fail to follow instructions set forward
> in a Court Order, in this case, the Court ex-
> amined Plaintiff's exhibits in order to facil-
> itate screening of Plaintiff s second

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Attachment 8

Slip Copy, 2010 WL 5376318 (S.D.Ga.)
**(Cite as: 2010 WL 5376318 (S.D.Ga.))**

amended complaint and avoid the delay of ordering Plaintiff to submit a third amended complaint.

## II. DISCUSSION

### A. Timing of Plaintiff's Complaint

Since Plaintiff received a Final Agency Decision regarding his grievance with the United States Post Office, the rule governing the filing of Plaintiff's complaint in the appropriate United States District Court is provided in 29 C.F.R. § 1614.310(a) (2010), which requires that Plaintiff file his complaint within 30 days of receiving the Final Agency Decision. Plaintiff did not supply the date which he received the decision, however, the decision is marked as decided on February 9, 2010. (Doc.no.12-3, p. 15.) Plaintiff filed his original complaint on March 8, 2010. (Doc. no. 1.) Therefore, assuming that Plaintiff received a copy of the decision on the very day that it was decided, he filed his complaint within the 30 day window allowed under 29 C.F.R. § 1614.310(a) (2010).

### B. Improper Defendants

**\*2** Liberally construing Plaintiff s second amended complaint, the Court determines that Plaintiff is attempting to bring a claim pursuant to the Rehabilitation Act of 1973, § 505(a)(1), 29 U.S.C. § 794(a) ("Rehabilitation Act"). The Rehabilitation Act precludes discrimination against an individual based solely upon his disability by programs or activities receiving federal financial assistance, any program or activity conducted by an executive agency, or by the Postal Service. 29 U.S.C. § 794(a).

Defendants Goodwin, Johnson and Harmon should be dismissed as improper defendants under the Rehabilitation Act. Although the Eleventh Circuit has not specifically ruled that the Postmaster General is the only proper defendant in a lawsuit by an employee of the Postal Service under the Rehabilitation Act, several other circuit courts, as well as some district courts within the Eleventh District

have adopted that viewpoint. *See Brezovski v. U.S. Postal Service,* 905 F.2d 334, 335 (10th Cir.1990); *Honeycutt v. Long,* 861 F.2d 1346, 1349 (5th Cir.1988) (stating that the proper defendant under both Title VII and the Rehabilitation Act is the head of the department, agency or unit); *Morgan v. U.S. Postal Service,* 798 F.2d 1162, 1165, n. 3 (8th Cir.1986); *McGuinness v. U.S. Postal Service,* 744 F.2d 1318, 1322-23 (7th Cir.1984); *Lapar v. Potter,* 395 F.Supp.2d 1152, 1158 (M.D. Fla.2005; *Shaw-Campbell v. Runyon,* 888 F.Supp. 1111, 1112 (M.D.Ala.1995); *Taylor v. Tisch,* 686 F.Supp. 304, 308 (S.D.Fla.1988).

The statement by the district court in *Shaw-Campbell* is particularly persuasive:

Section 794a(a) of the [Rehabilitation] Act further provides that the remedies and procedures of Title VII shall apply when an aggrieved employee brings a disability discrimination claim against the United States government. The procedures of Title VII state that in an employment discrimination action against the United States, the head of the department, agency or unit, as appropriate, shall be the defendant. The Postmaster General is the head of the United States Postal Service. Thus, the court concludes, as the defendants urge, that the Postmaster General is the only proper party-defendant in this case.

*Shaw-Campbell,* 888 F.Supp. at 1112.

Thus, this Court concludes that, under the Rehabilitation Act, if Plaintiff has a valid claim, the only proper party-defendant is Defendant Potter, the Postmaster General, and therefore Defendants Goodwin. Johnson and Harmon should be dismissed.

### C. Failure to State a Claim

Liberally construing Plaintiff's second amended complaint, the Court finds that Plaintiff fails to state a claim under the Rehabilitation Act. To establish a prima facie case of discrimination under the Rehabilitation Act, an individual must demon-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376318 (S.D.Ga.)
**(Cite as: 2010 WL 5376318 (S.D.Ga.))**

strate that he was: (1) disabled or perceived to be disabled; (2) a qualified individual with an impairment that substantially limits a major life activity; and (3) discriminated against on the basis of his disability.[FN2] *Wood v. Green,* 323 F.3d 1309, 1312 (11th Cir.2003). Here, Plaintiff claims: (1) he was disabled by means of his shoulder injury; (2) he was only able to lift up to 10 pounds and was unable to use his left arm continuously; and (3) he was discriminated against on the basis of his disability when he was terminated from his job with the Postal Service.

> FN2. The Court is aware that Plaintiff is not required to plead the following causes of action with specificity; nonetheless, Plaintiff must provide enough information to give Defendant fair notice of the basis of his asserted claims. *See Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 513-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Additionally the Eleventh Circuit found that the Supreme Court in *Swierkiewicz* "did not even remotely suggest that a pleading could survive dismissal when it consisted of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." *Jackson v. Bellsouth Telecommunications,* 372 F.3d 1250, 1270-71 (11th Cir.2004).

**\*3** Section 794a(a) of the Rehabilitation Act states that the remedies and procedures of Title VII [FN3] shall apply when an employee brings a disability discrimination claim against the United States Government. *See Doe v. Garrett,* 903 F.2d 1455, 12459 (11th Cir.1990). In addition, "[t]he standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"); thus, cases involving the ADA are precedent for those involving the Rehabilitation Act." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir.2005). Therefore the Court will utilize the relevant Title VII and ADA case law in evaluating Plaintiff's claim under the Rehabilitation Act.

