Westlaw.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

**c**
Only the Westlaw citation is currently available.

United States District Court,
S.D. Alabama,
Southern Division.
Jane S. MIZE, Plaintiff,
v.
CENTURA FINANCIAL SERVICES (RBC), Defendant.

Civil Action No. 08-0645-CG-C.
Oct. 21, 2009.

West KeySummary Civil Rights 78 ⚏1225(3)

78 Civil Rights
    78II Employment Practices
        78k1215 Discrimination by Reason of Handicap, Disability, or Illness
            78k1225 Accommodations
                78k1225(3) k. Particular Cases. Most Cited Cases
    Former employee did not make a request for reasonable accommodation under the Americans with Disabilities Act. Former employee established a prima facie claim of disability based on her fibromyalgia, scoliosis, asthma, and high blood pressure. However, former employee requested the help of another employee in order to complete her tasks. The employer denied her request to assign another employee to assist her in her essential duties. Americans with Disabilities Act of 1990, § 102(a), 42 U.S.C.A. § 12112(a).

Jane S. Mize, Mobile, AL, pro se.

Gordon Liddell Blair, David L. Warren, Jr., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Birmingham, AL, for Defendant.

**MEMORANDUM OPINION AND ORDER**
CALLIE V.S. GRANADE, Chief Judge.
    **\*1** On October 31, 2008, *pro se* plaintiff Jane

S. Mize ("Mize") brought a lawsuit against RBC Bank (USA) ("RBC") [FN1] claiming RBC violated the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA") when it failed to accept her proposed accommodations for her alleged disabilities and terminated her on the basis of her alleged disabilities and age. (Doc. 1).[FN2] On December 9, 2008, RBC filed an answer to Mize's complaint. (Doc. 6). This matter is now before the court on RBC's Motion for Summary Judgment (Docs.13-15), Mize's Response to the Motion (Doc. 18), and RBC's Reply to Mize's Response (Doc. 23). For the reasons stated below, the Motion for Summary Judgment is due to be granted.

    FN1. In her complaint, Mize misidentified RBC as Centura Financial Services (RBC).

    FN2. In her response to the motion for summary judgment, Mize refers to the denials of her requests as evidence of a "hostile work environment." (Doc. 18-1, p. 3-5). In this case, Mize is proceeding *pro se,* thus "a complaint submitted by a *pro se* plaintiff should be held to a less stringent standard than that submitted by an attorney, and should be construed as alleging all fairly and reasonably inferred claims." *Tigner v. Internal Revenue Serv.,* 2000 WL 641614, at \*1 (N.D.Ga. Mar.24, 2000) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). However, "even a *pro se* litigant must allege the essential elements of the claims for relief, and vague and conclusory allegations are insufficient to state a claim." *Id.* (citing *Richards v. Harper,* 864 F.2d 85, 87 (9th Cir.1988)). In this case, Mize did not supply in her complaint the essential elements of a "hostile work environment" claim nor provide the facts necessary to establish such a claim. As a result, this court finds that Mize has not properly pled a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

"hostile work environment" claim thus, to the extent that Mize believes she has pled this claim, the "hostile work environment" claim is dismissed.

## FACTS

Mize, who is over the age of 40, asserts she suffers from fibromyalgia, asthma, scoliosis, high blood pressure and hypothyroidism. (Doc. 15, p. 1; Doc. 18-1, p. 1 & Ex. 1; Doc. 14, Ex.A, Mize Dep., pp. 67, 95-6, 117, 126, 159). She maintains she has endured constant pain in her back, hands, arms, legs, and feet since the early-to-mid 1990s. (Doc. 14, Ex.A, Mize Dep., pp. 59-60, 67-70) and that she has not had a pain-free day since that time. (*Id.,* p. 69). Mize testified that the pain associated with the fibromyalgia prevents her from cooking and having a social life, and it limits her ability to clean all of her house in one try. (*Id.,* p. 119-20). She also asserts that the pain from her ailments also limits her sleeping, walking at length, climbing, turning quickly, heavy lifting, standing quickly, kneeling at length, and breathing normally. (Doc. 18-1, pp. 1-2; Doc. 18-3, Exhibit 1; Doc. 18-4, Exhibit 2). Mize also argues she suffers from " night blindness " which makes her reluctant to drive in unfamiliar places at night. (Doc. 14, Ex.A, Mize Dep., pp. 95-6).

Mize was employed by RBC from March 10, 2007 until February 15, 2008 at RBC's Hillcrest Branch bank building in Mobile, Alabama. (Doc. 14, Ex. A, Mize Dep., Ex. 22 & Ex. C, Herman Decl., ¶ 2; Doc. 1, p. 3; Doc. 18-1, ¶ 2). During that time, Amber Herman ("Herman") was the branch manager. (Doc. 14, Ex. C, Herman Decl., ¶ 2). Prior to her employment with RBC, Mize worked for AmSouth Bank ("AmSouth"), RBC's predecessor,

also at the Hillcrest Branch bank building. (Doc. 1, p. 2; Doc. 14, Ex.A, Mize Dep., p. 2). The Hillcrest Branch bank building is located on a slight hill. The main level contains a teller line, a drive-thru window, the relationship banker's desk, and manager's offices. The basement contains the safety deposit vault and a walk-up teller window

that AmSouth took out of service approximately six months prior to RBC's takeover. The basement is accessible by way of a back door that faces the parking lot on the backside of the building and is also accessible from the building's main level by way of a stairwell. (Doc. 14, Ex. A, Mize Dep., pp. 160-4, 243-4).

While working for AmSouth, Mize worked alone in the basement under the position title of Vault Custodian. As Vault Custodian, she was responsible for opening and closing safety deposit box accounts, auditing these account to ensure that customer fee payments were current, granting access to the boxes, and occasionally inventorying the boxes. (*Id.,* pp. 115-6, 221-2, 226). When it took over the Hillcrest Branch in February 2007, RBC offered and Mize accepted employment with RBC as a Customer Assistance Representative ("CAR"). (*Id.,* Ex. 22). Herman described the responsibilities of a CAR as follows:

**\*2** Generally, a CAR serves as a general customer service resource and is required to work in the branch's main foyer area, known as "the platform," greeting customers, directing them to bankers, and answering questions about account options, among other things. CARs are also expected to fill-in as tellers as required by their manager, and they are available to work other jobs, depending on their individual branch's needs. [As a CAR,] I anticipated that Ms. Mize would work approximately twenty percent (20%) of her working time in the basement, forty percent (40%) on the platform, and forty percent (40%) as a teller serving drive-thru and walk-in customers.

(*Id.,* Ex. C, Herman Decl., ¶ 3).

Mize acknowledged that as a CAR, she would have to "function in the [t]eller capacity as required by [her] manager." (Doc. 14, Ex. A, Mize Dep., Ex. 7). However, when Mize began work for RBC on March 10, 2007, Herman did not immediately require Mize to perform all of the duties described

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

above including working as a teller. (*Id.,* ¶ 4).

In April 2007, Mize asked Melissa Bettis ("Bettis"), who was the Senior Relationship Banker and the manager of the Hillcrest Branch in Herman's absence, and Tammy Hill ("Hill"), who was the Customer Care Manager of the Hillcrest Branch and Mize's immediate supervisor, to answer her telephone for a few hours when she was attempting to reach Herman to discuss an unrelated issue, a request which was denied by both Bettis and Hill. (*Id.,* Ex.A, Mize Dep., pp. 188-90; Doc. 18-4, Ex. 4). Mize asserts that this was not a request for an accommodation for her disability, rather "[t]his was simply [a] request from employee to acting branch manager and her immediate supervisor for a little help while she was able to reach the branch Manager." (Doc. 18-1, ¶ 6).

Shortly thereafter, Herman asked Mize to inventory the safety deposit boxes, a task which she had previously performed while working for AmSouth. (Doc. 14, Ex.A, Mize Dep., pp. 251-2, 255-7, 262-3; Doc. 14, Ex. C, Herman Decl. ¶ 10). This inventory project would require Mize to climb a ladder or kneel down to access some of the boxes. (Doc. 14, Ex. A, Mize Dep., p. 256). Mize asked Herman to provide another employee to help with this project because Mize maintained she could not be on ladder or kneel down for an extended period of time. (*Id.* at p. 257-9, 255). Herman denied Mize's request, but she did direct some of the upstairs tellers to sort out paperwork associated with the inventory "during any 'down time' that they had between their interactions with customers." (*Id.* at pp. 257-8; Ex. C, Herman Decl. ¶ 10). Herman asserts the reason that she denied Mize's request was that "no other personnel [was] available that [she] could divert away from their normal jobs upstairs to work for a prolonged period of time in the basement." Since "[she] was aware that the inventory project could take weeks to complete", she concluded that "there simply was not an employee available to dispatch to the basement for an extended period." (*Id.,* Ex. C, Herman Decl. ¶ 10). Mize

ultimately completed the inventory project, though she maintains it was done "with great discomfort, pain, a few tears and tremendous stress." (*Id.,* Ex. A, Mize Dep. p. 263; Doc. 18-2, Mize Decl., ¶ 10).

*3 Around the same time, Mize noticed that some of the employees continued an AmSouth practice of leaving work early one day a week. (Doc. 14, Ex. A, Mize Dep., pp. 165, 168, 177-8). Mize asked Herman if she could also have an early day like the other employees, but instead of granting Mize's request, Herman told all branch employees that RBC would not honor AmSouth's policy and that no employees were permitted to leave early without approval. (*Id.,* pp. 168, 177-8). Mize thereafter felt that the other employees resented her for telling Herman about the practice of leaving early one day a week. (*Id.,* pp. 179, 181-2). In fact, Mize stated that on one occasion, a teller told her that all the other tellers were angry with her because of it. (*Id.,* 185-7, 192).

Also around the same time, RBC management designated Mize the "privacy champion" of the Hillcrest Branch. (*See* Doc. 18-4, Ex. 5). As the "privacy champion," Mize was required to ensure that all documents with confidential customer information, such as bank account and social security numbers, were securely stored. Part of this job required Mize to walk around the branch building two or three times a day to make sure that no such documents were inadvertently left on a copy machine, visible to the public on a computer screen, or located where customers or after-hours janitors could view them. (Doc. 14, Ex.A, Mize Dep., pp. 176-178-80). In Mize's opinion, she did a good job as privacy champion and overcame any troubles that arose while performing her responsibilities. (*See Id.,* pp. 178-9, 191). Mize also asserts that she faced problems from the other employees with her duty as privacy champion. She felt that because she had "complained about the early days" that the other employees were taking off and those days "were taken away from everyone," everyone "resented" her, thus "when [she] would go upstairs to check on

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

what [she] was supposed to do as privacy champion, [the other employees] made it very hard for me to do [her] job." [FN3] (*Id.* p. 179). Other than the above problems, Mize testified that she had no trouble with her responsibilities as privacy champion. (*Id.,* pp. 178, 191).

> FN3. For example, Mize found a confidential document left on a copy machine by Bettis, and upon discovering said document, Mize placed it in Bettis' desk drawer with a note reminding her of her duty to not leave anything with confidential information on the copy machine. In response, Bettis left a note on Mize's desk that stated "mind your own business." (*Id.,* pp. 183-4).

On Friday, December 7, 2007, the Hillcrest Branch held its annual Christmas Party at Herman's house. (*Id.,* pp. 331-41 & Ex. 4). Herman sent an email to Mize on that day asking "[d]id you say you were picking up the dressing?" Mize responded by email as follows:

Amber,

I am not even sure I am coming. I hate to tell you this but after dark I am afraid to drive if I am not sure where I am going. I have night blindness and I have driven off the road several times when a car approaches me with bright headlights on. If I could follow someone (I have been trying to finish this, I have been swamped with customers) to your house that would be great or catch a ride, but I don't want to impose on any one. Anyway, I could pick up the dressing early and give it to someone. I am willing to do whatever you need."

**\*4** Herman immediately responded by email that "Tony [White] said he was going to get it-we just wanted to make sure you both weren't planning to get it. That is just fine." (*Id.,* Ex. 4). Mize interprets this email exchange as Herman telling her that "nobody is going to help [her]" after she made a request for reasonable accommodation, but she also

admitted that "a reasonable person could also read [the email exchange] and not interpret it as a reasonable accommodation. (*Id.,* pp. 335-6, 341). Besides this email exchange, Mize did not ask Herman or any other employee to follow or ride with them to the Christmas party. (*Id.,* pp. 336-8).

In January or early February 2008, Herman informed Mize in a meeting that her job responsibilities would be changing, but Herman did not describe the new responsibilities. When told this, Mize maintained she "looked forward to having more duties." (*Id.,* pp. 214-16). On or about February 8, 2008, Herman had a second meeting with Mize where she specified what her new job responsibilities would be. Herman informed Mize that she would have three duties as a CAR: (1) working the platform, which includes opening accounts and CD's and taking loan applications; (2) filling in at the teller window when the other tellers went to lunch; and (3) performing the duties she used to perform as vault custodian. (*Id.,* pp. 217-19, 228; Ex. 5).

After Herman described these additional duties, Mize told Herman that she could not "work the teller line." (*Id.,* p. 219). In response, Herman asked "what are you going to do?" to which Mize replied "well, I guess I'll have to quit." Herman then asked for Mize's resignation letter, to which Mize said "okay, I'll type it up and give it to you." However, a couple of days later, Herman sent Hill to retrieve the resignation letter, and Mize told Hill that she had changed her mind and that she was not going to resign. (*Id.,* pp. 228-9).

On February 11, 2008, Herman and District Manager Michelle Hand ("Hand") met with Mize in Herman's office. (*Id.,* pp. 270-71). In that meeting, Herman and Hand told Mize that February 15, 2008 would be her last day unless she accepted all her responsibilities as CAR, including at times working as a teller on the main floor for an entire day. (*Id.,* Ex. C, Herman Decl. ¶¶ 6 & 8; Doc. 18-2, Mize Decl., ¶ 6). Mize told them that she would perform all the CAR duties except working the main level teller

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

desk because she maintained that she would need to keep both feet on the ground in order to alleviate the pain in her back and that the elevated barstool-type chairs used by the main level tellers prohibited her from doing this. (Doc. 14, Ex.A, Mize Dep., pp. 237-9, 242). As an alternative, she proposed working the teller desk in the basement, a desk which did not require an elevated stool but had been out of service since at least six months before RBC took over the Hillcrest Branch and was not reopened by RBC. (*Id.,* pp. 242-44, 253-55). Herman did not accept Mize's proposed accommodation. (*Id.,* Ex. C, Herman Decl., ¶ 6).

**\*5** On that same day, Mize returned to the basement with a customer, where she became faint, almost passed out, and had to lean against a wall to prevent herself from falling on the floor. The customer witnessed Mize's distress and summoned help from upstairs. Herman, Bettis, and Hill went to the basement and asked to see the medication that Mize was taking. (*Id.,* pp. 267-9). Herman thereafter gave Mize permission to take the rest of the day off. (*Id.,* p. 235). Mize asserts that she felt embarrassed by the incident, particularly by the fact that Herman, Bettis, Hill and the customer had looked at her medicine bottles. (*Id.,* p. 269-70; Doc. 18-2, Mize Decl., ¶ 7).

After the incident on February 11, 2008, Mize maintains that she was "unable to work." (Doc. 14, Ex.A, Mize Dep., p. 253). On February 12, 2008, she called in sick and visited her personal doctor. (*Id.,* Ex. 9; *Id.,* Ex. C, Herman Decl., ¶ 7; Doc. 18-2, Mize Decl., ¶ 7). The doctor later opined that Mize could not work indefinitely either with or without accommodation and could not surmise when she would be able to return to work. (Doc. 14, Ex.A, Mize Dep., Ex. 9; pp. 293-5). On February 13, 2009, Mize again called in sick and thereafter requested an application for disability benefits. (*Id.,* Ex. C, Herman Decl., ¶ 7; Doc. 18-2, Mize Decl., ¶ 7). She was approved for short-term disability but, a few days later, received a letter from the insurance company stating she would no longer receive

short-term disability because RBC had terminated her employment. (Doc. 18-2, Decl., ¶ 7). On February 15, 2008, Herman called Mize and told her not to come back to work. (Doc. 14, Ex.A, Mize Dep., pp. 266-7; *Id.,* Ex. C, Herman Decl. ¶ 8). After plaintiff was terminated, RBC filled the CAR position with another Hillcrest Branch employee. (*Id.,* Ex. C, Herman Decl. ¶ 8). Mize asserts this employee was Tiffany Denbow, whose age was 23. (Doc. 18-2, Mize Decl., ¶ 9).

### LEGAL ANALYSIS
#### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Bailey v. Allgas, Inc.,* 284 F.3d 1237, 1243 (11th Cir.2002) (quoting *Anderson,* 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* at 249-250. (internal citations omitted).

**\*6** The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson,* 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States,* 253 F.3d 1257, 1265 (11th Cir.2001). In evaluating the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade,* 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company,* 32 F.3d 520, 524 (11th Cir.1994)(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial ." FED.R.CIV.P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 998 (11th Cir.1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 at 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation and citation omit- ted).

**B.** *ADA Claim*

Under the ADA, an employer shall not discriminate "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To resolve a claim of disability discrimination under the ADA, this court must apply the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1365 (11th Cir.2000) . To establish a *prima facie* case of discrimination under the ADA for disparate treatment/termination, a plaintiff must demonstrate that (1) he or she has a disability; (2) he or she is a qualified individual; and (3) he or she was subjected to unlawful discrimination as a result of his disability. *Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1226 (11th Cir.1999)(citing *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996); *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996)). If a plaintiff is able to establish her *prima facie* case, the burden then shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for failing to provide the requested accommodations. If the employer meets this burden of production, the employee may still prove disparate treatment, for instance, by demonstrating the employer's reason is pretextual. *Raytheon Co. v. Hernandez,* 540 U.S. 44, 49 n. 3, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003).

*7 Furthermore, "Congress has imposed upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer." *Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 910 (11th Cir.1996)(citing 42 U.S.C. § 12112(b)(5)(A)). "In a claim for failure to make reasonable accommodations, the traditional *McDonnell-Douglas* burden-shifting is modified." *Richardson v. Honda Mfg. of Ala.,* LLC, 635 F.Supp.2d 1261, 2009 WL 2171113, at *13

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

(N.D.Ala. July 22, 2009)*(citing Fenney v. Dakota, Minn. & E.R.R. Co.,* 327 F.3d 707, 712 (8th Cir.2003)). "In addition to setting forth the prima facie case, [a p]laintiff must identify a reasonable accommodation that would allow him to perform the job." If the plaintiff is able to establish a *prima facie* case, "the defendant employer may rebut the claim by presenting evidence that the plaintiff's requested accommodation imposes an undue hardship on the employer." *Id.* (citing *Terrell v. USAir,* 132 F.3d 621, 624 (11th Cir.1998)).[FN4] In the present case, RBC seeks summary judgment as to both of Mize's claims (1) that RBC failed to accept her proposed accommodations for her alleged disabilities and (2) that RBC terminated her on the basis of her alleged disabilities by asserting that Mize cannot establish the elements of her *prima facie* case as a matter or law.

> FN4. The District Court for the Northern District of Alabama obtained this framework from *McCoy v. Geico Gen. Ins. Co.,* 510 F .Supp.2d 739, 748 (M.D.Fla.2007).

**1. Whether Mize has a disability**

RBC first argues that Mize cannot establish a claim under the ADA because she does not suffer from a disability for the purposes of the ADA. In order to satisfy this portion of her *prima facie* case, Mize must meet the definition of "disability" set forth under the ADA: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. § 12102(1) "An individual is deemed to be 'disabled' for purposes of the ADA if he satisfies any one of these three enumerated definitions." *Gordon,* 100 F.3d at 911. Neither party discusses the "record of" or "regarded as" definitions of disability, thus the focus here will be on whether Mize has actual disabilities. The definition of an actual disability contains three elements, all of which Mize must show. *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, she must have a recognized phys-

ical or mental impairment. Second, she must identify one or more "major life activities" affected by the impairment. Third, she must show that the impairment "substantially limits" one or more of these activities. *Rossbach v. City of Miami,* 371 F.3d 1354, 1357 (11th Cir.2004). The first two elements are to be determined by this court as a matter of law, whereas determining whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury. However, summary judgment may be appropriate if Mize fails to create a genuine issue of fact in this regard. *Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1129 (10th Cir.2003).

**a. Whether Mize suffers from a recognized physical impairment**

**\*8** The first element of actual disability-that Mize suffers from a physical impairment-is not met in this case as to Mize's alleged " night blindness." Mize provided no medical documentation establishing she suffers from this proposed infliction, and she provided no proof that any other court has found " night blindness " is a recognized infliction under the ADA. On the other hand, based on the provided medical records (Doc. 18-3, Ex. 1) and Mize's testimony, this court concludes the first element is met as to Mize's fibromyalgia, scoliosis, high blood pressure, and asthma. *See Richards v. Publix Supermarket, Inc.,* 2007 WL 570090, at * 3 (M.D.Fla. Feb.20, 2007). Despite this court's conclusion, a physical impairment, standing alone, does not necessarily make one "actually disabled" under the ADA. [FN5] *Hilburn,* 181 F.3d at 1226; *Pritchard,* 92 F.3d at 1132). Rather, the impairment must also substantially limit one or more of the individual's major life activities. *Gordon,* 100 F.3d at 911; *see Swain v. Hillsborough County Sch. Bd.,* 146 F.3d 855, 858 (11th Cir.1998)(a plaintiff "must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment.").

> FN5. The EEOC defines a physical impairment as follows:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respitory (including speech organs), cardiovascular, reproductive, digestive, genito-uniary, hemic and lymphatic, skin, and endocrine ...

29 C.F.R. § 1630.2(h).

**b. Whether Mize has identified major life activities affected by a physical impairment**

To establish the second element of the definition of "actual disability," Mize must identify the major life activities affected by her impairment. "Major life activities" is defined by the Equal Employment Opportunity Commission ("EEOC") regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working ." 29 C.F.R. § 1630.2(i).[FN6] If one of Mize's activities is not contained within one of these examples, the activity must be of "central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).[FN7] Mize contends that the pain from her fibromyalgia, scoliosis, asthma, and high blood pressure "limits her sleeping, walking at length, climbing, cooking, house cleaning, turning quickly, heavy lifting, standing quickly[,] kneeling at length, [and] breathing normally." (Doc. 18-1, p. 2; Doc. 18-4, Ex. 2). At least two of these activities-walking and breathing-are examples of "major life activities" under the EEOC guidelines. As a result, Mize has satisfied her burden under this second element by identifying major life activities which are affected by her fibromyalgia, scoliosis, high blood pressure, and asthma.

FN6. The Eleventh Circuit stated "[w]hile the ADA defines neither 'major life activities' nor 'substantially limits,' courts may rely on the regulations promulgated by the [EEOC] for guidance." *Gordon,* 100 F.3d

at 911.

FN7. The ADA was recently amended by the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009, Pub.L. 110-325. In passing the ADAAA, Congress intended to "reinstate the broad scope of the protection to be available under the ADA," and explicitly overruled those cases that had "narrowed the broad scope of protection intended to be afforded by the ADA" and which had as a result, "eliminat[ed] protection for many individuals whom Congress intended to protect." *Id.* Specifically, the ADAAA overrules cases cited in this Order, including *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

On the other hand, she has failed her burden under this second element as to her alleged " night blindness." Even if her night blindness was a recognized impairment under the ADA, this "disability" does not affect a major life activity. Mize asserts that driving at night is the only activity which is affected by her alleged night blindness (*See* Doc. 14, Ex.A, Mize Dep., Ex. 4), and the Eleventh Circuit Court of Appeals has determined that the ability to drive is not a "major life activity" under the ADA. *See Chenoweth v. Hillsborough County,* 250 F.3d 1328, 1329-30 (11th Cir.2001). As a matter of law, Mize is not able to establish the first prong of her *prima facie* case as to her " night blindness " since this affliction is not a recognized disability under the ADA. Therefore, she is not able to assert a claim under the ADA for RBC's failure to provide her with an accommodation to attend the Christmas party on December 7, 2007. Thus, summary judgment as to this particular claim is granted.

**c. Whether Mize has a physical impairment that substantially limits a major life activity**

*9 In regards to the third element of the definition of "disability," "the EEOC has provided that courts should consider the following three factors

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

when determining whether an impairment substantially limits a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Gordon,* 100 F.3d at 911 (citing 29 C.F.R. § 1630.2(j)(2); other citations omitted). Mize contends that she has endured constant pain in her back, hands, arms, legs, and feet since the early to mid-1990s, and that she has not had a pain-free day since that time. (Doc. 14, Ex.A, Mize Dep., pp. 59-60, 67-70). In light of Mize's testimony and other evidence in the record, this court finds that reasonable persons in the exercise of impartial judgment could conclude that Mize's fibromyalgia, scoliosis, asthma, and high blood pressure substantially limit her ability to walk and breathe. As a result, summary judgment based on the first prong of Mize's *prima facie* case is not appropriate at this time as to any of Mize's claims related to her fibromyalgia, scoliosis, asthma, and high blood pressure

**2. Whether Mize is a qualified individual**
    Once a plaintiff satisfies the first prong of her *prima facie* case, she must then show that she is a qualified individual under the ADA. "An individual is 'qualified' if she, with or without reasonable accommodation, can perform the essential functions and job requirements of the position the individual holds." *Earl,* 207 F.3d at 1365(citing 42 U.S.C. § 12111(8); *S.E. Cmty. Coll. v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979)). RBC argues that summary judgment is appropriate because Mize "cannot [ ] show that the accommodations she requested were reasonable and would have allowed her to perform the essential functions of her job." (Doc. 14, p. 16). Mize contends that she was denied a reasonable accommodation on three occasions: [FN8] (1) when Mize asked to have another employee assigned part of her inventory project; (2) when she asked to work at the basement teller window instead of the main level teller desk; and (3) when she sent an email to Herman asking

for a ride with or to follow someone to the Christmas party. Because Mize's night blindness is not a disability covered under the ADA, it will only be necessary to discuss the first two alleged requests for accommodation.

> FN8. RBC states in its brief in support of its motion that Mize contends that she was denied a reasonable accommodation on a fourth occasion: when Bettis and Hill declined to answer her phone for her. (Doc. 14, p. 16). However, in her response, Mize maintains that this was not a demand for an accommodation (Doc. 18-1, ¶ 6), thus this court will not treat it as such a request.

    In general, "[a]n employer must provide reasonable accommodations for employees with known disabilities unless such accommodations would result in undue hardship to the employer." *Earl,* 207 F.3d at 1365(citing *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996)). Specifically, "[a]n accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job." *Id.* (citing *LaChance v. Duffy's Draft House, Inc.,* 146 F.3d 832, 835 (11th Cir.1998)). Mize "bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1255-6 (11th Cir.2001)(citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1286 (11th Cir.1997); *Willis v. Conopco, Inc.,* 108 F.3d 282, 283 (11th Cir.1997)). "The ADA lists as examples of reasonable accommodations 'job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities.' " *Id.* (quoting 42 U.S.C. § 12111(9)(B)).

**a. Mize's request for a co-worker to help her with the inventory project**
    *10 Before addressing whether Mize's request for help with her inventory project was a request

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

for a reasonable accommodation, the court must first determine whether the duty at issue, inventorying the safety deposit boxes, was essential to performing the job of CAR. First, the statutory regulations state that the initial inquiry into whether a function is "essential" focuses on whether the employer "actually requires employees in the position to perform the functions that the employer asserts are essential." 29 C.F.R. § 1630.2(n); *see also Earl,* 207 F.3d at 1365. Mize worked as a vault custodian for AmSouth prior to working for RBC, and once RBC took over the Hillcrest Branch, Mize continued to perform the vault custodian duties, albeit under the title of CAR. (Doc. 14, Ex A, Mize Dep., pp. 220-1). As a vault custodian with AmSouth, she was required to perform an inventory of the safety deposit boxes. (*Id* ., p. 262). Therefore, the bank, whether it is AmSouth or RBC, actually asks its employees to inventory the safety deposit boxes from time to time.

Second, after determining that inventorying the vault is a function that RBC actually requires of an employee, the court must then determine whether the job function is essential to Mize's job as a CAR. In ascertaining what job duties are essential, "the ADA states 'consideration shall be given to the employer's judgment ...' " *Earl,* 207 F.3d at 1365 (citing 42 U.S.C. § 12111(8)). Herman stated in her declaration that "Mize's vault inventorying task [was] an essential function of her job at RBC." (Doc. 14, Ex. C, Herman Decl. ¶ 11). In addition, "[a] job function also may be essential if there are a limited number of employees among whom performance of the job can be distributed." *Earl,* 207 F.3d at 1365(citing 29 C.F.R. § 1630.2(n)(2)(ii)). Herman stated in her declaration that Mize "worked in the safety deposit vault alone on a daily basis." She also stated that "the other branch employees worked there virtually never" and that "the other employees, as far as I knew, had virtually no experience with its operation." (Doc. 14, Ex. C, Herman Decl. ¶ 11). Furthermore, Mize did not identify another employee capable of performing the vault inventory.[FN9] (*See* Doc. 18-2, Mize Decl., ¶ 11).

This evidence clearly points to the fact that Mize was one of the few employees who could perform this inventory project. Therefore, this court finds that Mize's inventorying task was an essential function of her job with RBC.

> FN9. Mize stated that Tiffany Denbow, who worked the teller window downstairs for AmSouth, occasionally had to "wait[ ] on the safe box customers" when Mize was gone. She also asserted that when she went on vacation, "the tellers or the platform had to cover my position ..." (Doc. 18-2, ¶ 11). Despite the fact that Mize identified a specific employee who could wait on customers, Mize did not provide a name of an employee who had performed or could perform the vault inventory.

Third, in light of this court's finding that the inventory task was an essential function of the job, the next step for the court is determining whether Mize's request for an accommodation was reasonable.[FN10] Prior to undertaking the inventory task, Mize asked Herman to provide another person to help her because she had trouble kneeling down and climbing a ladder. (Doc. 14, Ex. A, Mize Dep., pp. 257-60). Despite Mize's contentions to the contrary, courts have routinely found that requiring an employer to reassign an existing employee to help a disabled employee with an essential function of his or her job "is an unreasonable accommodation as a matter of law because it creates an undue burden on [the employer.]" *Merrell v. ICEE-USA Corp.,* 2000 WL 1854117, at *5 (10th Cir. Dec.19, 2000); *see e.g., Bratten v. SSI Servs., Inc.* 185 F.3d 625, 632 (6th Cir.1999); *Soto-Ocasio v. Fed. Express Corp.,* 150 F.3d 14, 20 (1st Cir.1998)(holding that requiring employer to allocate other employees to complete plaintiff's work is unreasonable); *Henry v. Unified Sch. Dist. No. 503,* 328 F.Supp.2d 1130, 1157 (D.Kan.2004)(" 'The courts of appeals have consistently held that employers are not required to assign existing employees or hire new employees to perform certain functions or duties of a disabled

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

employee's job which the employee cannot perform by virtue of his or her disability; *Johnson v. Ga. Dep't of Human Res.,* 983 F.Supp. 1464, 1474 (N.D.Ga.1996)("An employer ... is not required to reallocate essential job functions ... For example, suppose a security guard position requires the individual who holds the job to inspect identification cards. An employer would not have to provide an individual who is legally blind with an assistant to look at the identification cards for the legally blind employee."); *Dey v. Milwaukee Forge,* 957 F.Supp. 1043, 1052 (E.D.Wis.1996)(holding that ADA does not require employer to assign fellow workers to assist plaintiff in performing his essential job functions because it involves a reallocation of plaintiff's job duties); *Stubbs v. Marc Ctr.,* 950 F.Supp. 889, 895 (C.D.Ill.1997)(requested accommodation of temporarily shifting duties to coworkers is unreasonable); *Krennerich v. Inhabitants of Bristol,* 943 F.Supp. 1345, 1351 (D.Me.1996)("an employer is not 'required to assign existing employees ... to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability.").

> FN10. Under the ADA, a "reasonable accommodation" includes:
>
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
>
> 42 U.S.C. § 12111(9)

**\*11** RBC is not required to reassign existing employees to assist Mize in her essential duties,

and it is clear that Mize's proposed accommodation would do just that. Therefore, in regards to Mize's request for RBC to reassign an employee to help her with the inventory task, this court finds that a reasonable jury could not find that Mize's request was for a reasonable accommodation under the ADA.

**b. Mize's request to work the basement teller desk**

In February 2008, Herman informed Mize that as part of her duties as CAR, she would need to fill in for the main level tellers from time to time. Mize in turn asked Herman for an accommodation that she be allowed to operate the downstairs basement teller desk instead of working on the main level, a request which Herman refused. There is no question that working as a teller is an essential function of Mize's CAR position. Herman stated in her declaration that forty percent of Mize's job as CAR would be spent "as a teller serving drive-thru and walk-in customers." (Doc. 14, Ex. C, Herman Decl., ¶ 3). Furthermore, Mize acknowledged that she would have to "function in the [t]eller capacity as required by [her] manager." (Doc. 14, Ex. A, Mize Dep., Ex. 7). Moreover, in her response to the motion for summary judgment, Mize did not object to RBC's assertion that the teller duties were an essential function of Mize's job as a CAR. (*See* Doc. 18-1, pp. 6-7; Doc. 18-2, Mize Decl., ¶¶ 3-6).

On the other hand, Mize does assert that her request to operate the downstairs teller desk instead of working on the main floor a request for a reasonable accommodation. (Doc. 18-2, ¶ 6). This court disagrees. AmSouth had previously utilized the basement teller desk but that desk was taken out of service at least six months before RBC took over the Hillcrest Branch. Once the takeover occurred, RBC did not reopen the basement teller desk. (Doc. 14, Ex.A, Mize Dep., pp. 242-4). In light of the fact that a basement teller position did not exist at the time of Mize's request, Mize's proposed accommodation would require RBC to create a new position for Mize. However, "the ADA does not require an

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
(Cite as: 2009 WL 3419586 (S.D.Ala.))

employer to promote a disabled employee as an ac-
commodation, nor must an employer reassign the
employee to an occupied position, *nor must the em-
ployer create a new position to accommodate the
disabled worker." White v. York Int'l. Corp.,* 45
F.3d 357, 362 (10th Cir.1995)(emphasis added); *see
also Johnson v. Cleveland City* Sch., 2009 WL
2610833, at *7 (6th Cir. Aug.25, 2009)("The ADA
does not require the employer to create a new posi-
tion for the plaintiff as an accommodation."); *Ter-
rell v. USAir,* 132 F.3d 621, 624-26 (11th Cir.1998)
(where employer had no part-time positions avail-
able at time plaintiff demanded part-time schedule,
a request for part-time employment was unreason-
able); *Baaqee v. Brock & Bleving Constr. Co.,* 2000
WL 821469, at *8 (S.D.Ala. June 19, 2000)("The
ADA does not require an employer to reassign an
employee to an occupied position, nor must the em-
ployer create a new position to accommodate the
disabled worker.").

   **\*12** In light of the foregoing, the court finds
that a reasonable jury could not find that Mize was
a qualified individual under the ADA because of
her inability to perform this essential function of
her job with or without reasonable accommodation.

### 3. Whether Mize was subject to unlawful dis-
crimination on the basis of her disability

   Even if Mize had established that she suffers
from a disability as defined under the ADA and had
demonstrated that she is a qualified individual with
a disability, Mize has still failed to show that a
reasonable jury could find she was subject to un-
lawful discrimination on the basis of her disability.
First, Mize did not provide any evidence that she
was terminated because of her disability. As stated
above, working "in the [t]eller capacity as required
by their manager" is an essential function of the
CAR position. (*See* Doc. 14, Ex. A, Mize Dep., Ex.
7; Ex.C., Herman Dec. ¶ 3). Herman, as manager of
the Hillcrest Branch, communicated to Mize that
her job duties as CAR included working the main
level teller area which included the drive-thru win-
dow. (Doc. 18-2, Mize Decl., ¶ 5-6; Doc. 14, Ex. C,

Herman Decl., ¶ 3, 5-6; Ex. A, Mize Depo., pp.
218-9). Mize refused to work the main level teller
area and instead gave Herman an ultimatum that
she would only work as a teller in the downstairs
teller window. (Doc. 18-2, ¶ 6). As explained
above, RBC was not required to open a new posi-
tion for Mize, thus, on February 11, 2008, Herman
gave Mize till February 15, 2008 to accept all the
responsibilities of the CAR position, including
working the main level teller area. (Doc. 14, Ex. C,
Herman Decl., ¶ 6). Mize did not accept that pro-
posal by the deadline and was thereafter terminated.
(*Id.,* ¶ 7). In viewing the evidence in a light most
favorable to the plaintiff, Mize was terminated be-
cause she would not accept the full responsibilities
of the CAR position. With the evidence now before
the court, a reasonable jury could not find that she
was terminated because of her disability.

   Second, Mize has not provided any persuasive
evidence that she was denied her requested accom-
modation for the inventory project because of her
disability. On the other hand, Herman has given a
valid business reason for her rejection of the ac-
commodation. Herman "determined that there were
no other personnel available that I could divert
away from their normal jobs upstairs for a pro-
longed period of time in the basement." Further-
more, Herman did offer Mize some help in that
"some of the upstairs tellers could sort paperwork
associated with the inventory during any 'down
time' that they had between their interactions with
customers." (*Id.,* ¶ 10).

   Third, Mize has not provided any persuasive
evidence that RBC denied her request to work in
the downstairs teller desk because of her disability.
As to the four reasons that Herman gave for not re-
opening the downstairs teller desk, [FN11] Mize only
countered these reasons by asserting that those were
not valid reasons, and she in no way asserted that
the real reason she was denied her request was be-
cause of her disability.[FN12] (*See* Doc. 18-2, Mize
Decl. ¶ 6).

   FN11. Herman stated she could not accept

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

Mize's proposal for the following four reasons:

> First, I believe that any employee isolated in the basement with readily available cash would constitute a security and safety risk ... Second, the basement does not have a drive-thru window, so it could not serve the bank's daily vehicles. Third, I did not think that Ms. Mize could be productive as a teller by working the basement teller desk ... Fourth and finally, a general cost-benefit analysis dictated that the branch should not operate the basement teller desk.

Doc. 14, Ex. C, Herman Decl., ¶ 6

FN12. In response to Herman's reasons for denying the accommodation, Mize responded as follows:

> **First,** for 4 years I was isolated in the basement and readily received cash payments from safe box customers. I was in a small office easily accessed by anyone who came in the back door. Unlike the teller desk downstairs, which had two automatically locked doors and thick double paned glass.
>
> **Second,** the downstairs does not have a drive-thru window but it is much more conducive for handicapped people to access the bank ...
>
> **Third,** I believe a simple sign inside and outside of the bank stating that there was 24 another teller window downstairs would be all that was required to become a productive member of the teller team ...
>
> **Fourth,** and finally, the cost-benefit analysis is absurd ...

(Doc. 18-2, Mize Decl., ¶ 6).

**\*13** In light of the foregoing, Mize is not able to establish a *prima facie* case as a matter of law for (1) her claim that RBC failed to accept reasonable accommodations for her disabilities and (2) her claim that RBC terminated her because of those disabilities. Therefore, summary judgment is due to be granted in favor of RBC as to Mize's ADA claim.

#### C. ADEA claim

Mize also makes an age discrimination claim under the ADEA, 29 U.S.C. § 621 et seq. (Doc. 1). Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The *McDonnell Douglas* burden shifting framework is applicable in an ADEA case. *See Cofield v. Goldkist, Inc.,* 267 F.3d 1264, 1268 n. 6 (11th Cir.2001) ("Although the *McDonnell Douglas* framework originally applied to Title VII cases, it is now widely accepted that the framework applies to claims of discrimination under the ADEA as well.") (citations omitted). Therefore, "to succeed on a discrimination claim, a plaintiff must offer ... circumstantial evidence that satisfies a four-part requirement for ... age discrimination: (1) that she was a member of a protected class; (2) that she was subject to an adverse employment action; (3) that the position she sought or was discharged from was filled by someone outside her protected class; and (4) that she was qualified to perform the job for which she was rejected." *Turley v. SCI of Ala.,* 190 Fed.Appx. 844, 847 (11th Cir.2006)(citing *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358-59 (11th Cir.1999))(emphasis omitted)).

If Mize is able to establish a *prima facie* case of age discrimination, the burden then shifts to RBC, "who must 'proffer a legitimate, nondiscriminatory reason for the adverse employment action.' " *Hamilton v. Montgomery County Bd. of Educ.,* 122 F.Supp.2d 1273, 1280 (M.D.Ala.2000)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

(quoting *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994)(internal quotations omitted)). The court is not able to determine whether plaintiff has made a prima facie case of age discrimination, because she did not specifically respond to RBC's motion for summary judgment on this ground. Ordinarily, failure to respond to a motion for summary judgment on a particular claim will be deemed a concession on that ground, or an abandonment of that ground.

In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local 675,* 794 F.2d 641, 643 (11th Cir.1986). There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz,* 913 F.2d 1544, 1550 (11th Cir.1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir.1994) (citing *Lazzara v. Howard A. Esser, Inc.,* 802 F.2d 260, 269 (7th Cir.1986)), *cert. denied,* --- U.S. ----, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

**\*14** *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995).

In this case, however, even if the plaintiff had successfully demonstrated a prima facie case of age discrimination, there is no evidence pointed to by the plaintiff to show that the legitimate, nondiscriminatory reasons proffered by RBC for plaintiff's termination, described above, are pretextual, or merely a cover for discrimination because of her age. "At the pretext stage, in order to survive summary judgment, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." *Miller v. Bed, Bath & Beyond, Inc.,* 185

F.Supp.2d 1253, 1270 (N.D.Ala.2002)(citing *Combs v. Plantation Patterns,* 106 F.3d 1519, 1539 (11th Cir.1997)). Mize may do this by (1) "showing that the employer's legitimate nondiscriminatory reasons should not be believed; or" (2) "showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." *Id.* (citations omitted). "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons ... that a reasonable factfinder could find them unworthy of credence.' " *Hamilton,* 122 F.Supp.2d at 1281 (quoting *Combs,* 106 F.3d at 1539). The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. *Tex. Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In satisfying the ultimate burden of proving that the discharge was on account of age, a plaintiff need not establish that age was the sole reason for termination, but that it was a determinative factor in the employer's decision. *Anderson v. Savage Labs., Inc.,* 675 F.2d 1221, 1224 (11th Cir.1982)(citing *Haring v. CPC Int'l, Inc.,* 664 F.2d 1234, 1239-40 (5th Cir.1981)). However, it should be noted that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir.2000)(quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)). It is not appropriate for either the plaintiff or the court to "recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Id.* An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984). In her response, Mize failed to meet that burden of showing that RBC's legitimate nondiscriminatory reasons should not be believed or that an age discriminatory reason more likely

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3419586 (S.D.Ala.)
**(Cite as: 2009 WL 3419586 (S.D.Ala.))**

motivated or influenced the decision. Therefore, the
court finds that summary judgment is due to be
granted in favor of RBC as to Mize's ADEA claim.

### CONCLUSION
**\*15** For the foregoing reasons, RBC's Motion
for Summary Judgment (Doc. 13) is hereby **GRAN-
TED.** A separate judgment will be entered.

S.D.Ala.,2009.
Mize v. Centura Financial Services (RBC)
Slip Copy, 2009 WL 3419586 (S.D.Ala.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.)))**

**H**
NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing
in the Federal Reporter. See Federal Rule of Appel-
late Procedure 32.1 and this court's local Rule
32.1.1. for rules regarding the citation of unpub-
lished opinions.)

United States Court of Appeals, Second Circuit.
Robert H. SARVIS, Plaintiff-Appellant,
v.
UNITED STATES of America, Federal Bureau of
Prisons, Frederick Menifee and Page True, Defend-
ants-Appellees.

No. 99-0318.
Oct. 19, 2000.

Appeal from the United States District Court for the
District of Vermont, Murtha, J.
Robert H. Sarvis, Brattleboro, VT, pro se.

Carol L. Shea, Assistant United States Attorney,
Burlington, VT; Charles R. Tetzlaff, United States
Attorney for the District of Vermont; Paul J. van de
Graaf, Chief, Civil Division, on the brief, for ap-
pellees.

Present McLAUGHLIN, JACOBS, and STRAUB,
Circuit Judges.

### SUMMARY ORDER
*1 UPON DUE CONSIDERATION, IT IS
HEREBY ORDERED, ADJUDGED AND DE-
CREED that the judgment of the district court be
AFFIRMED.

Robert H. Sarvis, pro se, sued the Federal Bur-
eau of Prisons (BOP) and two prison wardens in the
United States District Court for the District of Ver-

mont (Murtha, J.) for wrongs allegedly committed
while he was in federal prison. He now appeals the
district court's judgment, which (1) dismissed his
claims arising under the Rehabilitation Act, the
Americans with Disabilities Act ("ADA") and the
Federal Tort Claims Act ("FTCA"); and (2) granted
summary judgment on his constitutional claim of
retaliation against the exercise of First Amendment
rights. On appeal, Sarvis challenges essentially all
of the district court's dispositive rulings. We affirm.

### BACKGROUND
In March 1995, Sarvis was sentenced to a
forty-six month term of incarceration and a five
year term of supervised release for bank fraud and
related crimes. *See United States v. Sarvis*, 205
F.3d 1326 (2d Cir.2000) (summary order). He
entered the Allenwood, Pennsylvania federal penit-
entiary in April 1995. While in custody there, Sar-
vis applied for admission to the Intensive Confine-
ment Center ("ICC"), a BOP facility in Lewisburg,
Pennsylvania. The ICC operates a rigorous, highly
structured six month program designed to promote
a prisoner's discipline and self-control. A prisoner
who successfully completes the program becomes
eligible to serve the remainder of his prison sen-
tence in a halfway house and, later, in home deten-
tion.

The Allenwood staff initially judged Sarvis to
be medically unfit to enter the ICC program. Sarvis
unsuccessfully challenged this decision in the
United States District Court for the Middle District
of Pennsylvania, but Allenwood's medical staff
nevertheless reversed position and cleared Sarvis
for ICC participation.

Sarvis alleges that after he arrived at the ICC in
August 1997, the ICC staff punished him for insti-
tuting litigation. Among many other, less serious
allegations, Sarvis charges that a guard "assaulted
and battered" him and "threatened to kill [him] or
have him killed." Sarvis did not complete the ICC
program; in March 1998, the ICC staff, citing dis-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Attachment 11

234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.)))**

ciplinary problems, transferred him back to the Allenwood facility. He was released from prison in August 1998, and he began serving his term of supervised release in the District of Vermont.

Sarvis filed the instant action in 1999, seeking recovery on the following theories:

1. the BOP violated the Rehabilitation Act § 504 and the ADA by (i) denying him admission to the ICC on the basis of his medical conditions, (ii) retaliating against him while he was at Allenwood for filing the Middle District of Pennsylvania action, (iii) retaliating against him while he attended the ICC for the same reason;

2. the BOP violated his First Amendment rights by retaliating against him for filing various administrative complaints;

3. a prison guard, "as an agent of the BOP," battered and assaulted him; and

*2 4. the BOP negligently supervised employees at both (i) Allenwood and (ii) the ICC, thereby allowing retaliation to occur.

The district court construed the battery, assault and negligent supervision claims as arising under the FTCA, and granted the United States' motion to be substituted as the sole defendant on those claims. *See* 28 U.S.C. § 2679(d)(1).

After defendants served dispositive motions, Sarvis moved to amend his complaint "to add allegations of negligent supervision and assault and battery in the event the court finds he failed to properly plead them in" the complaint. He also asked the court to "grant him ten days to so amend." Judge Murtha stamped Sarvis's motion "granted" on October 7, 1999 and noted that the court would "so construe the complaint"; however, the court did not indicate whether it would allow Sarvis to submit an amended pleading. Sarvis had not submitted any amendment when, five days later, Judge Murtha dismissed the Rehabilitation Act, ADA and FTCA claims, and granted summary judgment on the con-

stitutional claim.

### DISCUSSION

Sarvis argues that the district court erred by (1) dismissing his ADA and Rehabilitation Act claims, (2) granting summary judgment on his constitutional claim of retaliation, and (3) denying him the opportunity to submit an amended pleading regarding his claims of battery, assault and negligent supervision.

**A. The ADA and Rehabilitation Act Claims**

The district court properly dismissed Sarvis's claims of discrimination against the BOP under the ADA and the Rehabilitation Act. Sarvis's ADA claim arises under Title II of that law, which proscribes discrimination against the disabled by "a public entity." 42 U.S.C. § 12132. The statute defines "public entity" to mean, in relevant part, "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* § 12131(1). Based on this definition, we have held that "Title II of the ADA is not applicable to the federal government." *Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir.2000) (per curiam). Sarvis therefore cannot proceed against the BOP under the ADA.

Sarvis's Rehabilitation Act claim is based on § 504(a) of that statute, which prohibits discrimination on the basis of disability "under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). Sarvis's claim was properly dismissed because Congress has not waived the Federal Government's sovereign immunity against awards of money damages for § 504(a) violations, except where a federal agency is acting as a " '*Federal provider' of financial assistance.* " *See Lane v. Pena*, 518 U.S. 187, 193 (1996) (quoting Rehabilitation Act § 505(a)(2), 29 U.S.C. § 794a(a)(2) (emphasis added)). The waiver is limited to "the funding activities of those providers," and does not reach " 'any act' of an agency that serves as a 'Federal provider' in any context ." *Id.* at 195 (quoting Rehabilitation Act § 505(a)(2)). The BOP

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.)))**

was not acting as "Federal provider" in this sense during the course of events described in Sarvis's complaint.

**B. The Constitutional Claim**
   *3 Sarvis based his constitutional claim on the principle that retaliation "against a prisoner for pursuing a grievance violates the right to petition the government for the redress of grievances guaranteed by the" First Amendment. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996); *see also Davidson v. Chestnut,* 193 F.3d 144, 145-46. (2d Cir.1999) (per curiam). According to Sarvis, agents of the BOP were angered by his filing of the Middle District of Pennsylvania action and numerous administrative complaints. They allegedly retaliated against him by (1) imposing unjustified disciplinary sanctions, and (2) refusing to allow him to serve his term of supervised release in the District of Maine.

   A defendant is entitled to summary judgment on such a claim "if the undisputed facts demonstrate that the challenged action[s] clearly would have been taken on a valid basis alone." *Davidson,* 193 F.3d at 149. A "finding of sufficient permissible reasons to justify state action is readily drawn in the context of prison administration," for two reasons. *Graham,* 89 F.3d at 79. First, "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Id.* Second, "we have been cautioned to recognize that prison officials have broad administrative authority." *Id.; see also Davidson,* 193 F.3d at 149.

   Under these standards, we affirm the district court's grant of summary judgment. Defendants produced evidence that Sarvis committed numerous violations of prison rules. These violations were sufficient to justify his removal from the ICC as well as the other disciplinary sanctions imposed on him. Defendants also showed that Sarvis was denied leave to serve his term of supervised release in the District of Maine because, among other reasons, he lied to officers in the District of Maine's

probation office and entered into an agreement with a resident of Portland, Maine to deceive the office into thinking that he had a job offer. On this uncontroverted evidence, a reasonable jury would have to find that valid reasons alone supported the actions that Sarvis challenges as retaliatory.

**C. The FTCA Claims**
   We agree with the district court that Sarvis did not administratively exhaust his FTCA claims of battery, assault and negligent supervision prior to commencing this suit.[FN1] Accordingly, the district court did not err in refusing to allow him to amend those claims. *See Pangburn v. Culbertson,* 200 F.3d 65, 70-71 (2d Cir.1999) ("[F]utility is a valid reason for denying a motion to amend ... where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims.") (internal quotation marks and citations omitted).

   FN1. We assume for purposes of this order only that Sarvis's tort claims are not barred by the FTCA's "intentional tort" exception, codified at 28 U.S.C. § 2680(h), which provides that the FTCA's waiver of sovereign immunity does not extend to "[a]ny claim arising out of," inter alia, battery and assault. *Id.* The exception, however, is itself subject to a proviso, which states that sovereign immunity is waived nevertheless if the battery or assault is committed by an "investigative or law enforcement officer[ ] of the United States Government." *Id.*

   The statute defines "investigative or law enforcement officer" to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Because an "officer or employee of the Bureau of Prisons may make arrests," 18 U.S.C. § 3050, defendants in this action are at least arguably subject to the proviso. *See Torres v. Taylor,* 456 F.Supp. 951, 954 & nn. 19, 20 (S.D.N.Y.1978) (Weinfeld,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.))
**(Table, Text in WESTLAW), Unpublished Disposition**
(Cite as: 234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.)))

J.).

The FTCA "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States,* 508 U.S. 106, 107 (1993) (quoting 28 U .S.C. § 2675(a)). The administrative claim "must provide enough information to permit the agency [1] to conduct an investigation and [2] to investigate the claim's worth." *Romulus v. United States,* 160 F.3d 131, 132 (1998) (per curiam). If a claim has not been properly presented to an administrative agency, a federal district court must dismiss it for lack of subject matter jurisdiction. *See id.*

*4 Sarvis filed administrative claims pursuant to the FTCA in February and March 1998. The only allegation in the February 1998 filing that relates even remotely to his claims of battery, assault and negligent supervision is a charge that he suffered "acts of retaliation" by BOP employees. This allegation is insufficiently specific to meet the presentment requirement. *See Romulus,* 160 F.3d at 132 (An administrative claim must be "specific enough ... to enable the federal government to expedite the fair settlement of tort claims.") (citing *Johnson v. United States,* 788 F.2d 845, 848-49 (2d Cir.1986)).

Sarvis's March 1998 filing was more detailed. He accused one staff member of threatening his life on four different occasions. He also charged that a supervisory staff member made unspecified threats and called Sarvis disparaging names.

While specific, these charges do not present claims of battery, assault or negligent supervision. Under Pennsylvania law, which governs Sarvis's tort claims under the FTCA, *see Makarova v. United States,* 201 F.3d 110, 114 (2d Cir.2000); 28 U.S.C. § 1346(b)(1), battery requires "a harmful or offensive *contact.* " *Dalrymple v. Brown* 701 A.2d 164, 170 (Pa.1997) (emphasis added). Sarvis's administrative claim nowhere alleges this element.

The tort of assault "may be described as an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." *Cucinotti v. Ortmann,* 159 A.2d 216, 217 (Pa.1960) ; *accord Pino v. Wyeth-Ayerst/AHPC,* 1995 WL 708551, at *4 (E.D.Pa. Nov. 29, 1995). Sarvis argues that his assault claim is administratively exhausted because he duly alleged that ICC staff members threatened his life at various times. We disagree. In Pennsylvania, " *[w]ords in themselves, no matter how threatening, do not constitute an assault;* the [defendant] must be in a position to carry out the threat immediately, and *he must take some affirmative action to do so.* " *Cucinotti,* 159 A.2d at 217 (emphasis added); *accord Pino,* 1995 WL 708551, at *4; *see also Kahle v. Glosser Bros.,* 462 F.2d 815, 817 n. 4 (3d Cir.1972) ("It is ... settled in Pennsylvania that words or threats alone are insufficient to put a person in reasonable apprehension of physical injury or offensive touching."). Because Sarvis's administrative complaint does not describe an assault, the district court lacked subject matter jurisdiction to consider that claim.

Finally, because Sarvis did not present claims of battery or assault, he necessarily failed to exhaust a claim that BOP supervisors negligently failed to prevent such intentional harms. *See Mullen v. Topper's Salon and Health Spa,* 99 F.Supp.2d 553, 556 (E.D.Pa.2000) (Negligent supervision claim requires a failure by an employer "to exercise ordinary care to prevent an *intentional harm* to a third-party.") (emphasis added) (citing *Dempsey v. Walso Bureau,* 246 A.2d 418, 419-22 (Pa.1968); Restatement (Second) of Torts § 317 (1965)).

*5 Because the battery, assault and negligent supervision claims are unexhausted, any amendment to Sarvis's district court complaint concerning these claims would have been futile. *See Pangburn,* 200 F.3d at 70-71. The district court therefore properly declined to consider such an amendment.

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.)))**

C.A.2 (N.Y.),2000.
Sarvis v. U.S.
234 F.3d 1262, 2000 WL 1568230 (C.A.2 (Vt.))

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2010 WL 1910293 (W.D.N.Y.)
**(Cite as: 2010 WL 1910293 (W.D.N.Y.))**

**C**
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. New York.
Milton THOMPSON, Plaintiff,
v.
The UNITED STATES, Martin Horren, Brenda Bailey, Tom Valade, B. Every, T. Barnasie, and J. Ferrando, Defendants.

No. 09-CV-0964M.
May 7, 2010.

Milton Thompson, Batavia, NY, pro se.

**DECISION AND ORDER**
*INTRODUCTION*
RICHARD J. ARCARA, District Judge.
  *1 Plaintiff, Milton Thompson, a detainee at the Buffalo Federal Detention Facility, has filed this *pro se* action seeking relief under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. 12132 *et seq.,* and the Rehabilitation Act ("Rehab.Act"), 29 U.S.C. § 701 *et seq.* (Docket No. 1), and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket No. 2). He also seeks the appointment of counsel, which is denied at this time without prejudice as premature inasmuch as a more fully developed record on the remaining claims will be necessary before the Court can determine whether plaintiffs chances of success warrant the appointment of counsel.[FN1] Plaintiff may renew this request at such time as the existence of potentially meritorious claims may be demonstrated.

  FN1. *See Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997) (when determining whether to appoint counsel, the Court must first look to the "likelihood of merit" of the underlying dispute).

  Plaintiffs First Cause of Action alleges that he suffers from an unspecified "disability" that requires that he wear "medical boots" and "snickers" and that upon the transfer of his custody to the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") at the Buffalo Federal Detention Facility he was denied the use of both the medical boots and snickers, and an eye exam and renewal of his prescription glasses. Plaintiff alleges that this was a violation of Title II of the ADA, the Rehab Act and 42 U.S.C. § 1983. [FN2] (Docket No. 1, Complaint, ¶ ¶ 1-40; "First [and] Second Issue [s]," at pp. 12-15).

  FN2. Because plaintiff is suing only the federal government and federal officials the claims of deliberate indifference under the Eighth Amendment to the United States Constitution are construed to be claims brought pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 398, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring) and not 42 U.S.C. § 1983. In view of plaintiff's *pro se* status, the Court will construe his § 1983 claims against the federal defendants as claims under *Bivens, see Tavarez v. Reno,* 54 F.3d 109 (2d Cir.1995).

  Plaintiffs Second Cause of Action alleges that the Law Library at the Buffalo Federal Detention Facility is inadequate and does not contain sufficient resources to enable him to continue to attempt to challenge his underlying New York State conviction and demonstrate his "actual innocence." (*Id.,* "Second Cause of Action," ¶ ¶ 1-23; "First Issue," at pp. 20-21).

  Plaintiffs Third Cause of Action alleges that he was denied his rights to procedural due process and subjected to cruel and unusual punishment when, following a disciplinary hearing for an incident re-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Attachment 12

Slip Copy, 2010 WL 1910293 (W.D.N.Y.)
(Cite as: 2010 WL 1910293 (W.D.N.Y.))

port issued when he failed, as ordered, to immediately end a telephone conference with the Second Circuit Court of Appeals and lock into his cell for the 10:00 a.m. "change over," he was found guilty and sentenced to what amounted to 18 days in the Special Housing Unit. He claims that during those 18 days he was issued only one blanket and one jump suit, and that he was denied one hour of recreation, a cup of coffee in the morning with his breakfast and a winter jacket. He also claims his cell was not adequately heated. (*Id.,* Third Cause of Action, ¶ ¶ 1-45; "First Issue," ¶ ¶ 1-9, and "Second Issue," at 30).

For the following reasons: (1) plaintiffs request to proceed as a poor person is granted; (2) plaintiff's claims against defendant United States are dismissed in their entirety; (3) plaintiff's claims under Title II of the ADA and the Rehab. Act (Complaint, First Issue, at pp. 12-13) are dismissed in their entirety, as are the claims alleging an inadequate law library (Second Cause of Action, ¶ ¶ 1-23, and First Issue, at pp. 20-21); and (4) plaintiff's claims alleging procedural due process violations and cruel and unusual punishment relating to his disciplinary hearing and 18 days of disciplinary confinement (Third Cause of Action, ¶ ¶ 1-45, at pp. 22-32, First Issue, ¶ ¶ 1-9, at pp. 28-29, and Second Issue, at p. 30) are dismissed. *See* 28 U.S.C. §§ 1915(e) (2)(B)(ii). Service by the U.S. Marshals is ordered with respect to only the *Bivens* claim as against defendants Herron and Bailey to the extent it alleges an Eighth Amendment deliberate indifference claim (Complaint, First and Second Issue, at pp. 12-15). [FN3]

> FN3. *See Krebs v. Spitzer,* No. 9:08-CV-255, 2008 WL 2003852, at *2 (N.D.N.Y. May 7, 2008) (Report & Recommendation, U.S.M.J., D. Peebles, adopted by U.S.D.J. Norman A. Mordue, Chief Judge) ("Although the court has a duty to show liberality to pro se litigants, and should exercise extreme caution in ordering sua sponte dismissal of a pro se

complaint 'before the adverse party has been served and both parties ... have had an opportunity to respond,' there is a responsibility on the part of the court to determine that a claim is not frivolous before permitting a plaintiff to proceed.") (quoting *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (citations omitted) and citing *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam); *Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000); *Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam)). *See also Muniz v. Goord,* No. 9:04-CV-0479, 2007 WL 2027912, at *8 ((N.D.N.Y. July 11, 2007) (the Court has an obligation under 28 U.S.C. § § 1915(e)(2)(B) and 1915A to *sua sponte* dismiss *pro se* [claims] that are frivolous or fail to state a claim).

### DISCUSSION

**\*2** Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis.* Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage,* 318 F.3d 138, 139 (2d Cir.2003) (per curiam); *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Moreover, "a court is obliged to construe [*pro se* ] pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *and see Chance v. Armstrong,* 143 F.3d 698, 701 (2d

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1910293 (W.D.N.Y.)
(Cite as: 2010 WL 1910293 (W.D.N.Y.))

Cir.1998). Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon,* 360 F.3d 73 (2d Cir.2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Padus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)) (internal quotation marks and citation omitted).

"A document filed *pro se* is to be liberally construed, ..., and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson,* 551 U.S. at 94 (internal quotation marks and citations omitted). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## A. PLAINTIFF'S CLAIMS

### 1. First Cause of Action

As noted, plaintiffs First Cause of Action alleges that he suffers from a disability that requires him to wear medical boots and snickers, which he has been denied by defendants Bailey or Herron, although he claims he has been approved to obtain them, and that he has been denied an eye exam and prescription glasses. He claims that these are violations of Title II of the ADA, the Rehab. Act and the Eighth Amendment.

### (a.) *Title II of ADA*

Plaintiff's claims under Title II of the ADA [FN4] must be dismissed in their entirety inasmuch as Title II is not applicable to the federal govern-

ment, its agencies or employees. *Jackson v. Astrue,* 277 Fed.Appx. 76, 77 (2d Cir.2008) (Not selected for publication in Federal Reporter) (quoting *Cellular Phone Taskforce v. FCC,* 217 F.3d 72, 73 (2d Cir.2000)); *Sarvis v. United States,* 234 F.3d 1262 (2d Cir.2000) (Summary Order) (Table, text in Westlaw, 2000 WL 1568230); *Foreman v. Bureau of Prisons,* No. Civ. 04-5413(RBK), 2005 WL 3500807, at *10 (D.N.J. Dec.20, 2005) (citations omitted). *See also Van Brocklen v. United States,* No. 1:08-CV-312, 2009 WL 819382, at *3 (March 26, 2009) (citing cases); *Hurtado v. Reno,* 34 F.Supp.2d 1261 (D.Colo.1999) (deaf alien awaiting deportation at a federal detention facility had no right of action under Title II of ADA against the Attorney General and INS officials concerning the conditions of confinement because the federal detention facility did not fall with the ADA'S definition of "public entity.")

> FN4. 42 U.S.C. § 12132 provides in pertinent part:
>
> [N]o qualified individual with a disability shall, by reason of, such disability, be excluded from participation in ... the services, programs, or activities of a public entity.

*3 In *Sarvis,* the Second Circuit affirmed the district court's dismissal of a federal prisoner's claims against the United States Bureau of Prisons under Title II of the ADA on the grounds that Title II of the ADA prohibits discrimination against the disabled by "a public entity," 42 U.S.C. § 12132, and "public entity" is defined in relevant part as "any State or local government," or "any department, agency, special purpose district, or other instrumentality of a State of States or local governments." *Id.* "Based on this definition, [the Second Circuit] has held that 'Title II of the ADA is not applicable to the federal government.' " *Sarvis,* 2000 WL 1568230, at *2 (quoting *Cellular Phone Taskforce,* 217 F.3d at 73).

The panel in *Sarvis* also held with respect to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1910293 (W.D.N.Y.)
**(Cite as: 2010 WL 1910293 (W.D.N.Y.))**

the Rehab. Act claim, see 29 U.S.C. § 794(a), that
the federal prisoner's claims under the Rehab. Act
were properly dismissed "because Congress has not
waived the Federal Government's sovereign immu-
nity against awards of money damages for §
504(a) violations, except where a federal agency is
acting as a " 'Federal provider' of financial assist-
ance." *Sarvis,* 2000 WL 1568230, at *2 (citing
*Lane v. Pena,* 518 U.S. 187, 193, 116 S.Ct. 2092,
135 L.Ed.2d 486 (1996) (quoting Rehabilitation Act
§ 505(a)(2), 29 U.S.C. § 794a(a)(2) (emphasis ad-
ded)).

(b.) *Rehabilitation Act*
   Although plaintiff has not set forth the specific
section or language of the Rehab. Act he relies on,
the Rehab. Act provides that no qualified individual
with a disability shall be excluded from participa-
tion in, denied benefits of, or be subjected to dis-
crimination under any program or activity receiving
Federal financial assistance, or activity conducted
by any Executive agency. 29 U.S.C. § 794(a). "
'Congress has not waived the Federal Government's
sovereign immunity against awards of money dam-
ages for § 504(a) violations, except where a federal
agency is acting as a" 'Federal provider' of finan-
cial assistance.' " *Hollman v. Lindsay,* 2009 WL
3112076, at *9, n. 6 (E.D.N.Y. Sept.25, 2009)
(quoting Sarvis, 2000 WL 1568230, at *2 (citing
*Lane v. Pena,* 518 U.S. 187, 193, 116 S.Ct. 2092,
135 L.Ed.2d 486 (1996). The Rehab. Act's waiver
is limited to "the funding activities" of federal pro-
viders. *Lane,* 518 U.S. at 195. In this matter there
is nothing to suggest that any of the defendants or
those not named as defendants—*e.g.,* ICE—were act-
ing as a "Federal Provider" in denying plaintiff
medical boots, snickers or an eye exam and there-
fore plaintiff's claims under the Rehab. Act are
barred by sovereign immunity. *See Sarvis,* 2000
WL 1568230, at *2 (affirming dismissal of prison-
er's Rehabilitation Act claim against Bureau of
Prisons).[FN5]

> FN5. Federal employees or officials cannot
> be sued in their individual capacities under

the Rehab. Act. *See Daniel v. Levin,* 172
Fed.Appx. 147, 149 (9th Cir.2006); *Ara-
wole v. Hemingway,* No. Civ.A.
4:04CV506Y, 2005 WL 1630013, at *2
(N.D.Tex. July 7, 2005).

   Additionally, and to the extent plaintiff alleges
a "disability" under the statute and seeks relief oth-
er than monetary damages, a review of the com-
plaint herein shows that plaintiff is not complaining
about a denial of access to benefits or programs as a
result of a disability. Rather he is complaining that
he has been denied adequate medical care at the
Federal Detention Facility, not that he has been
denied access to programs or benefits on account of
a disability. The Rehab. Act "afford[s] disabled
persons legal rights regarding access to programs
and activities enjoyed by all, not a general federal
cause of action for challenging the medical treat-
ment of their underlying disabilities." *Marlin v.
Dube-Gilley,* No. 2:07CV00052, BSM/HDY, 2008
WL 2952072, at * 4 (E.D.Ark., June 24, 2008)
(Report and Recommendation, U.S.M.J. Young,
H.D.) (citing *Bryant v. Madigan,* 84 F.3d 246, 249
(7th Cir.1996) (ADA); *Grzan v. Charter Hosp. of
N.W. Ind.,* 104 F.3d 116, 122-23 (7th Cir.1997)
(Rehab.Act); *United States v. University Hosp.,* 729
F.2d 144, 156-60 (2d Cir.1984) (same)), *adopted in
part on the grounds relied on herein and rejected in
part on other grounds* NO.
207CV00052BSM/HDY, 2008 WL 2952113 (E.D.
Ark. Jul 29, 2008) (Order, U.S.D.J., Hodge, G.). As
such, and assuming plaintiff has alleged a
"disability" under the statute-which he has not-, his
claim under the Rehab. Act fails to state a claim
upon which relief can be granted.

   **\*4** Accordingly, plaintiff's claims under both
the ADA and Rehab. Act are dismissed in their en-
tirety.

**2. Second Cause of Action**
   Plaintiff alleges that the law library at the Buf-
falo Federal Detention Facility is insufficient and
fails to contain sufficient legal materials to enable
him to "research case laws related to the fact to his

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1910293 (W.D.N.Y.)
**(Cite as: 2010 WL 1910293 (W.D.N.Y.))**

[state] conviction ... for which plaintiff prior filed papers in this Court irrefutably demonstrates [sic] Plaintiff's [a]ctual [i]nnocence[ ]." [FN6] (Docket No. 1, Complaint, Second Cause of Action, ¶ 21). Plaintiff claims that the library lacks such resources as the "National Reporter," Digests, Shepard's Citations and "New York State's Lawyer's Diary."

> FN6. On August 21, 2009, petitioner filed a petition for a writ of habeas corpus in this court, pursuant to 28 U.S.C. § 2241, which, in part, challenged his conviction in New York State Supreme Court, Westchester County-the conviction he claims in this action he is trying to establish his actual innocence for. *Thompson v. Holder, Jr.,* 09-CV-0736M. This petition, to the extent it sought to challenge petitioner's underlying state court conviction was transferred to the Second Circuit Court of Appeals for a gate-keeping determination pursuant to 28 U.S.C. § 2244(b) inasmuch as petitioner had previously filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Southern District of New York challenging the same conviction, which had been denied on the merits. (*Thompson v. Bennet,* 00 Civ. 5722). *See Thompson v. Holder,* Jr., 09-CV-736M, Docket No. 4, at 3, n. 2 (W.D.N.Y. Sept. 1, 2009). Upon transfer of the petition, the Second Circuit denied petitioner's application seeking to file a second or successive petition. *Id.,* Docket No. 8, Mandate.
>
> The petition also sought to challenge petitioner's final order of removal and a stay of removal, which this Court dismissed without prejudice because it was without jurisdiction to adjudicate petitioner's challenge to the final order of removal and his request for a stay of removal. *Thompson v. Holder,* Jr., 09-CV-736M, Docket No. 4, at 6-9.

While it is true that under the Constitution a correctional facility must provide an inmate with meaningful access to the courts, *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the mere limitation of access to legal materials, without more, does not state a constitutional claim, as " 'the Constitution requires no more than reasonable access to the courts.' " *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995) (quoting *Pickett v. Schaefer,* 503 F.Supp. 27, 28 (S.D.N.Y.1980)). Moreover, in order to state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). *Accord Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987).

Thus, plaintiff must show that he has suffered an actual injury traceable to the challenged conduct of prison officials. A plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis,* 518 U.S. at 351-52. Taking plaintiff's claim as true, he nevertheless "offers no facts to explain how the lack of some legal materials prejudiced [his] ability to seek redress from the judicial system." *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995). *See also Bourdon v. Loughren,* 386 F.3d 88, 93 (2d Cir.2004) ("To establish a [*Bounds* ] violation, [petitioner] must demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.") (internal quotation marks and alterations omitted)). Plaintiff has not alleged in any way that he was not "furnish[ed] ... with the capability of bringing his challenges before the courts." *See id.* at 98. He simply claims that the library was inadequate.[FN7]

> FN7. [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* --- U.S. ----, 129 S.Ct. at

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1910293 (W.D.N.Y.)
**(Cite as: 2010 WL 1910293 (W.D.N.Y.))**

1949, 173 L.Ed.2d 868 (internal quotation marks omitted). *See* n. 3, *supra*. "Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (per curiam).

Accordingly, plaintiff's claim that he has been denied access to the courts is hereby dismissed.

**3. Third Cause of Action**

Plaintiff's Third Cause of Action alleges that he was denied his rights to procedural due process and subjected to cruel and unusual punishment when, following a disciplinary hearing for an incident report he was issued, he was found guilty and sentenced to what amounted to 18 days in the Special Housing Unit. He claims that during those 18 days he was issued one blanket and one jump suit, and that he was denied one hour of recreation, a cup of coffee in the morning with his breakfast and a winter jacket. He also claims his cell was not adequately heated. (Complaint, Third Cause of Action, ¶ ¶ 1-45; "First Issue," ¶ ¶ 1-9, and "Second Issue," at 30).

**\*5** Initially, to the extent plaintiff may be claiming that defendant Ferrando, the officer who directed him to end his phone call with the Second Circuit, issued or caused to be issued a false behavior report (*id.,* Third Cause of Action, ¶ ¶ 1-9), this claim must be dismissed, pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A(b), because an inmate has no constitutional immunity from being falsely written up. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988); *Husbands v. McClellan,* 957 F.Supp. 403 (W.D.N.Y.1997). Accordingly, Ferrando will be dismissed as a defendant herein.

In assessing whether a prisoner had a protected

liberty interest in avoiding administrative segregation, the Court must look to *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), in which the Supreme Court held that state-created liberty interests of prisoners were limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84. *See Iqbal v. Hasty,* 490 F.3d 143, 160 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* 129 S.Ct. at 2430 (citing *Tellier v. Fields,* 280 F.3d 2d Cir.2000) (assessing whether a federal inmate was denied due process when he was placed in administrative detention for more than 500 days without notice of the reasons of the detention or receiving any hearings). The rule in this Circuit, since *Sandin,* is that a prisoner has a protected liberty interest " 'only if the deprivation ... is atypical and significant and the state has created the liberty interest by statute or regulation.' " *Tellier,* 280 F.3d at 80 (quoting *Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997)) (omission in original); *see also Palmer v. Richards,* 364 F.3d 60, 64 & n. 2 (2d Cir.2004).

In assessing whether the confinement was an "atypical and significant hardship," the courts in this Circuit have found the relevant factors to include both the conditions of segregation and its duration. *See Palmer,* 364 F.3d at 64. "Segregation of longer than 305 days in standard SHU conditions is sufficiently atypical to require procedural due process protection under *Sandin.* When confinement is of an intermediate duration-between 101 and 305 days-" 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Iqbal,* 490 F.3d at 161 (citing *Palmer,* 364 F.3d at 65 (quoting and citing *Colon,* 215 F.3d 227, 231-232 (2d Cir.2000)).

With regards to confinement of 101 days or less, however, "[c]ourts in this Circuit [have] routinely h[e]ld that an inmate's's confinement in special housing ... absent additional egregious circumstances, does not implicate a liberty interest."

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1910293 (W.D.N.Y.)
(Cite as: 2010 WL 1910293 (W.D.N.Y.))

*Durran v. Selsky,* 251 F.Supp.2d 1208, 1214 (S.D.N.Y.2003) (citations omitted). *See also Welch v. Bartlett,* 196 F.3d 389, 393 (2d Cir.1999) ("actions under the Due Process Clause are reserved for prisoners enduring a hardship that is substantially more grave than hardships they would be likely to endure simply as a consequence of the ordinary administration of the prison."); *Alvarado v. Kerrigan,* 152 F.Supp.2d 350, 355 (S.D.N.Y.2001) ("the cases show a consensus in this Circuit that an inmate's confinement in the SHU for 101 days or less-without further deprivation-does not constitute an atypical or significant hardship").

*6 As noted, plaintiff alleges that he was sentenced to 14 days of confinement in the Special Housing Unit but that, based on the dates set forth in the disposition report, he spent 18 days in said confinement (Complaint, Third Cause of Action, ¶ ¶ 33-34), and that he was not issued a winter jacket, and was issued only one blanket and one jump suit. He also claims he did not get a cup of coffee with his breakfast during his time in the Special Housing Unit. Based on these allegations, plaintiff fails to allege a claim that he had a liberty interest inasmuch as said allegations simply do not rise to the level of an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." [FN8] *Sandin,* 515 U.S. at 484; *see Baker v. Finn,* No. 00 Civ. 3886, 2001 WL 1338919, at*4 (S.D.N.Y. Oct. 31, 2001) (dismissing case where plaintiff failed to allege that his 136 day confinement included "conditions atypical, or onerous, as compared to those experienced by other prisoners"). Accordingly, plaintiff's claim alleging a due process violation and cruel and unusual punishment [FN9] are dismissed.

> FN8. "Although determining whether a particular confinement imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, will involve factual determinations, 'the ultimate issue of atypicality is one of law.' " *Durran,* 251 F.Supp.2d at 1214

(quoting *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999) (other internal quotations and citations omitted).

> FN9. "Restraints on an inmate do not violate the eight amendment unless they are 'totally without penological justification,' 'grossly disproportionate,' or 'involve the unnecessary and wanton infliction of pain.' " *Smith v. Coughlin,* 748 F.2d 783, 787 (2d Cir.1984) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1980)). *See also Horne v. Coughlin,* 155 F.3d 26, 31 (2d Cir.1998) (six-month solitary detention imposed upon inmate was not totally without penological justification, grossly disproportionate, or unnecessary and wanton infliction of pain).

### CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee, his request to proceed *in forma pauperis* is hereby granted. For the reasons discussed above, the following claims are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A: (1) plaintiff's claims against defendant United States; (2) plaintiff's claims under Title II of the ADA and the Rehab. Act (Complaint, First Issue, at pp. 12-13); (3) plaintiff's claims alleging an inadequate law library (Second Cause of Action, ¶ ¶ 1-23, and First Issue, at pp. 20-21); and (4) plaintiffs claims alleging procedural due process violations and cruel and unusual punishment relating to his disciplinary hearing and 18 days of disciplinary confinement (Third Cause of Action, ¶ ¶ 1-45, at pp. 22-32, First Issue, ¶ ¶ 1-9, at pp. 28-29, and Second Issue, at p. 30). Service by the U.S. Marshals is ordered with respect to the *Bivens* claim only against defendants Herron and Bailey to the extent said claim alleges an Eighth Amendment deliberate indifference claim (Complaint, First and Second Issue, at pp. 12-15).

### ORDER

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1910293 (W.D.N.Y.)
**(Cite as: 2010 WL 1910293 (W.D.N.Y.))**

IT HEREBY IS ORDERED, that plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that the following claims are dismissed with prejudice: (1) plaintiff's claims against defendant United States; (2) plaintiff's claims under Title II of the ADA and the Rehab. Act (Complaint, First Issue, at pp. 12-13); (3) plaintiff's claims alleging an inadequate law library (Second Cause of Action, ¶ ¶ 1-23, and First Issue, at pp. 20-21); and (4) plaintiff's claims alleging procedural due process violations and cruel and unusual punishment relating to his disciplinary hearing and 18 days of disciplinary confinement (Third Cause of Action, ¶¶ 1-45, at pp. 22-32, First Issue, ¶ ¶ 1-9, at pp. 28-29 and Second Issue, at p. 30);

*7 FURTHER, that the Clerk of the Court is directed to terminate defendants United States, Tom Valede, B. Every, T. Barnasie and J. Ferrando as parties to this action;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order upon defendants Martin Herron and Brenda Bailey without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

FURTHER, plaintiff's motion for appointment of counsel is denied without prejudice;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to respond to the complaint.

IT IS SO ORDERED.

W.D.N.Y.,2010.
Thompson v. U.S.
Slip Copy, 2010 WL 1910293 (W.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 294534 (N.D.Tex.)
**(Cite as: 2008 WL 294534 (N.D.Tex.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas,
Fort Worth Division.
Thomas McBARRON,
v.
FEDERAL BUREAU OF PRISONS, et al.

Civil Action No. 4:06-CV-318-Y.
Feb. 4, 2008.

Thomas McBarron, Fort Worth, TX, pro se.

*OPINION and ORDER OF DISMISSAL UNDER 28
U.S.C. § 1915A(b)(1), and UNDER 28 U.S.C. §§
1915(e)(2)(B)(i) and (ii)*
TERRY R. MEANS, District Judge.

*1 This case is before the Court for review of
pro-se inmate and plaintiff Thomas McBarron's
second amended complaint under the screening pro-
visions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B).
McBarron, an inmate at the Bureau of Prisons's
FCI-Fort Worth facility in Fort worth, Texas, has
filed a seventy-two page second amended com-
plaint [FN1] seeking relief against the Bureau of
Prisons ("BOP") and numerous individual employ-
ees of the BOP, each of whom is named in an indi-
vidual and official capacity. (Second Amended
Complaint (SAC), Style; § E (Parties).) McBarron
alleges a chronology related to the medical care he
received while at FCI-Fort Worth. (SAC at 15-60.)
McBarron alleges causes of action for violation of
his right to due process, violation of his right to be
free from cruel and unusual punishment, violation
of the Rehabilitation Act of 1973, unconstitutional
policies and customs, denial of his right of access to
courts, conspiracy to negligently inflict emotional
distress, and a claim under the Federal Tort Claims
Act (FTCA). (SAC at 60-69.) He seeks monetary
damages, declaratory relief, and injunctive relief.
(SAC at 69-71.)

FN1. As permitted by order of this Court.

A complaint filed in forma pauperis that lacks
an arguable basis in law should be dismissed under
28 U.S.C. § 1915.[FN2] Under 28 U.S.C. §
1915(e)(2)(B), a district court retains broad discre-
tion in determining at any time whether an in-
forma-pauperis claim should be dismissed.[FN3] Fur-
thermore, as a part of the PLRA, Congress enacted
28 U.S.C. § 1915A, which requires the Court to re-
view a complaint from a prisoner seeking relief
from a governmental entity or governmental officer
or employee as soon as possible after docketing.
[FN4] Consistent with § 1915A is prior case law re-
cognizing that a district court is not required to
await a responsive pleading to conduct its § 1915
inquiry.[FN5] Rather, § 1915 gives judges the power
to "dismiss a claim based on an indisputably merit-
less legal theory." [FN6] After review and considera-
tion of McBarron's second amended complaint, the
Court concludes that his claims for relief must be
dismissed under the authority of these provisions.

FN2. *Neitzke v. Williams,* 490 U.S.
319,328 (1989). Section 28 U.S.C. §
1915(e) *requires* dismissal not only when
an allegation of poverty is untrue or the ac-
tion is frivolous or malicious, but also
when "the action ... fails to state a claim on
which relief may be granted; or seeks mon-
etary relief against a defendant who is im-
mune from such relief." 28 U.S.C.A. §
1915(e)(2)(A) and (B) (West 2006).

FN3. *See* 28 U.S.C.A. § 1915(e)(2) (West
2006); *Adepegba v. Hammons,* 103 F.3d
383, 388 (5th Cir.1996); *see also Wesson
v. Oglesby,* 910 F.2d 278, 281 (5th
Cir.1990) (discussing authority to dismiss
at any time under prior § 1915(d)).

FN4. *See* 28 U.S.C.A. § 1915A(a) (West
2006).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Attachment 13

Not Reported in F.Supp.2d, 2008 WL 294534 (N.D.Tex.)
(Cite as: 2008 WL 294534 (N.D.Tex.))

FN5. *See Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir.1995).

FN6. *Id., citing Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### Official Capacity

McBarron has named each individual defendant in both an individual and an official capacity. Although McBarron has not recited as authority for the individual-capacity claims *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics ("Bivens"),*[FN7] the Court will construe his claims of violations of his constitutional rights under this common-law authority. [FN8] Official-capacity claims for money damages based upon allegations of constitutional violations, however, are barred because they are considered suits against the United States which has not waived its sovereign immunity for such claims.[FN9] Although McBarron has cited the FTCA, government employees enjoy absolute immunity against common-law tort claims, and the only proper federal defendant is the United States.[FN10] Thus, Plaintiff's claims against the individual defendants in an official capacity should be dismissed under 28 U.S.C. § 1915A and § 1915(e) (2)(B).

FN7. 403 U.S. 388, 297 (1971).

FN8. *Bivens,* of course, is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors. *See Evans v. Ball,* 168 F.3d 856, 863 n. 10(5th Cir.1999) ("A *Bivens* action is analogous to an action under § 1983-the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials."), *abrogated on other grounds, Castellano v. Fragozo,* 352 F.3d 939, 948-49 & n. 36 (5th Cir.2003) (en banc), *cert. den'd,* 543 U.S. 808, 125 S.Ct. 31, 160 L.Ed.2d 10 (2004).

FN9. *See Kentucky v. Graham,* 473 U.S. 159, 165-67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

FN10. *See Finley v. United States,* 490 U.S. 545, 552-53, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989); *see also Marsden v. Federal B.O.P.,* 856 F.Supp. 832, 835 (S.D.N.Y.1994), *citing* 28 U.S.C. §§ 1346(b), 2679(a), 2679(b) (1) (other citations omitted).

### FTCA

**\*2** McBaron also seeks relief under the FTCA, and he provided exhibits as attachments to the original complaint that indicate that he attempted to exhaust administrative remedies on some of his claims within the BOP. The FTCA does waive the United States's sovereign immunity from tort suits.[FN11] Because the FTCA provides such a waiver, the limitations and conditions upon which the government consents to be sued must be construed strictly in favor of the United States.[FN12] In order to sue successfully under the FTCA, "a plaintiff must name the United States as the sole defendant."[FN13] In this case, however, McBarron has named as defendants the Bureau of Prisons and numerous individuals. Although McBarron identified the United States of America in the body of his original and first amended complaint, he has now named the Bureau of Prisons on the FTCA allegation in the most recent pleading. As the Bureau of Prisons is not a proper defendant in a suit under the FTCA, McBarron's FTCA claim against the BOP must be dismissed under authority of 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i) and (ii).[FN14]

FN11. *McGuire v. Turnbo,* 137 F.3d 321, 324 (5th Cir.1998), *citing* 28 U.S.C. § 2674.

FN12. *Atorie Air, Inc., v. Federal Aviation Administration,* 942 F.2d 954, 957 (5th Cir.1991) *citing Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 294534 (N.D.Tex.)
**(Cite as: 2008 WL 294534 (N.D.Tex.))**

FN13. *McGuire,* 137 F.3d at 324, *citing Atorie Air, Inc.,* 942 F.2d at 957.

FN14. As noted above, the United States is the only proper party in an action under the FTCA. Although this circuit recognized in *Rodriguez v. Sarabyn,* 129 F.3d 760, 764 (5th Cir.1997) that when an FTCA plaintiff sues an individual government employee and the employee is shown to have been acting in the course and scope of his employment the United States should be automatically substituted, this Court determines that in the instant case, McBarron has named the individual defendants for the purpose of asserting claims of a constitutional violation.

*Limitations*

A district court may dismiss claims *sua sponte* under § 1915 where it is clear from a review of the complaint that the alleged claims are barred by the applicable statute of limitations.[FN15] A *Bivens* action is controlled by the applicable state statute of limitations.[FN16] In Texas the applicable limitations period is two years.[FN17]

FN15. *See Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir.1994), *citing Gartrell V. Gaylor,* 981 F.2d 254, 256 (5th Cir.1993); *see also Myers v. Vogal,* 960 F.2d 750, 751 (8th Cir.1992) ("Although the statute of limitations is an affirmative defense, a district court may properly dismiss a complaint under 28 U.S.C. § 1915(d) when it is apparent that the statute of limitations has run.") (citations omitted).

FN16. *See Brown v. Nationsbank Corp., et al.,* 188 F.3d 579,590 (5th Cir.1999), *cert. den'd,* 530 U.S. 1274 (2000), *citing Alford v. United States,* 693 F.2d 498, 499 (5th Cir.1982).

FN17. *See Moore,* 30 F.3d at 620 (noting that district courts in Texas must use

Texas's general two-year, personal injury limitations period); *see* TEX. CIV. PRAC. & REM.CODE 16. 003(a) (Vernon Supp.2007) (Texas's two-year personal injury limitations statute); *see also Brown,* 188 F.3d at 590, *citing Pena v. United States,* 157 F.3d 984, 987 (5th Cir.1998).

Federal courts look to federal law to determine when a civil-rights action accrues, and under federal law a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis for his action. [FN18] McBarron's second amended complaint includes allegations beginning in 1989 and continuing through 2006, with the bulk of the factual events occurring between 2002 and 2005. McBarron knew of his injuries at the time they occurred, and must, because of his ongoing health problems, have been aware at or near the time of the events of any inadequacy of his medical care. Similarly, he knew of the purported problems with his assignment to administrative detention at the time it occurred, and of the other complained-of events at the time they occurred. Since McBarron did not file this suit until May 5, 2006, his *Bivens* claims for any events occurring prior to May 5, 2004, must be dismissed under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2) (B)(i) and (ii).

FN18. *See Gartrell,* 981 F.2d at 256; *see also Daniel v. United States,* Nos. CA3:01CV0328-H, CR3:92CR029-H, 2002 WL 66160, at *2(N.D.Tex.Jan.10, 2002).

*Eighth Amendment-Duplicative Claims*

The bulk of McBarron's claims are for alleged deliberate indifference to his serious medical needs in violation of the Eighth Amendment. McBarron previously filed a federal lawsuit in this the Northern District of Texas in *McBarron v. Jeter,* No. 4:05-CV-497-A. In that action, filed in 2005, McBarron recited many of the same allegations regarding the inadequacy of his medical care that he makes in this action, up to and including allegations through July 29, 2005. [FN19] The Court considered

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 294534 (N.D.Tex.)
**(Cite as: 2008 WL 294534 (N.D.Tex.))**

both McBarron's initial filing and a December 23, 2005, 33-page (plus attachments) filing entitled "Writ of Habeas Corpus under 28 U.S.C. § 2241(c) (3)," as "complaints that he has serious medical needs that are being ignored, or inadequately addressed, by the medical personnel in the federal prison where he is incarcerated." A review of the second amended complaint in the instant action as compared to the December 23, 2005, pleading in case number 4:05-CV-497-A indicates many of the same allegations. As many as 85 of the paragraphs in the live pleading in this action are the same or virtually the same as paragraphs in the prior action for occurrences up to July 29, 2005. After reciting the standards for review of a claim for deliberate indifference to serious medical needs, Judge McBryde determined that:

> FN19. The Court takes judicial notice of the records of this district in *McBarron v. Jeter,* 4:05-CV-497-A.

**\*3** While McBarron's complaints regarding his medical care are many, they primarily relate to the care he has received for seizure disorder, diverticulitis, and Crohn's disease. He also alleges that the BOP has failed adequately to treat his neurological and gastrointestinal disorders. He further asserts the BOP has withheld medications to address neurological and gastrointestinal disorders. Jeter's response, including the appendix containing the affidavit from Hernan Reyes, M.D., the Clinical Director of the Federal Medical Center (FMC) Fort Worth, Texas, however, persuades the court that there is no evidence of deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Among other things, it is evident that McBarron has been receiving medications for all of his disorders, that he has been examined by a gastroenterologist and neurologist on multiple occasions, and that he has been treated at three community hospitals over a three-year period. (Feb. 6, 2006, Order Denying Application for Writ of Habeas Corpus in

No.4:05-CV-497-A) (record citations omitted).

In reviewing a similar multiple-suit-filing scenario by an inmate plaintiff, the United States Court of Appeals for the Fifth Circuit found no abuse of discretion in a district court's determination that an in-forma-pauperis action identical to one previously dismissed, may be dismissed as frivolous or malicious:

> [W]e have dismissed an appeal as frivolous because it involved a duplicative action arising from the same series of events and alleging many of the same facts as an earlier suit, concluding that "repetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915(d) as malicious." *See Robinson v. Woodfork,* No. 86-3735 (5th Cir. May 22, 1987) (unpublished order) (citing *McCullough v. Morgan,* No. 85-2022 (5th Cir. July 3, 1985) (unpublished order) and *Hill v. Estelle,* 423 F.Supp. 690 (S.D.Tex.1976)). Other courts have also held that an IFP complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under the authority of section 1915(d).[FN20]

> FN20. *Bailey v. Johnson,* 846 F.2d 1019, 1021 (5th Cir.1988) (other citations omitted); *see also Brown v. Thomas,* No. 3:02-CV-0673-M, 2002 WL 31757616, at \*3-4 (N.D.Tex. Dec. 3, 2002) (adopting magistrate judge's analysis of *Bailey,* and recommendation that case should be dismissed as duplicative even though earlier case had been dismissed without reaching merits).

Because McBarron's claims in the instant case involving the alleged inadequacy of medical care he received at FMC-Fort Worth up through and including July 29, 2005, are duplicative of claims already considered and denied in this district, such claims asserted herein must be dismissed as malicious under 28 U.S.C. §§ 1915A(b) (1) and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 294534 (N.D.Tex.)
(Cite as: 2008 WL 294534 (N.D.Tex.))

1915(e)(2)(B)(i).

With regard to the remainder of McBarron's al-
legations regarding medical care in August 2005,
treatment or delay in treatment for an inguinal her-
nia in 2005 and 20066, and inadequate treatment
for post-traumatic stress disorder, the Court determ-
ines that McBaron has not stated claims of deliber-
ate indifference. In order to maintain an action for
deprivation of the constitutional right to be free of
cruel and unusual punishment, a plaintiff must al-
lege facts that indicate prison officials were deliber-
ately indifferent to prisoners' safety.[FN21] Such a
finding of deliberate indifference, though, "must
rest on facts clearly evincing 'wanton' actions on
the part of the defendants." [FN22] This subjective
deliberateindifference standard is now equated with
the standard for criminal recklessness:

> FN21. See Farmer v. Brennan, 511 U.S.
> 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811
> (1994) (Eighth Amendment requires sub-
> jective deliberate indifference, the official
> must know of and disregard an excessive
> risk to inmate health or safety); see also
> Whitley v. Albers, 475 U.S. 312, 332, 106
> S.Ct. 1078, 89 L.Ed.2d 251 (1986) (Eighth
> Amendment requires allegation of unne-
> cessary and wanton infliction of pain).

> FN22. Johnson v. Treen, 759 F.2d 1236,
> 1238 (5th Cir.1985); see also Wilson v.
> Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321,
> 115 L.Ed.2d 271 (1991).

*4 [A] prison official cannot be found liable un-
der the Eighth Amendment for denying an inmate
humane conditions of confinement unless the of-
ficial knows of and disregards an excessive risk
to inmate health or safety; the official must both
be aware of facts from which the inference can be
drawn that a substantial risk of serious harm ex-
ists, and he must also draw the inference.[FN23]

> FN23. Farmer, 511 U.S. at 837; see also
> Hare v. City of Corinth, 74 F.3d 633, 648

(5th Cir.1996), appeal after subsequent re-
mand, 135 F.3d 320, 327 (5th Cir.1998).

Mere negligence with regard to plaintiff's injur-
ies will not give rise to a constitutional violation.
[FN24] The Fifth Circuit discussed the high standard
involved in showing deliberate indifference as fol-
lows:

> FN24. Daniels v. Williams, 474 U.S. 327,
> 332 (1986) (recognizing that injuries in-
> flicted by government negligence are not
> addressed by the United States Constitu-
> tion).

Deliberate indifference is an extremely high
standard to meet. It is indisputable that an incor-
rect diagnosis by medical personnel does not suf-
fice to state a claim for deliberate indifference.
Johnson v. Treen, 759 F.2d 1236, 1238 (5th
Cir.1985). Rather, the plaintiff must show that
the officials "refused to treat him, ignored his
complaints, intentionally treated him incorrectly,
or engaged in any similar conduct that would
clearly evince a wanton disregard for any serious
medical needs." Id. Furthermore the decision
whether to provide additional treatment "is a
classic example of a matter for medical judg-
ment." Estelle, 429 U.S. at 107.[FN25]

> FN25. Domino v. Texas Department of
> Criminal Justice, 239 F.3d 752, 756 (5th
> Cir.2001).

McBarron has not alleged facts that overcome
this standard, and his remaining claims for deliber-
ate indifference to his medical needs must be dis-
missed under 28 U.S.C. § 1915A(B)(1) and 1915(e)
(2)(B).

*Rehabilitation Act of 1973*
McBarron asserts a cause of action under the
Rehabilitation Act of 1973. The Court hereby in-
corporates its own analysis from a case involving
another federal prisoner who asserted such a claim:

Section 504(a) of the Rehabilitation Act, 29

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 294534 (N.D.Tex.)
**(Cite as: 2008 WL 294534 (N.D.Tex.))**

U.S.C. § 794(a), provides that no qualified individual with a disability shall be excluded from participation in, denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance, or activity conducted by any executive agency.[FN26] Although the remedy provision of the Rehabilitation Act provides for monetary damages for "any act or failure to act by any recipient of federal assistance or Federal provider," [FN27] in interpreting this language, the Supreme Court determined that Congress only intended to waive sovereign immunity against monetary damages for the "narrow category of § 504(a) violations committed by federal funding agencies acting as such that is, by Federal provider[s]." [FN28] In other words, because the remedy provision did not make reference to any "programs or activities," the Supreme Court declined to read the phrase "Federal provider" to include a waiver of damages for anything more than funding activities. [FN29] As a result, any claims for monetary damages under the Rehabilitation Act for alleged discrimination under any program or activity against the Bureau of Prisons or its director are shielded by sovereign immunity. Furthermore, the Fifth Circuit has held that an individual may not be sued in his or her individual capacity under the Rehabilitation Act,[FN30] rendering such claims under the Rehabilitation Act against defendant Hemingway without merit. [FN31]

FN26. 29 U.S.C.A. § 794(a) (West Supp.2007).

FN27. 29 U.S.C.A. § 794a(a)(2) (West 1999).

FN28. *Lane v. Pena,* 518 U.S. 187, 192-93, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).

FN29. *Id.* at 193.

FN30. *Lollar v. Baker,* 196 F.3d 603, 609 (5th Cir.1999). Other courts have also

found that the Rehabilitation Act does not permit actions against persons in an individual capacity. *See Hiler v. Brown,* 177 F.3d 542, 545-46 (6 Cir.1999); *see also Montez,* 32 F.Supp.2d. at 1241.

FN31. *Arawole v. Hemingway,* No.Civ.A. 4:04-CV-506-Y, 2005 WL 1630013, at *2 (N.D.Tex. July 7, 2005).

**\*5** For the reasons enunciated, all of McBarron's claims under the Rehabilitation Act must be dismissed under authority of 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i) and (ii).

*Policy or Custom*

McBarron alleges that different defendants created policies to deny such things as "basic levels of decency, adequate treatment for pain relief, provision of medical care, [and] delay in providing prescriptions." (SAC at 65-66.) But allegations of a policy or custom and its relationship to a constitutional violation cannot be conclusional but must contain specific facts.[FN32] As McBarron has set forth only conclusions of the existence of policies, he has not stated a sufficient claim, and his claims for relief based on unconstitutional policies must be dismissed under 28 U.S.C. § 1915A and 1915(e)(2)(B).

FN32. *See, e.g., Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162, 167 (5th Cir.1997), *citing Fraire v. Arlington,* 957 F.2d 1268, 1278 (5th Cir.), *cert. denied* 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); *Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir.2002); *Thompkins v. Belt,* 828 F.2d 298, 305 (5th Cir.1987).

*Access to Court*

Although McBarron has alleged a violation of his right to access the court, he has not stated any facts to relate his allegations to any difficulty in filing a claim. The Supreme Court, in *Bounds v. Smith,*[FN33] recognized a fundamental constitutional right of access to the courts, but has since clari-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 294534 (N.D.Tex.)
(Cite as: 2008 WL 294534 (N.D.Tex.))

Page 7

fied the scope of a prisoner's right of access to the courts and found that a prisoner must allege an actual injury to support a claim for a violation of such right:

> FN33. *See Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (recognizing prisoners' constitutional right of access to courts); *see generally Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"); *Johnson v. Atkins,* 999 F.2d 99, 100 (5th Cir.1993) ("Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses") (quoting *Chrissy F. v. Mississippi Dept. Of Public Welfare,* 925 F.2d 844, 851 (5th Cir.1991)).

Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense ... [t]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. [FN34]

> FN34. *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606(1996).

Thus, in order to state a claim on the alleged facts, McBarron must have set forth that the complained-of retaliation against him for seeking redress of grievances hindered his efforts to pursue a legal claim.[FN35] McBarron has not done so, and any claim of violation of his right of access to courts must be dismissed under 28 U.S.C. § 1915A (1) and 1915(e)(2)(b)(i) and (ii).

> FN35. *See Chriceol v. Phillips,* 169 F.3d 313, 317 (5th Cir.1999) (inmate alleging denial of access to courts must demonstrate actual injury), *citing Ruiz v. United States,* 160 F.3d 273,275 (5th Cir.1998) (holding that without proof of actual injury a prisoner cannot prevail on an access-to-the-courts claim); *see also McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir.1998) (noting that such a plaintiff must show prejudice to his position as a litigant) (citations omitted).

*Negligent Infliction of Emotional Distress*

McBarron has asserted a cause of action for conspiracy to negligently inflict emotional distress. Texas does not impose liability for negligent infliction of emotional distress.[FN36] As such, his claim that defendants were involved in a conspiracy to engage in conduct that is not tortious is without merit, and must be dismissed under 28 U.S.C. § 1915A(1) and 28 U.S.C. § 1915(e)(2)(B) (i) and (ii).

> FN36. *Texas Farm Bureau Mut. Ins. Companies v. Sears,* 84 S.W.3d 604, 612 (Tex.2002), *citing Boyles v. Kerr,* 855 S.W.2d 593, 597 (Tex.1993) (holding there is no general legal duty to avoid negligently inflicting mental anguish under Texas law).

For all of the above reasons, all of McBarron's claims must be dismissed with prejudice under authority of 28 U.S.C. § 1915A(1) and 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

N.D.Tex.,2008.
McBarron v. Federal Bureau of Prisons
Not Reported in F.Supp.2d, 2008 WL 294534 (N.D.Tex.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
**(Cite as: 2002 WL 32098709 (N.D.Fla.))**

**H**

United States District Court,
N.D. Florida.
Don H. PACE, Plaintiff,
v.
Leonard PLATT, Joan E. Klar, Timothy J. Lee,
Mark D. Cox, Jane and John Does 1-10, Internal
Revenue Service, and the United States of America,
Defendants.

No. 3:01-CV-471/LAC.
Sept. 10, 2002.

Citizen brought *Bivens* action against United States and government employees alleging violation of his constitutional rights. On defendants' motions to dismiss, the District Court, Collier, J., held that: (1) district court did not have subject matter jurisdiction over suit against Internal Revenue Service (IRS); (2) district court did not have subject matter jurisdiction over citizen's claims that arose out of IRS criminal tax investigation and subsequent prosecution; (3) citizen failed to address his administrative remedies; (4) law enforcement officer was entitled to absolute immunity from civil liability for grand jury testimony, even if false; and (5) citizen failed to demonstrate that district court had personal jurisdiction over non-resident investigator.

Motions granted.

West Headnotes

**[1] United States 393 ⚖125(34)**

393 United States
   393IX Actions
      393k125 Liability and Consent of United States to Be Sued
         393k125(28) Particular Departments, Officers, or Agencies, Suits Against
           393k125(34) k. Treasury Department and Internal Revenue Bureau. Most Cited Cases

District court does not have subject matter jurisdiction over suits against the Internal Revenue Service (IRS); Congress has not authorized suit against the IRS, therefore, it lacks the capacity to be sued.

**[2] United States 393 ⚖78(5.1)**

393 United States
   393V Liabilities
      393k78 Torts
         393k78(5) Nature of Act or Claim
           393k78(5.1) k. In General. Most Cited Cases

District court did not have subject matter jurisdiction over citizen's claims that arose out of Internal Revenue Service (IRS) criminal tax investigation and subsequent prosecution, since that conduct was specifically exempted from Federal Tort Claims Act (FTCA). 28 U.S.C.A. § 2680(c).

**[3] United States 393 ⚖127(2)**

393 United States
   393IX Actions
      393k127 Rights of Action Against United States or United States Officers
         393k127(2) k. Prior Administrative Claim. Most Cited Cases

Citizen's allegation, that he "made demand upon the [IRS] and has received no response," did not prove that he exhausted his administrative remedies before filing suit under Federal Tort Claims Act (FTCA), since citizen did not allege that he instituted suit either six months after filing administrative claim or after formal denial of relief on his administrative claim. 28 U.S.C.A. §§ 1346(b), 2675(a).

**[4] Torts 379 ⚖122**

379 Torts
   379I In General
      379k120 Defenses and Mitigating Circumstances

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Attachment 14

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
**(Cite as: 2002 WL 32098709 (N.D.Fla.))**

379k122 k. Litigation Privilege; Witness Immunity. Most Cited Cases
(Formerly 379k16)

A law enforcement officer witness is entitled to absolute immunity from civil liability for grand jury testimony, even if false.

**[5] Internal Revenue 220 ☞4457**

220 Internal Revenue
    220XVIII Administration of Taxes Generally
        220XVIII(B) Revenue Officers and Agents
            220k4457 k. Liability for Misconduct. Most Cited Cases

Citizen failed to demonstrate in *Bivens* action that employees of Internal Revenue Service (IRS) violated any clearly established constitutional right of citizen, on allegations that investigator prepared allegedly false memoranda recommending prosecution of citizen, or that investigator's supervisors approved investigator's request for initiation of grand jury proceedings.

**[6] Conspiracy 91 ☞18**

91 Conspiracy
    91I Civil Liability
        91I(B) Actions
            91k18 k. Pleading. Most Cited Cases

Allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.

**[7] Conspiracy 91 ☞13**

91 Conspiracy
    91I Civil Liability
        91I(A) Acts Constituting Conspiracy and Liability Therefor
            91k12 Persons Liable
                91k13 k. In General. Most Cited Cases

A witness's absolute immunity from liability for testifying before a grand jury forecloses any use of that testimony as evidence of the witness's membership in a conspiracy prior to his taking the stand.

**[8] Federal Courts 170B ☞94**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk94 k. Pleading Venue. Most Cited Cases

When damages claims are asserted individually against a federal employee seeking recovery against personal resources, a plaintiff is required to plead facts establishing that the court has personal jurisdiction over the defendant with respect to the claims.

**[9] Federal Courts 170B ☞76.20**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.20 k. Persons Acting in Representative Capacity, Venue For; Fiduciary Shield. Most Cited Cases

Citizen failed to demonstrate minimum contacts required for district court sitting in Florida to have personal jurisdiction over non-resident investigator for Internal Revenue Service (IRS), in *Bivens* action against United States and government employees alleging violation of citizen's Constitutional rights, although investigator conducted three interviews in Florida and he attended, but did not participate in, legal hearing in Florida in matter generally related to investigation of citizen.

*ORDER*

COLLIER, J.

**\*1** THIS CAUSE comes before the Court on Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment (Doc. 10). Plaintiff responded in opposition (Doc. 37). Defendants replied (Doc. 49). For the reasons stated below, Defendants' Motion to Dismiss is due to be GRANTED. Plaintiff's motion for leave to file an amended complaint is DENIED (Doc. 40). All other pending

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
**(Cite as: 2002 WL 32098709 (N.D.Fla.))**

motions are DENIED as moot (Docs.28, 30). This action is DISMISSED with prejudice.

## I. STATEMENT OF CASE
*A. Background*

This case is the most recent of a series of cases alleging wrongdoing by government employees that took part in Plaintiff's criminal prosecution. Plaintiff DON H. PACE, a suspended Ohio attorney, proceeding *pro se,* was indicted on 81 counts of criminal activity, including wire fraud, subscribing to a false tax return, conspiracy to commit mail fraud, mail fraud, money laundering, engaging in monetary transactions in property derived from unlawful activity, and fraud by wire, radio, or television (Doc. 3, ¶¶ 82-83). During that action, the Government sought forfeiture of a residence owned by Plaintiff and his wife in Florida (*Id.,* ¶ 82). Plaintiff was convicted of two counts of wire fraud and one count of subscribing to a false tax return, and acquitted of the remaining 78 charges (*Id.,* ¶ 83).

In the instant complaint, Plaintiff alleges that Defendant LEONARD PLATT, a domiciliary of Arizona and an employee of the Internal Revenue Service (IRS) Criminal Investigation Division violated his constitutional rights and engaged in tortuous conduct by giving false testimony before the grand jury and writing false memoranda regarding the results of his criminal investigation of Plaintiff (*Id.,* ¶¶ 78-81; Doc. 10, Ex. 1, ¶ 4). Plaintiffs further contend that Defendants JOAN E. KLAR, TIMOTHY J. LEE, MARK D. COX-all domiciliaries of Arizona-and JOHN DOES 1-10 failed to properly supervise Defendant Platt and approved and authorized his request for grand jury proceedings (Doc. 3, ¶¶ 84-88).

Although, Plaintiff's complaint names ten John Doe defendants, Plaintiff has not identified the Defendants. However, two employees of the IRS, Cynthia Foster and William Shipley-both domiciliaries of California-received copies of the summons and amended complaint from a process server, but have not been named as defendants (Doc. 11, Ex. 1,

¶ 5; Doc. 16, Ex. 1, ¶ 4).[FN1]

FN1. Even if Foster and Shipley had been named as defendants, the amended complaint would be dismissed against them. Therefore, the Court proceeds as if they had been named as defendants.

None of the individual Defendants own, or have ever owned, real property in the State of Florida, or have operated a business in the State of Florida (Doc. 10, Ex. 1, ¶ 4). Further, Defendants' only ties to Florida involved in Plaintiff's criminal investigation or prosecution was that Defendant Platt traveled to Florida on two occassions, consisting of a total of five or six days, in which he interviewed approximately three witnesses (out of 25) and in which he attended, but did not participate in, a court hearing in which Plaintiff was attempting to sue a witness that was to testify against him in the criminal trial in Arizona (Doc. 10, Ex. 1, ¶ 5; Ex. 2, ¶ 4; Ex. 3, ¶ 4; Ex. 4, ¶ 7; Doc. 11, Ex. 1, ¶ 6; Doc. 16, Ex. 1, ¶ 5).

*B. Procedural History*
**\*2** Plaintiff filed a sixty-eight page, six-count amended complaint on January 9, 2002, relying on Title 28, United States Code, Sections 1343 and 1346(b) for jurisdiction (Doc. 3). The first count of the complaint, brought pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), asserts a "constitutional tort"-namely, that Defendants Platt, Klar, Lee, Cox, and John Does 1-10 allegedly violated Plaintiff's right to due process and an independent, unbiased grand jury under the Fifth Amendment of the United States Constitution. The remaining counts allege tort claims for malicious prosecution against the individual defendants (Count II); negligent hiring and supervision against Defendants UNITED STATES OF AMERICA, IRS, Klar, Lee, Lamar and Does 1-10 (Count III); *respondeat superior* against Defendants United States and IRS (Count IV); and intentional infliction of emotional distress against all Defendants (Count V). Plaintiff brings Counts II through V

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
**(Cite as: 2002 WL 32098709 (N.D.Fla.))**

pursuant to the Federal Torts Claim Act (FTCA), Title 28, United States Code, Sections 2671 through 2680.[FN2] Pursuant to Title 28, United States Code, Sections 2679(b)(2) and 2679(d)(2), this Court substituted the United States for the individual Defendants in Counts II through VI and dismissed the individual Defendants from those counts (Doc. 22). Defendants now move to dismiss all claims under various theories for want of subject matter jurisdiction, personal jurisdiction, and failure to state a claim upon which relief can be granted (Doc. 8).[FN3]

> FN2. Plaintiff does not allege that Counts IV and V are brought pursuant to the FTCA (Doc. 3, pp. 68-69). Thus, if the Court were not to construe the claims as having been brought under the FTCA, then this Court would lack subject matter jurisdiction over the claims. But since the Court's result remains unchanged, the Court construes Counts IV and V as though they had been brought under the FTCA.

> FN3. Defendants also move to dismiss the complaint for insufficiency of service of process. Because the complaint is dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim for which relief can be granted, the Court need not address these arguments.

> Plaintiff asserts in his opposition memorandum he may amend his amended complaint without leave of the Court or written consent of the adverse party because Defendants have not filed a "responsive pleading." While Plaintiff is correct that Defendants have not filed a "responsive pleading," he is incorrect in that leave of the Court or written consent of the adverse party is not necessary for him to amend his complaint after having already filed an amended com-

plaint (Doc. 3). *See* FED. R. CIV. P. 15(a). Perhaps recognizing this error, Plaintiff also moves for leave to amend his complaint claiming that Defendants' motion "assert[s] technical pleading issues not going to the merits" (Doc. 40). Defendants oppose the motion, arguing that the issues in the motion go to the merits and are not "technical pleading issues" that can be resolved by a second amended complaint, and that justice does not require Plaintiff be granted leave to amend his complaint because Plaintiff's proposed second amended complaint does not cure the issues presented in the motion to dismiss (Doc. 44). After reviewing the proposed pleading and the applicable law, the Court agrees with Defendants and Plaintiff's motion for leave to amend his complaint is DENIED.

## II. MOTION TO DISMISS
*A. Standard*

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is designed to eliminate complaints or claims over which this Court lacks subject matter jurisdiction. As the party seeking this Court's jurisdiction, Plaintiffs have the burden of alleging facts sufficient to show federal jurisdiction is appropriate. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.,* 298 U.S. 178, 188-89, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Plaintiffs carry the burden throughout the litigation and must support their allegations of jurisdiction with sufficient facts if challenged by Defendants or the Court. *See id.* "A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination." *Goodman ex rel. Goodman v. Sipos,* 259 F.3d 1327, 1331 n. 6 (11th Cir.2001).

A motion to dismiss under Rule 12(b)(2) of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
**(Cite as: 2002 WL 32098709 (N.D.Fla.))**

Federal Rules of Civil Procedure is designed to eliminate defendants over which the Court does not have personal jurisdiction. The plaintiff bears the burden of proving "by affidavit the basis upon which jurisdiction may be obtained" only if the defendant challenging jurisdiction files "affidavits in support of his position." *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 (11th Cir.1999) (quoting *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla.1989)). When the court does not conduct a discretionary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a non-resident defendant. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 255 (11th Cir.1996); *Mandara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990); *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988). A *prima facie* case is established if the plaintiff presents sufficient evidence to withstand a motion for a directed verdict. *Robinson,* 74 F.3d at 255; *Mandara,* 916 F.2d at 1514. Where the plaintiff's complaint and the defendant's affidavits conflict, the court must construe all reasonable inferences in the plaintiff's favor. *Robinson,* 74 F.3d at 255; *Mandara,* 916 F.2d at 1514.

*\*3* A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is designed to eliminate counts or complaints that fail to state a claim upon which relief can be granted. As such, this Court must accept all allegations of the complaint as true and construe those allegations in the light most favorable to Plaintiffs. *See Lopez v. First Union Nat'l Bank of Fla.,* 129 F.3d 1186, 1189 (11th Cir.1997). A count may not be dismissed with prejudice for failure to state a claim unless it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitled them to relief. *See id.* "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Quality Foods de Centro Am. v. Latin Am. Agribusiness Dev. Corp.,* 711 F.2d 989, 995 (11th Cir.1983).

*B. Discussion*

**1. Subject Matter Jurisdiction**

[1] Defendants argue that this Court lacks subject matter jurisdiction over a number of Plaintiff's claims because (1) Congress has not waived sovereign immunity over the IRS and (2) Plaintiff has failed to exhaust his administrative remedies under the FTCA, divesting the Court of jurisdiction over Counts II through V. "[T]he United States, as a sovereign, 'is immune from suit, save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). Any statutory waiver of sovereign immunity must be strictly construed in favor of the United States. *See United States v. Nordic Villiage, Inc.,* 503 U.S. 30, 33-34, 112 S.Ct. 1011, 1014-15, 117 L.Ed.2d 181 (1992); *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers,* 87 F.3d 1242, 1249 (11th Cir.1996). When the United States has not consented to suit, the action must be dismissed for lack of subject matter jurisdiction. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351-52, 63 L.Ed.2d 607 (1980); *Elias v. Connett,* 908 F.2d 521, 527 (9th Cir.1990). Moreover, Plaintiff, as the party suing the United States, bears the burden of pointing to an "unequivocable waiver of immunity." *Holloman v. Watt,* 708 F.2d 1399, 1401 (9th Cir.1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984).

*a. IRS as a Party Defendant* [FN4]

> FN4. Plaintiff argues that this issue is moot because this Court has already ordered the United States be substituted. However, this Court has not issued such an order with regard to the IRS, only with regard to the individual Defendants (Doc. 22). Accordingly, the Court proceeds to the issue.

Plaintiff has sued the IRS as a defendant in this action. However, Congress has not authorized suit against the IRS. Therefore, it lacks the capacity to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
**(Cite as: 2002 WL 32098709 (N.D.Fla.))**

be sued. *See Blackmar v. Guerre,* 342 U.S. 512, 514, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952); *Castleberry v. Alcohol, Tobacco & Firearms Div.,* 530 F.2d 672, 673 n. 3 (5th Cir.1976); [FN5] *Washburn v. Shapiro,* 409 F.Supp. 3, 8 (S.D.Fla.1976); *Krouse v. U.S. Dept. of Treasury, Internal Revenue Serv.,* 380 F.Supp. 219, 221 (C.D.Cal.1974); *Baumohl v. Columbia Jewelry Co.,* 127 F.Supp. 865 (D.Md.1955). Accordingly, this Court lacks subject matter jurisdiction over suits against the IRS. Therefore, Defendants' motion is GRANTED to that extent and the IRS is DISMISSED with prejudice from this action.

> FN5. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

*b. FTCA Exclusion for Assessment or Collection of Taxes*

**\*4** [2] Defendants argue that Plaintiffs' claims under Counts II through V are specifically exempted from the FTCA and, therefore, that this Court lacks subject matter jurisdiction over those claims. The FTCA specifically excludes "[a]ny claim arising in respect to the assessment or collection of any tax...." 28 U.S.C.A. § 2680(c) (West 1994). " Section 2680(c) has been interpreted broadly by the courts to preclude suits for damages arising out the alleged tortious activities of IRS agents when those activities were in any way related to the agents' official duties." *Capozzoli v. Tracey,* 633 F.2d 654, 658 (5th Cir.1981) (citing *Morris v. United States,* 521 F.2d 872, 874 (9th Cir.1975); *Broadway Open Air Theatre v. United States,* 208 F.2d 257, 259 (4th Cir.1953); *Pugh v. I.R.S.,* 472 F.Supp. 350, 352-353 (E.D.Pa.1979); *Paige v. Dillon,* 217 F.Supp. 18, 20 (S.D.N.Y.1963)).

Plaintiff's amended complaint raises claims that arise out of an IRS criminal tax investigation and his subsequent prosecution. Such claims "arise in respect to the assessment or collection of any

tax...." 28 U.S.C.A. § 2680(c) (West 1994); *see Jones v. United States,* 16 F.3d 979, 980-981 (8th Cir.1994) (finding IRS's "rough and tumble, no-holds-barred" criminal investigation, including "telephone wire taps, personal interviews with acquaintances and business contacts, and searches of and seizures from the [Plaintiff's] home and business locations" that did not culminate with a successful prosecution was excepted from FTCA waiver of sovereign immunity as "arising in respect to the assessment or collection of any tax"). Therefore, Defendants' motion must be GRANTED as to Counts II through V, and those counts must be DISMISSED with prejudice.

*c. FTCA Exhaustion*

[3] Assuming *arguendo* that Counts II through V were not dismissed for the reasons set forth above, those claims still must be dismissed for Plaintiff's failure to properly allege that he exhausted his administrative remedies. Under the FTCA, Congress waived sovereign immunity and granted consent for the United States government to be sued for acts committed by any "employee of the Government while acting within the scope of his office or employment." 28 U.S.C.A. § 1346(b) (West Supp.2001). However, a procedural prerequisite for such a suit is that "[a]n action ... not be instituted ... unless the claimant [has] first presented the claim to the appropriate Federal agency and his claim [has] been finally denied by the agency in writing and sent by certified or registered mail." [FN6] 28 U.S.C.A. § 2675(a) (West 1994). The filing requirement is satisfied if the claimant "(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Adams v. United States,* 615 F.2d 284, 289 (5th Cir.1980). A claim is "finally denied" when there has been a formal denial or when the agency fails to "make final disposition of a claim within six months." *Id.* This exhaustion prerequisite to suit is a jurisdictional requirement that cannot be waived and Plaintiff must provide proof that he satisfied this requirement to institute suit against the United States. *See*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
**(Cite as: 2002 WL 32098709 (N.D.Fla.))**

*Lykins v. Pointer, Inc.,* 725 F.2d 645, 646-47 (11th Cir.1984); *Employee Welfare Comm. v. Daws,* 599 F.2d 1375, 1378 (5th Cir.1978). Accordingly, this Court does not have jurisdiction over a prematurely filed suit. *See McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 1983, 124 L.Ed.2d 21 (1993).

> FN6. The purpose of this requirement is "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Brown v. United States,* 838 F.2d 1157, 1160 (11th Cir.1998) (quoting *Adams v. United States,* 615 F.2d 284, 289 (5th Cir.1980); S. REP. No. 1327, 89th Cong., 2d Sess. 6, *reprinted in* 1966 U.S.C.C.A.N. 2515, 2516).

*5 In the instant case, Plaintiffs' sole allegation of satisfying the administrative exhaustion requirement is that "Plaintiff has duly made demand upon the [IRS] and has received no response" (Doc. 3, ¶ 9). This allegation is insufficient to fulfill Plaintiffs' procedural prerequisite. Plaintiff does not allege that he instituted this action either six months after filing an administrative claim or after a formal denial of relief on his administrative claim. Therefore, Plaintiff has not sufficiently averred or established proof of jurisdiction for Counts II through V. Accordingly, if the Court had reached this issue, Counts II through V would still have been dismissed.[FN7]

> FN7. Plaintiff argues that this issue could be resolved by permitting him leave to file his second amended complaint (which he has incorrectly labeled as "First Amended Complaint"). However, the proposed complaint states:

> Plaintiff duly made demand upon the Internal Revenue Service and provided details of the claim under the Federal Tort Claim Act on August 10, 2001. The six-

month period expired on February 10, 2002 and Plaintiff had not received a response. On March 25, 2002, Plaintiff served the U.S. Attorney Civil Process Clerk with the Complaint in this action. By letter dated June 14, 2002, the IRS denied the claim.

(Doc. 40, Attach., ¶ 10). However, the initial complaint in this case was filed on December 14, 2001, so Plaintiff "instituted" suit well before the six-month period expired.

The Supreme Court has held, "In its statutory context, we think the normal interpretation of the word 'institute' is synonymous with the words 'begin' or 'commence.' The most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies *before invocation of the judicial process.*" *McNeil,* 508 U.S. at 112, 113 S.Ct. at 1983-84 (emphasis added). The judicial process is invoked when a complaint is filed, not when a defendant is served. *Cf. Alexander v. Hawk,* 159 F.3d 1321, 1328 (11th Cir.1998) (requiring exhaustion before "filing ... claims in federal court"); *Ivey v. United States,* 873 F.Supp. 663 (N.D.Ga.1995) (relying on filing of complaint as institution of suit). Accordingly, Plaintiff's suit is premature-a defect that could not be cured by allowing Plaintiff leave to file a second amended complaint-and this Court lacks subject matter jurisdiction. *See McNeil v. United States,* 508 U.S. at 113, 113 S.Ct. at 1983.

**2. Failure to State a Claim for which Relief Could be Granted**
Defendants claim that Plaintiff fails to state a claim for which relief can be granted because Defendants are immune from suit. First, Defendants

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
(Cite as: 2002 WL 32098709 (N.D.Fla.))

assert that Defendant Platt's testimony before the grand jury is absolutely immune from suit. Second, Defendants assert that the individual Defendants are qualifiedly immune from suit on Count I. The Court discusses each argument in turn.

*a. Absolute Immunity*

[4] Defendants assert that Defendant Platt's grand jury testimony is absolutely immune from suit. It is well-settled that a law-enforcement officer witness is entitled to absolute immunity from civil liability for grand jury testimony, even if false. *Scarbrough v. Myles,* 245 F.3d 1299 (11th Cir.2001); *Mastroianni v. Bowers,* 173 F.3d 1363 (11th Cir.1999); *Strength v. Hubert,* 854 F.2d 421 (11th Cir.1988); *see also Broscoe v. LaHue,* 460 U.S. 325, 345-46, 103 S.Ct. 1108, 1121, 75 L.Ed.2d 96 (1983); *Kelly v. Curtis,* 21 F.3d 1544, 1553 (11th Cir.1994). Plaintiff argues that Platt should not be entitled to absolute immunity for allegedly false testimony before the grand jury and that Platt, as a "complaining witness" is not entitled to absolute immunity. The Eleventh Circuit has expressly rejected these arguments. *Jones v. Cannon,* 174 F.3d 1271, 1287 n. 10 (11th Cir.1999).[FN8] Accordingly, Defendants' motion to dismiss is due to be GRANTED and Plaintiff's claims are DISMISSED with prejudice to the extent they complain of Platt's grand jury testimony.[FN9]

> FN8. The Supreme Court cases relied upon by Plaintiff are clearly distinguishable. In *Malley v. Briggs,* 475 U.S. 335, 337, 340-41, 106 S.Ct. 1092, 1094, 1096, 89 L.Ed.2d 271 (1986), the Supreme Court considered the issue of whether a defendant police officer was immune "when presenting a judge with a complaint and a supporting affidavit which failed to establish probable cause," not grand jury testimony. Additionally, Plaintiff both misquotes and entirely misrepresents *Estelle v. McGuire,* 502 U.S. 62, 72-75, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991), in which the Supreme Court reviewed a fed-

eral habeas corpus petition and set forth the standard of review of a *petite jury instruction* as "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."

> FN9. Had the Court not dismissed Counts II and V for lack of subject matter jurisdiction, it would have dismissed them with prejudice, to the extent that they rely upon Platt's grand jury testimony, for the same reasons.

*b. Qualified Immunity*

[5] Defendants also raise the defense of qualified immunity. Although an affirmative defense such as qualified immunity generally will not support a Rule 12(b)(6) motion to dismiss for failure to state a claim, qualified immunity may be granted on such a motion when, under the most favorable version of the facts as alleged by the plaintiff, the defendant's actions do not violate clearly established law. *Fortner v. Thomas,* 983 F.2d 1024, 1028 (11th Cir.1993). The plaintiff must show that the constitutional right's contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Immunity should be granted if, at the time of the official's actions, the law was unclear or the official could have reasonably believed his actions were lawful. *See Edwards v. Gilbert,* 867 F.2d 1271, 1273 (11th Cir.1989). Both the Supreme Court and the Eleventh Circuit have stated that "a plaintiff cannot strip a ... defendant of his qualified immunity by citing to general rules or abstract rights." *See Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038-39; *Walker v. Schwalbe,* 112 F.3d 1127, 1132 (11th Cir.1997), *cert. denied,* 523 U.S. 1117, 118 S.Ct. 1794, 140 L.Ed.2d 935 (1998). Rather, "[q]ualified immunity focuses on the actual, specific details of concrete cases." *Id.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
(Cite as: 2002 WL 32098709 (N.D.Fla.))

*6 Plaintiff asserts that Defendant Platt pre-pared allegedly false memoranda recommending Plaintiff's prosecution. Plaintiff also asserts that Defendants Klar, Lee, Cox, Foster, and Shipley approved Defendant Platt's request for initiation of grand jury proceedings. However, Plaintiff has failed to demonstrate that such actions violate a clearly established constitutional right. Plaintiff does not direct the Court to anything more than the general, abstract right to an unbiased grand jury in support of these claims. Further, the Court cannot locate a case that provides that an official's preparation of allegedly false memoranda recommending prosecution or a supervisor's approval of a request for grand jury proceedings violates clearly established rights. [FN10] Thus, Defendant has not met his burden on these claims and demonstrated that he could strip Defendants of their immunity.

FN10. Rather, the general principles applicable to the instant case counsel towards the opposite conclusion. *See, e.g., Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 806, 812, 127 L.Ed.2d 114 (1994) (plurality opinion) (no substantive due process right to be free from prosecution without probable cause).

[6] Plaintiff also alleges that the individual Defendants conspired to violate his rights to an impartial grand jury by engaging in the same activities that are outlined above, essentially by conspiring to have Defendant Platt present false incriminating testimony to the grand jury. The Court finds this count does not survive a motion to dismiss. First, "allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *See Crabtree ex rel. Crabtree v. Muchmore,* 904 F.2d 1475, 1481 (10th Cir.1990). Plaintiff's complaint is devoid of such a factual basis as it fails to allege facts demonstrating an agreement or concerted action among the individual Defendants.

[7] Second, even assuming that Plaintiff had set forth such allegations, Plaintiff's claims are not ac-tionable. In *Mastroianni v. Bowers,* 173 F.3d 1363, 1367 (11th Cir.1999), the Eleventh Circuit determined that a witness's absolute immunity from liability for testifying forecloses any use of that testimony as evidence of the witness's membership in a conspiracy prior to his taking the stand.[FN11] Plaintiff's claim of conspiratorial conduct avers exactly what *Mastroianni* prohibits: that Platt's absolutely immune testimony before the grand jury demonstrates and is the product of conspiratorial conduct by the individual Defendants. Therefore, because even under the most favorable version of the facts as alleged by Plaintiff, Defendants are immune from suit, Defendants' motion to dismiss is due to be GRANTED on this ground and Count I of Plaintiff's complaint must be DISMISSED with prejudice in its entirety.

FN11. The Eleventh Circuit has explained the rationale for this rule as follows:

Allowing the use of absolutely immune false testimony as evidence of conspiratorial conduct that is not immune would weaken the shield of immunity that protects witnesses from liability, a shield essential to the presentation of testimony. If getting on the stand to testify exposed a witness to liability, the absolute immunity extended to a witness would be illusory, and that is true even if the exposure was limited to liability for a conspiracy proven through use of the testimony. Thus a witness must be immune from having her testimony used to show a conspiracy.

*Rowe v. City of Fort Lauderdale,* 279 F.3d 1271, 1282 (11th Cir.2002).

3. Lack of Personal Jurisdiction
[8] However, even assuming that subject matter jurisdiction existed and Defendants were not immune from suit, Plaintiff still would not be able to obtain relief because he has failed to establish the existence of personal jurisdiction. When damages

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
**(Cite as: 2002 WL 32098709 (N.D.Fla.))**

claims are asserted individually against a federal employee seeking recovery against personal resources, a plaintiff is required to plead facts establishing that the court has personal jurisdiction over the defendant with respect to the claims. *See Gilbert v. DaGrassa,* 756 F.2d 1455, 1459 (9th Cir.1985); *James v. Reno,* 1999 WL 615084 (D.C.Cir.1999); *Ecclesiastical Order of Islam of Am., Inc. v. Chasin,* 845 F.2d 113, 116 (6th Cir.1988). The parties do not dispute that the individual defendants are foreign residents (Doc. 10, Ex. 2, ¶ 3; Ex. 3, ¶ 3; Ex. 4, ¶ 6, Doc. 11, Ex. 1, ¶ 5; Doc. 16, Ex. 1, ¶ 4). Defendants maintain that the individual defendants are not subject to personal jurisdiction under Florida's long arm statute. *See* FLA. STAT. ANN. § 48.193 (West Supp.2002).

*\*7 In determining whether personal jurisdiction over a non-resident party exists, the Court must engage in a two-part analysis. *See Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir.1996); *Mandara,* 916 F.2d at 1514. The first question is whether jurisdiction can be assessed under the long-arm statute of the forum state. *Cable/ Home Comm. Corp. v. Network Prods., Inc.,* 902 F.2d 829, 855 (11th Cir.1990); *Mandara,* 916 F.2d at 1514. If a basis for jurisdiction under the long-arm statute is found, the second inquiry is whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Cable/Home Comm.,* 902 F.2d at 855. Personal jurisdiction is only satisfied if both of the prongs are satisfied. *Mandara,* 916 F.2d at 1514.

*a. Florida's Long Arm Statute*
Because the reach of Florida's long-arm statute is a question of Florida law, this Court must construe it as would the Florida Supreme Court. *Id.* Moreover, Florida's long-arm statute must be strictly construed, and the burden of proving facts which justifies its application lies with the

plaintiff. *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 890-91 (11th Cir.1983). Florida's long-arm statute provides, in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who ... does any of the acts enumerated in this subsection, thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action *arising from* the doing of any of the following acts:

...

(b) Committing a tortious act within this state.

...

FLA. STAT. ANN. § 48.193 (West Supp.2002) (emphasis added).

While each individual alleged conspirator is not required to have minimum contacts-as defined by Florida law-in order to be subjected to the jurisdiction of Florida court's under Florida's long-arm statute, *Avent, Inc. v. Nicolucci,* 679 So.2d 7, 8 (Fla. 2d DCA 1996), *rev. denied,* 690 So.2d 1300 (Fla.1997), the alleged activities of the conspiracy must still fall under the provisions of the long-arm statute. In the instant case, Plaintiff has utterly failed to allege any facts showing that the individual Defendants are subject to jurisdiction in this state. Furthermore, Plaintiff does not demonstrate how the alleged tortious conduct of which he complains "arises from" the individual Defendants' contacts with Florida. *Wendt v. Horowitz,* 822 So.2d 1252, 2002 WL 1290902, *7 (Fla.2002). Accordingly, dismissal would be appropriate on each of these grounds alone. *See Parham v. Lamar,* 1 F.Supp.2d 1457, 1459 (M.D.Fla.1998).

*b. Due Process*
[9] When a plaintiff has demonstrated that a defendant falls under the Florida long-arm statute, the district court's inquiry typically ceases. However, the Court continues to proceed *arguendo,* as though subject matter jurisdiction existed,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
**(Cite as: 2002 WL 32098709 (N.D.Fla.))**

Plaintiff stated a claim for which relief could be granted, and Defendants had fallen under Florida's long-arm statute, to the issue of whether exercising personal jurisdiction over Defendants would comport with due process. Due process requires that " 'minimum contacts' exist between [Defendants] and Florida and exercising jurisdiction does not offend 'traditional notions of fair play and substantial justice." ' *Posner,* 178 F.3d at 1220; *see Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.,* 480 U.S. 102, 108-14, 107 S.Ct. 1026, 1030-33, 94 L.Ed.2d 92 (1987); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. at 158.

**\*8** Minimum contacts can give rise to either "specific" personal jurisdiction or "general" personal jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-15, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). General jurisdiction requires a showing of "continuous and systematic general ... contacts between the defendant and the forum state." *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1274 (11th Cir.2002). Plaintiff does not argue that general jurisdiction applies to the instant case. [FN12] Therefore, any exercise of personal jurisdiction must be specific jurisdiction. Specific jurisdiction is appropriate when the suit arises out of, or is related to, a party's isolated contacts with the forum state. *See Helecopteros Nacionales,* 466 U.S. at 414, 104 S.Ct. at 1872. The Eleventh Circuit has adopted a tripartite test to determine whether such minimum contacts are met.

> FN12. Moreover, the record makes clear that general jurisdiction would not apply to this case.

First, the contacts must be related to the plaintiff's cause of action.... Second, the contacts must involve some act by which the defendant purposely avails itself of the privilege of conducting activities within the state. Third, the defendant's contacts must be such that the defendant should reasonably anticipate being haled into court in the forum state. *Posner,* 178 F.3d at 1220 (citing *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir.1993)).

Plaintiff has failed to demonstrate how Defendant Platt's conducting three interviews in Florida and his attendance, but not participation, at a legal hearing in Florida are related to Plaintiff's claims. Further, the nature of Defendant Platt's contacts are so remote that he should not have reasonably anticipated that he would be haled into court in Florida as a result. *Id.* Therefore, had the Court reached the issue, it would have found that minimum contacts are not present and that Defendants' motion to dismiss for lack of personal jurisdiction is due to be granted and the case should be dismissed on that ground.

### III. SUMMARY

The Court's ruling in this matter may be summarized as follows, and it is hereby ORDERED:

1. Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 40) is DENIED.

2. Defendants' Motion to Dismiss (Doc. 10) is GRANTED and Plaintiff's First Amended Complaint (Doc. 3) is DISMISSED with prejudice.

3. Plaintiff's Motion for Continuance Under Rule 56(f) of Consideration of Motion of Defendants Klar, Lee, Cox, Foster, and Shipley (Doc. 28) is DENIED as moot.

4. Plaintiff's Motion to Extend Time for Service as to Certain Defendants (Doc. 30) is DENIED as moot.

5. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff and to close this file. Plaintiff takes nothing by this action and goes without day.

N.D.Fla.,2002.
Pace v. Platt

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 12

Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D.Fla.), 2003-1 USTC P 50,173
**(Cite as: 2002 WL 32098709 (N.D.Fla.))**

Not Reported in F.Supp.2d, 2002 WL 32098709
(N.D.Fla.), 2003-1 USTC P 50,173

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.