> FN3. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, *amended by* 42 U.S.C. § 1981a.

First, Plaintiff fails to establish that he is disabled or suffers from an impairment that substantially limits a major life activity. Whether an individual has a disability under Title VII and the Rehabilitation Act is not based on the name or diagnosis of the impairment, but instead on the effect that the impairment has on that individual's life. *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1998). Under 34 C.F.R. § 104.3(j)(1), a person with a disability [FN4] is defined as an individual who: (1) has a physical or mental impairment which substantially limits one ore more of that person's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. Major life activities are defined by the Equal Employment Opportunity Commission as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.R.F. § 1630.2(i). Here, Plaintiff's alleged disability involves an injury to his left shoulder that prevents him from being able to lift more than 10 pounds and prohibits continued use of his left arm. The Eleventh Circuit found that a similar lifting restriction was not adequate to render a person disabled under the Rehabilitation Act. *See Garrett v. Univ. of Ala. at Birmingham,* 507 F.3d 1306, 1315 (11th Cir.2007) (finding, among other factors, that a recovering cancer patient's inability to lift more than 10 pounds in 1997, 3 years after surgery to remove lymph nodes from under her right arm. was not sufficient to constitute a disability). Several other circuits have also found that similar weight lifting restrictions did not qualify as a disability under the ADA because it did not constitute a substantial limitation on the life activity of lifting. *See Marinelli v. City of Erie,* 216 F.3d 354, 364 (3d Cir.2000); *Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996). Thus, Plaintiff has failed

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376318 (S.D.Ga.)
**(Cite as: 2010 WL 5376318 (S.D.Ga.))**

to establish that he suffers from a disability as defined by the Rehabilitation Act or that he suffers from an impairment that substantially limits a major life activity.

> FN4. This regulation which construes the Rehabilitation Act actually uses the word "handicap" as opposed to the word "disability" used by the ADA. However, the Eleventh Circuit has held that it is clear that these terms can be used interchangably. *Cash v. Smith,* 231 F.3d 1301, 1305 n. 3 (11th Cir.2000).

Lastly, Plaintiff fails to establish that he was discriminated against on the basis of his claimed disability. Plaintiff only supplies a conclusory allegation that the reason that he was fired had to do with his disability, and not his absences, as the Postal Service claimed. Plaintiff provides no factual basis to support his allegation, and thus fails to meet the pleading requirement outlined in *Swierkiewicz.*

**III. CONCLUSION**
**\*4** For the foregoing reasons, the Court finds that Plaintiff has improperly named Defendants Goodwin, Johnson and Harmon as Defendants in this case, and has failed to state a claim upon which relief can be granted. The Court accordingly **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** and that this civil action be **CLOSED.**

SO REPORTED AND RECOMMENDED.

S.D.Ga.,2010.
Bell v. Potter
Slip Copy, 2010 WL 5376318 (S.D.Ga.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| HAROLD W. BELL,            ) | |
|           ) | |
|       Plaintiff,      ) | |
|           ) | |
|      v.          ) | CV 110-031 |
|           ) | |
| JOHN E. POTTER, Postmaster General,   ) | |
| United States Postal Service, Southeast   ) | |
| Area, et al.,           ) | |
|           ) | |
|       Defendants.     ) | |

_____

**O R D E R**

_____

After a careful, *de novo* review of the file, the Court concurs with the Magistrate

Judge's Report and Recommendation, to which objections have been filed. (Doc. no. 15.)

The Magistrate Judge recommended dismissal of Plaintiff's employment discrimination case

because Plaintiff failed to state a claim upon which relief could be granted. (Doc. no. 13, p.

7.) Specifically, the Magistrate Judge found that Plaintiff had failed to establish that he was

disabled or that he was discriminated against on the basis of a disability as required by the

Rehabilitation Act of 1973. (Id at 5-7.)

In his objection, Plaintiff argues that he has stated a prima facie case under the

Rehabilitation Act. In support of his argument, Plaintiff quotes a passage from his Final

Agency Decision by the Equal Employment Opportunity Commission ("EEOC") (doc. no.

12-3, p. 12) which states that Plaintiff had shown that he had been subject to an adverse

Attachment 9

employment action.  (Doc. no. 15.)  However, demonstration of an adverse employment action does not establish that Plaintiff has a claim.  As the Magistrate Judge stated in his Report and Recommendation, to establish discrimination under the Rehabilitation Act, an individual must demonstrate that he was: (1) disabled or perceived to be disabled; (2) a qualified individual with an impairment that substantially limits a life activity; and (3) discriminated against on the basis of his disability.  (Doc. no. 13, p. 5 (citing Wood v. Green, 323 F.3d 1309, 1312 (11th Cir. 2003)).)  Simply citing an adverse employment action does not fulfill any of the above requirements.  Additionally, the Final Agency Decision by the EEOC that Plaintiff cites for support also found that Plaintiff had failed to establish that he was disabled or that he was treated differently due to a disability.  (Doc. no. 12-3, p. 12 (emphasis added).)  Therefore, Plaintiff's objection does not alter the Magistrate Judge's analysis, or the conclusion that Plaintiff fails to state a claim upon which relief can be granted.  Thus, Plaintiff's objection is **OVERRULED**.

Accordingly, the Report and Recommendation of the Magistrate Judge is **ADOPTED** as the opinion of the Court.  Therefore, Plaintiff's complaint is **DISMISSED**, and this civil action is **CLOSED**.

SO ORDERED this 21st day of December, 2010, at Augusta, Georgia.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA